**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| FOLDING LIGHT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| KASEY KLAAS, MATTHEW ANDREWS, | ) | **JURY TRIAL DEMANDED** |
| JON SCHLOSSBERG, RIZWAN PATEL, | ) | |
| MATTHEW LELI, PETER ZHANG, and | ) | |
| BUNNY FOO FOO LABS, LLC | ) | |
| | | |
| Defendants. | | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Folding Light LLC ("Folding Light" or "Plaintiff"), for its Complaint for Injunctive and Other Relief against Defendants Kasey Klaas, Matthew Andrews, Jon Schlossberg, Rizwan Patel, Matthew Leli, and Peter Zhang (collectively, the "Individual Defendants"), and defendant Bunny Foo Foo Labs, LLC (together with the Individual Defendants, "Defendants"), states as follows:

**Nature of the Action**

1.      This action arises out of Defendants' intentional and malicious theft and destruction of Folding Light's entire business, including nearly all of its confidential trade secrets, intellectual property, and other property.  The Individual Defendants, all of whom are now or were formerly affiliated with Folding Light either as a manager, member, or contractor, surreptitiously entered Folding Light's offices after hours and stole Folding Light's computers, trade secrets, intellectual property, and other assets, including even its furniture.

2.      In an effort to conceal their misconduct and in a further effort to destroy Folding Light's business, the Individual Defendants also maliciously deleted nearly all information and

data from Folding Light's remaining computers, including Folding Light's confidential and proprietary trading software platform that was the centerpiece of Folding Light's business.

3.  Upon information and belief, the Individual Defendants have used the information and property they stole from Folding Light, including Folding Light's trading platform, other trade secrets and intellectual property, and computers to form a competing business, Bunny Foo Foo Labs, LLC ("Bunny Foo Foo Labs") and to siphon away Folding Light's trading customers.

4.  After Defendants stole and destroyed Folding Light's intellectual property, trade secrets, and other property, Defendants engaged in a malicious campaign to disparage Folding Light's principals, to usurp its relationships with investors and customers, and to cut off Folding Light's access to capital.

5.  Unfortunately, Defendants' illegal campaign was all too successful. Defendants' illegal theft and wanton campaign to usurp for themselves Folding Light's investments and relationships has destroyed Folding Light's business and left it unable to operate.

6.  Defendants' conduct gives rise to liability for violation of the Computer Fraud and Abuse Act, misappropriation of trade secrets under the Illinois Trade Secrets Act and the Defend Trade Secrets Act, conversion, breach of contract, tortious interference with contract, tortious interference with business expectancy, and breach of fiduciary duties.

7.  Accordingly, Folding Light brings this action seeking injunctive relief, damages, disgorgement of profits, statutory penalties, and attorneys' fees.

**The Parties**

8.  Folding Light is a Delaware limited liability company with its principal place of business located at 215 West Ohio Street, Chicago, Illinois 60654.

9.  Klaas is a member of Folding Light and a citizen of the State of Illinois.

2

10.     Andrews is a former member of Folding Light and is a citizen of the State of Illinois.

11.     Schlossberg is a former member and manager of Folding Light and is a citizen of the State of Illinois.

12.     Patel is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

13.     Leli is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

14.     Zhang is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

15.     Bunny Foo Foo Labs, LLC is a Delaware limited liability company with its principal place of business located at 401 West Superior Street, Chicago, Illinois.

### Jurisdiction and Venue

16.     Pursuant to 28 U.S.C. § 1331, this court has original jurisdiction as Folding Light's Computer Fraud and Abuse Act and Defend Trade Secrets Act claims arise under federal law.

17.     Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction over the claims arising under Illinois law because they are so related to the claims providing original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this district.  Folding Light is

located in Cook County, Illinois, and Defendants' theft of confidential information, trade secrets, and Folding Light's other property occurred in Cook County, Illinois.

**Formation of Folding Light**

19.     In 2017, Brock Flagstad ("Flagstad"), Kasey Klaas ("Klaas"), Jon Schlossberg ("Schlossberg"), and Matt Andrews ("Andrews") began working on the Folding Light business.

20.     Folding Light was in the business of electronically trading securities and commodities in several markets.

21.     Beginning in May 2017, Andrews and Schlossberg were retained as independent contractors. Schlossberg was primarily responsible for developing Folding Light's trading platform (as described below) and identifying and creating electronic trades for Folding Light to conduct.

22.     Andrews was primarily responsible for business development and raising capital with which Folding Light could trade.

23.     Andrews and Schlossberg were each paid $250,000 per year for this work.

24.     Beginning in late 2017, Folding Light sought and obtained millions of dollars in outside investment so that it could grow its business. In connection with the outside investment, Folding Light prepared a formal operating agreement by which it would be governed.

25.     On February 1, 2018, Flagstad, Klaas, Schlossberg, Andrews, Rick Sterioti ("Sterioti"), and James Streibich ("Streibich"), as representative of the James Streibich Revocable Trust of 2002, entered into the Folding Light, LLC Limited Liability Company Agreement (the "LLC Agreement").

26.     A true and accurate copy of the LLC Agreement is attached as Exhibit A.

27.     Pursuant to the LLC Agreement, Folding Light is managed by a Management

Committee:

> . . . the business and affairs of the Company shall be managed under the direction
> of its Managers (collectively, the "Management Committee"). Except as
> otherwise specifically provided herein or by Applicable Law, the Management
> Committee shall have full, exclusive and complete discretion to manage and
> control the business and affairs of the Company, to make all decisions affecting
> the business and affairs of the Company and to take all such actions as the
> Management Committee deems necessary or appropriate to accomplish the
> purposes of the Company as set forth herein (including without limitation the
> making of decisions affecting investments, distributions and compensation).

(Ex. A, § 6.1(a)).

28.     The initial Management Committee was comprised of Flagstad, Schlossberg, and

Streibich.  (Ex. A, § 6.1(d)).

29.     Pursuant to the LLC Agreement, Flagstad was the Lead Manager of Folding

Light.  (Ex. A, § 6.1(i)).  He remains the Lead Manager today.

30.     The LLC Agreement further provides that:

> Upon the Company's request, any Member who has notified the Company of his
> or her resignation or has been terminated by the Company shall agree to a "garden
> leave" for a period not to exceed twelve (12) months, as determined by the
> Management Committee, during which period such Member shall (i) provide
> services to the Company from a remote location, (ii) refrain from providing
> services to any Person other than the Company, (iii) adhere to the other provisions
> of this Section 6.5 and (iv) be entitled to compensation commensurate with the
> services provided.

(Ex. A, § 6.5(c)).

31.     The LLC Agreement defines "Intellectual Property" as:

> . . . the rights associated with or arising out of any of the following: (i) domestic
> and foreign patents and patent applications, together with all reissuances,
> divisionals, continuations, continuations-in-part, revisions, renewals, extensions,
> and reexaminations thereof, and any identified invention disclosures; (ii) trade
> secret rights and corresponding rights in confidential information and other non-
> public information (whether or not patentable), including ideas, formulas,
> compositions, inventor's notes, discoveries and improvements, know-how,

manufacturing and production processes and techniques, testing information, research and development information, inventions, invention disclosures, unpatented blueprints, drawings, specifications, designs, plans, proposals and technical data, business and marketing plans, market surveys, market know-how and customer lists and information (iii) all copyrights, copyrightable works, rights in databases, data collections, "moral" rights, mask works, copyright registrations and applications therefor and corresponding rights in works of authorship; (iv) all trademarks, service marks, logos, trade dress and trade names and domain names indicating the source of goods or services, and other indicia of commercial source or origin (whether registered, common law, statutory or otherwise), all registrations and applications to register the foregoing anywhere in the world and all goodwill associated therewith; (v) all computer software and code, including assemblers, applets, compilers, source code, object code, development tools, design tools, user interfaces and data, in any form or format, however fixed; and (vi) all Internet domain names, electronic addresses, websites, proprietary symbol sets and proprietary voices, uniform resource locators and alphanumeric designations associated therewith and all registrations for any of the foregoing.

(Ex. A, pp. 9-10).

32. The LLC Agreement states that all Intellectual Property is the property of Folding Light:

(b) Each Member agrees that (i) to the extent permitted by Applicable Law, all such Intellectual Property Created after the date of this Agreement (collectively, the "LLC IP") shall be deemed a "work made for hire" within the meaning of that term under United States Copyright Act, 17 U .S.C. §§ 101 *et seq.*, as amended or superseded, and (ii) the Company shall be deemed the exclusive author of such LLC IP and the exclusive owner of all rights, title and interest in and to such LLC IP in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised.

(c) Each Member hereby (i) assigns and transfers to the Company, in respect of each item of LLC IP, as of the date of its Creation, any and all rights, title and interest such Member may have or acquire in and to any LLC IP (including any LLC IP not deemed, for whatever reason, to be a work made for hire); and (ii) irrevocably waives and assigns to the Company any and all so-called moral rights or "droit moral" as such Member may have in or with respect to such LLC IP. Each Member hereby represents and warrants (x) it shall not make any grant, pledge, or other disposition in respect of any right, title or interest in or to such LLC IP to any Person other than the Company; and (y) such LLC IP will, unless otherwise authorized by the Company in writing, be an original Creation by such Member and will not improperly use or disclose any trade secret, or confidential information, or other property of any other Person.

(Ex. A, § 6.6(b)-(c)).

33.     The LLC Agreement also forbids the use and disclosure of confidential and proprietry information and requires each member to keep such information confidential:

> Each Member recognizes and acknowledges that such Member will be entrusted with or have access to confidential and proprietary information of the Company, Affiliates of the Company and/or third parties to which the Company or any Affiliate thereof owes a duty of confidentiality (whether pursuant to Applicable Law, by contract or otherwise). Each Member therefore agrees that for so long as he is a Member, and for the longest period of time permitted by law thereafter, such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance of such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account. Upon ceasing to be a Member for any reason whatsoever, each Member shall use reasonable efforts to promptly (i) delete or cause to be deleted any Confidential Information held in electronic format and (ii) deliver or cause to be delivered to the Company any and all other tangible Confidential Information in each case in such Member's possession, custody or control. As used herein, the term "Confidential Information" shall mean trade secrets and other non-public information, whether tangible or intangible, in any form or medium, relating to the business or affairs of the Company or its Affiliates that is proprietary to the Company or its Affiliates and which the Company or its Affiliates make reasonable efforts to keep confidential, including, but not limited to, relationships with, and contact information of, Investors and Prospective Investors, materials, research, systems, plans and procedures of or relating to the Company or its Affiliates, databases, software and enhancements thereto, processes, Trading or investment strategies and methodologies, Trading or investment systems, financial products or risk management models, revenue models, manuals, confidential reports, quantitative and other strategies and methodologies, procedures, techniques, discoveries and concepts, financial products and investment positions of the Company or its Affiliates, business plans and strategies, pricing and other financial information, marketing plans, advertising, names, addresses and other information regarding all past, existing Investors and Prospective Investors, vendors and suppliers of the Company or its Affiliates and any confidential information of any such Investors, vendors or suppliers, contractual arrangements, personnel records and other information relating to employees, training materials, statistical data, the source

> code of the Work, if applicable, and any other non-public information or data comprising or related to the Work, and other proprietary technologies and processes, source code, specifications, inventions, designs, developments of the Company or its Affiliates and other proprietary information used by the Company or its Affiliates in connection with their respective businesses and/or which the Company or any of its Affiliates is obligated to any third party to maintain as confidential. The Members acknowledge that the Confidential Information is vital, sensitive, confidential and proprietary to the Company.

(Ex. A, 6.5(c)).

34.     The LLC Agreement also provides that in the event a member learns about a potential business opportunity, the member must present that opportunity to Folding Light and not exploit or usurp it for the member's own benefit. (Ex. A, 6.3(c)).

35.     The LLC Agreement also contains the following covenant restricting the conduct of the Members:

> Each Member hereby agrees that, during the period commencing on the date hereof and ending on the date that is eighteen months immediately following the date such Member is no longer a Member of the Company (such period shall be referred to as the "Restricted Period"), such Member shall not, without the prior written consent of the other Member [*sic*], directly or indirectly, alone or in combination with any other Person, (i) employ, offer employment to, or otherwise attempt to hire, as an employee, consultant, independent contractor or otherwise (or assist any other Person to take any such action regarding), any individual employed or engaged by the Company or any of its Affiliates during the six-month period prior to the date of contact; (ii) solicit an investment (whether a capital investment, debt investment or otherwise) from any Investor or Potential Investor of the Company or its Affiliates; or (iii) otherwise seek to influence or alter any relationship between the Company or any of its Affiliates and any Person referred to in clause (i) or (ii) above.

(Ex. A, § 6.5(a).)

36.     The LLC Agreement defines "Investor" as "any Person who has invested with, or provided funds (whether by a capital investment, debt investment or otherwise) to, the Company or its Affiliates." (Ex. A, p. 10).

37.     If Folding Light brings a successful legal action to enforce any provisions of The LLC Agreement or to recover damages for breaches of The LLC Agreement, The LLC Agreement provides Folding Light is entitled to recover its attorneys' fees and costs:

> In the event of legal action to interpret or enforce any of the terms or provisions of this Agreement or to recover damages for a breach thereof, the prevailing party shall be entitled to recover reasonable attorney's fees actually incurred plus costs.

(Ex. A, § 11.6.)

### Folding Light's Intellectual Property and Trade Secrets

38.     Folding Light was formed to engage in electronic securities and commodities trading in multiple different markets.

39.     In order to further its trading business and to provide it with flexibility to trade in multiple different markets, Folding Light expended substantial time, money, and other resources to develop intellectual property and trade secrets that give it a competitive advantage in its line of business.

40.     The trade secrets and intellectual property that Folding Light has developed through great effort and expense include, but are not limited to, business plans, confidential and proprietary trading strategies and processes, computer software, a network infrastructure, and a trading platform (the "Platform").

41.     Folding Light has also expended substantial effort and resources to develop confidential and proprietary relationships that are crucial to its business and its ability to expand its business.  These confidential and proprietary relationships are memorialized in customer lists, leads, lists of investors who may be interested in providing capital to Folding Light for trading and access to other financial markets, including exchanges on which BitCoin, a popular cryptocurrency, is traded. (Together, Folding Light's Platform, business plans, confidential and

proprietary trading strategies, customer lists, leads, lists of investors, and other items referenced herein are referred to in this complaint as the "Trade Secrets").

42.     Folding Light and its investors spent over $2 million developing and improving the Platform and its other Trade Secrets and setting up the business to conduct trades.

43.     The Platform was developed primarily by Schlossberg and Patel while they were at Folding Light.

44.     Schlossberg began work on the Platform in May 2017. In February 2018, Folding Light retained Patel as an independent contractor to assist Schlossberg in writing software code for the Platform.

45.     The Platform automatically executes certain financial trades based on financial data and an algorithm developed by Folding Light.

46.     The Platform includes trading applications, databases, source code, and the algorithm.

47.     Prior to Defendants' theft, the Platform was unique to Folding Light.

48.     The Platform is Confidential Information and Intellectual Property pursuant to the LLC Agreement.

49.     As Intellectual Property and Confidential Information under the LLC Agreement, the Platform and other Trade Secrets are the property of Folding Light.

50.     Folding Lights' Trade Secrets were protected through various means including, but not limited to, encrypted passwords, two-factor verification, and limited access to the Platform and its source code.

51.     Additionally, it was Folding Light's policy that the Trade Secrets were not to be disclosed outside of Folding Light.

10

52. Schlossberg and Patel had access to the Platform and were the only individuals at Folding Light who had access to, and were permitted to access, the Platform's source code.

53. Folding Light's traders also had limited access to the Platform for the purpose of initiating and monitoring trades.

54. The Platform was equipped with proprietary firm trading controls. In order to access the Platform, a person needed a login, password, and to satisfy various multi-factor access controls.

55. Additionally, the computers in the trading room which contained the Platform were kept under lock and key, and required a key fob to access them, so that access to the Platform was limited only to individuals on a need-to-know basis.

56. Folding Light's members, managers, and contractors were repeatedly informed, and generally understood, that Folding Light's Confidential Information, Intellectual Property, and other Trade Secrets should not be disclosed to any person outside of Folding Light for any reason.

57. Folding Light's members, managers, and contractors were repeatedly informed, and generally understood, that the Platform and its source code are Folding Light's Confidential Information, Intellectual Property, and a trade secret, and should not be disclosed to any person outside of Folding Light for any reason.

58. Folding Light had eleven computers in its trading room that allowed for access to its Intellectual Property and Confidential Information, including the Platform. Access to these computers was limited to Folding Light's managers, members, and traders on a need-to-know basis. Folding Light's managers, members, and traders could access these computers remotely through an application called TeamViewer, which allowed both on-premises and off-premises

access to the computers in the trading room and the Platform. Access to the TeamViewer application was limited on a need-to-know basis to Folding Light's managers, certain members, and its traders.

59.     There were also two Folding Light computers in Schlossberg's office and three other Folding Light computers that Schlossberg used in other locations, all of which were kept under lock and key. Only Schlossberg had access to these computers. Schlossberg also was and is in possession of two Folding Light iPad Pros. These iPad Pros contain the TeamViewer application so that Folding Light could monitor trades around the clock. Through all of these devices, Schlossberg had access to Folding Light's Intellectual Property and Confidential Information.

60.     Without Folding Light's eleven computers and the Folding Light devices in Schlossberg's possession, Folding Light cannot access or use its Intellectual Property, Confidential Information and Trade Secrets, including the Platform.

61.     Absent Folding Light being able to access the Platform and other Trade Secrets, Folding Light's trading business is effectively dismantled because Folding Light cannot trade, access its trades, view the trading activity that is taking place, or use its proprietary trading algorithm and strategies.

## Dispute with Klaas

62.     Flagstad and Klaas are also involved in several other business ventures including Two Screens Media, LLC and Oxford Marketing Partners, LLC.

63.     Flagstad and Klaas are engaged in a dispute over the separation of those, and other, businesses and ventures.

64.     Many of those businesses and ventures, along with Folding Light, operated out of the same shared office space.

65.     The tenant for Folding Light's office lease is Channel Clarity Holdings, LLC ("Channel Clarity"), an entity that is majority- owned by Flagstad.  Channel Clarity has subleased Folding Light's office space to it.

66.     During the course of their dispute, Klaas, among others, made disparaging statements regarding Folding Light's management, including Flagstad, to multiple parties, including Schlossberg and Andrews for the purpose of altering Schlossberg's and Andrews' allegiances to Folding Light and so that Schlossberg and Andrews would remain loyal to Klaas.

67.     On October 23, 2018, Flagstad asked Klaas to leave the shared Channel Clarity/Folding Light offices by October 31, 2018.

## Terminations

68.     In the Spring of 2018, Folding Light purchased $1,000,000 of Class B Membership Interests in HC Tech Group, Inc. ("HC Tech"), a Delaware limited liability company, pursuant to a Supplemental Trading Agreement between the parties. The Supplemental Trading Agreement provided that Folding Light could require HC Tech to repurchase the Class B interests under certain conditions.

69.     In late Summer of 2018, Folding Light decided to disengage from HC Tech and require HC Tech to repurchase the Class B interests and, in essence, recover Folding Light's investment.

70.     Flagstad directed Andrews and Schlossberg to communicate with HC Tech in order to sell the Class B interests and recover Folding Light's investment.

71.     On or about October 5, 2018, Folding Light discovered that Andrews and Schlossberg had done nothing to recover Folding Light's investment from HC Tech.

72.     In addition, between August 2018 and October 2018 and thereafter, Schlossberg and Andrews repeated Klaas' disparaging statements regarding Folding Light's management to many more third parties for the purpose of damaging and usurping Folding Light's business relationships with those third parties.

73.     On October 29, 2018, Schlossberg and Andrews executed a document purporting to give one another a release on behalf of Folding Light for any prior actions, terminating the restrictive covenants of the LLC Agreement and giving Schlossberg "explicit consent … to use any and all trading strategies and IP he so chooses in any future activity."

74.     On October 31, 2018, Folding Light sent a letter terminating Schlossberg and redeeming his interest in Folding Light.  A copy of the Schlossberg termination letter is attached as Exhibit B.

75.     The termination letter informed Schlossberg that his engagement as a contractor of Folding Light was terminated immediately.  (Ex. B, p. 1).

76.     As Schlossberg was terminated, he ceased to be involved in the Company's business and Folding Light executed its right to redemption pursuant to § 6.7(b) of The LLC Agreement.  (*Id.*)

77.     The termination letter further informed Schlossberg that Folding Light was placing Schlossberg on "garden leave" to provide such services as Folding Light required to secure and protect its assets and intellectual property.  (*Id.* at 1-2).

78.     The termination letter demanded that Schlossberg immediately exit the premises but directed that he should not remove his office computer, which was the property of Folding Light.  (*Id.* at 2.)

79.     The termination letter also demanded that Schlossberg transmit all Intellectual Property belonging to Folding Light and residing on any computer or server in Schlossberg's home or any other location to Folding Light and then certify the return of Folding Light's property in writing by November 1, 2018.  (*Id.* at 2.)

80.     Schlossberg did not return any of Folding Light's property.

81.     On October 31, 2018, a similar letter was sent to Andrews, terminating his employment and redeeming his membership interest.  A copy of the Andrews termination letter is attached as Exhibit C.

82.     Andrews' termination letter contained the same garden leave and Folding Light property provisions as Schlossberg's termination letter.

83.     As with Schlossberg, Andrews did not return any Folding Light property.

**Defendants' Post-Termination Actions**

84.     Immediately following their terminations, Andrews, Schlossberg, and the other Individual Defendants took steps to ensure that they could steal and replicate Folding Light's entire business.

85.     To begin, the Individual Defendants continued to access Folding Light's computer network.

86.     Upon information and belief, Schlossberg and Andrews were able to continue to access Folding Light's computer systems and the Intellectual Property and Confidential Information contained therein after their termination because, as set forth below, they have

usurped Folding Light's relationship with Radius IT, Folding Light's IT vendor ("Radius IT"). As Folding Light's IT vendor, Radius IT has the ability to control access to Folding Light's computer systems, thereby permitting Schlossberg and Andrews to access Folding Light's computer systems, Intellectual Property, and Confidential Information and Trade Secrets contained therein.

87.     Next, upon information and belief, Klaas, Andrews, and Schlossberg solicited the other Individual Defendants to join them in stealing and replicating Folding Light's entire business.

88.     As described further herein, despite Schlossberg's and Andrews' terminations, Defendants engaged in a conspiracy to access Folding Light's computer system without authorization and to misappropriate Folding Light's Trade Secrets, including the Platform.

89.     Shortly after Schlossberg and Andrews were terminated, Leli and Patel resigned as Folding Light contractors without notice and disappeared.  Upon information and belief and as further described herein, Leli and Patel went to work for Bunny Foo Foo Labs in identical or substantially similar positions and/or roles.

## **Theft of Folding Light Computers**

90.     The Individual Defendants then broke in to Folding Light's office to steal Folding Light's property.

91.     During the weekend of November 2 through November 4, 2018, Zhang, Patel, and Leli entered the Folding Light offices.

92.     While at the Folding Light offices, Zhang, Patel, and Leli took the two Folding Light computers in Schlossberg's office without Folding Light's authorization.

93.     Zhang, Patel, and Leli then proceeded, without authorization, to erase nearly all data from the eleven Folding Light computers in the trading section of the office, including the Platform and Folding Light's other Intellectual Property, Confidential Information and Trade Secrets, and to reset them to factory settings.

94.     Upon information and belief, Zhang, Patel, and Leli stole the two computers containing Folding Light's Intellectual Property, Confidential Information and Trade Secrets, including the Platform, and erased nearly all data on the rest of the Folding Light computers, at the direction of Klaas, Schlossberg, and Andrews.  On information and belief, one or more of Klaas, Schlossberg or Andrews also entered Folding Light's offices during the weekend of November 2 through November 4, 2018, and assisted Zhang, Patel, and Leli with the actions set forth above.

95.     One computer remaining in the Folding Light offices has files related to the Platform, but does not have the user interface required to actually use the Platform.

96.     The Platform allows users to place trades and view the trades that have been placed.

97.     In stealing the Platform and erasing nearly all data from Folding Light's computers, Defendants have effectively dismantled Folding Light's business because they have completely cut off the ability of Folding Light to access the Platform and to execute trades.

98.     Defendants are now in exclusive control of Folding Light's Intellectual Property, Confidential Information and Trade Secrets, including the Platform, and, upon information and belief, Defendants are using these materials for their own economic advantage.

99.     Upon information and belief, Defendants are now using Folding Light's Intellectual Property, Confidential Information and Trade Secrets to start and conduct their own

business, Bunny Foo Foo Labs, which is a direct competitor of Folding Light and is identical to Folding Light, and to siphon business from Folding Light to this new business.

100. During the weekend of November 2 through November 4, 2018, Klaas entered Channel Clarity's offices and took some of Folding Light's office furniture. Additionally, during that weekend, Klaas and/or one or more of the Individual Defendants took Folding Light's televisions, collectible artwork, and wine without permission.

101. Folding Light has demanded several times that Klaas and/or Defendants return to Folding Light any and all of its property, including without limitation its Intellectual Property, Confidential Information, Trade Secrets, and other property.

102. Defendants have refused to return Folding Light's Intellectual Property, Confidential Information, Trade Secrets, and other property.

## HC Tech

103. The Individual Defendants also interfered with Folding Light's business and investor relationships and Folding Light's access to capital.

104. On or about November 6, 2018, Sterioti contacted HC Tech to request the repurchase by HC Tech of the Class B interests described above,

105. In subsequent discussions, HC Tech informed Folding Light that Andrews had contacted HC Tech and told it not to return the money used to purchase the Class B interests to Folding Light

106. HC Tech also told Folding Light that Andrews told HC Tech to return the money to Andrews himself.

107.    When Folding Light confronted Andrews regarding his interference, Andrews responded that "the most efficient use of everyone's time would be for you and Kasey to speak ASAP."

108.    Eventually, despite Andrews' efforts to interfere with the return of Folding Light's investment in HC Tech, HC Tech agreed to return the money to Folding Light in three installment payments.

### Defendants Continue to Interfere with
### Folding Light's Access to Capital, Financing, and Markets

109.    In February 2018, Folding Light retained Zhang as an independent contractor. Zhang's roles and responsibilities included serving as the Chief Operations Officer for Folding Light.  In that position, Zhang was responsible for managing and developing relationships with various trading exchanges as well as leading product development and project management of the Platform.

110.    One of Folding Light's lines of trading business was trading on cryptocurrency futures exchanges.

111.    In connection with Folding Light's trading business, through the expenditure of substantial time, money, and other resources, Folding Light developed a relationship with Bill and Brooke Mallers, the ("Mallers").  The Mallers own a large amount of cryptocurrency, including BitCoin.

112.    Zhang was involved in developing Folding Light's relationship with the Mallers.

113.    Eventually, the Mallers and Folding Light entered into an arrangement where the Mallers lent Folding Light BitCoin so that Folding Light could trade those BitCoin.

114.    In February 2018, the Mallers lent Folding Light 10 BitCoin.

115.    In March 2018, the Mallers lent Folding Light 290 BitCoin.

19

116.     As Andrews, Schlossberg and Zhang knew, Folding Light's relationship with the Mallers was critical to its future business plans.

117.     On information and belief, prior to Folding Light placing Andrews and Schlossberg on "garden leave", one or more of Klaas, Schlossberg, Andrews, Zhang, and Patel flew to visit the Mallers on at least two occasions.  During these visits, one or more of Klaas, Schlossberg, Andrews, Zhang, and Patel falsely and maliciously disparaged Folding Light's management, including Flagstad, to the Mallers as part of their planned efforts to dismantle Folding Light's business and to secure access to BitCoins from the Mallers family for their own use.  The purpose of Klaas', Schlossberg's, Andrews', Zhang's, and/or Patel's visits to the Mallers family was to induce them to stop doing business with Folding Light and to do business with Defendants instead.

118.     As a result of Defendants' meeting with the Mallers, Folding Light has been prevented from conducting further business with the Mallers.

119.     Defendants interference did not stop with HC Tech and the Mallers.   On information and belief, Defendants met with nearly every company and individual that did or had done business with Folding Light and made disparaging comments regarding Folding Light's management for the express purpose of damaging those companies' and individuals' relationships with Folding Light and inducing those companies and individuals into doing business with Defendants instead of Folding Light.

### Defendants' Interference with Folding Light's IT Vendor

120.     Defendants also interfered with Folding Light's IT vendor.

121.    Folding Light contracted with an information technology firm known as Radius IT. Radius IT and its employee, Tim Hicks, helped Folding Light to maintain its network of servers and personal computers.

122.    Following defendants' departure from Folding Light and theft of Folding Light's computers and data, Flagstad contacted Radius IT on behalf of Folding Light to ask for its help in restoring its network and accessing its Platform so that it could view outstanding and future trades and continue its work.

123.    Although Flagstad asked for help from Radius IT and Tim Hicks on several occasions, they have never responded.

124.    Upon information and belief, Radius IT did not respond because they were improperly instructed not to do so by Defendants Klaas, Schlossberg and Andrews.

125.    Upon information and belief, Radius IT continues to work with Defendants Klaas, Schlossberg and Andrews to help them to utilize the Platform and to perform trades that otherwise would have been performed by Folding Light.

### Defendants' Continued Business

126.    Upon information and belief, in November 2018, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli began sharing an office space and using the office furniture that Defendants took from Folding Light without authorization and for their own benefit.

127.    Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli knowingly and actively participated in the decision to steal Folding Light computers, erase nearly all data from the rest of Folding Light's computers, and take control of Folding Light's Intellectual Property, Confidential Information and Trade Secrets.

128.     Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli are currently in control of and using for their own benefit Folding Light's Intellectual Property, Confidential Information and Trade Secrets.

129.     Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli, have used the Intellectual Property, Confidential Information, and Trade Secrets they stole, including the Platform, to form a business nearly identical to Folding Light.

130.     Upon information and belief, that business is operating under the name Bunny Foo Foo Labs.

131.     Bunny Foo Foo Labs was organized under the laws of Delaware on October 9, 2018.

132.     On information and belief, Bunny Foo Foo Labs is owned and/or controlled by Klaas and one or more of the Individual Defendants.

133.     Upon information and belief, Klaas, Andrews and Schlossberg solicited Patel, Leli and Zhang to work with them in their new, competing business.

134.     Upon information and belief, Klaas, Andrews and Schlossberg actively solicited investments from Investors and Potential Investors of Folding Light, as defined in Section 6.5(a) of the LLC Agreement.

135.     Repeated requests for information regarding the current relationship between Klaas, Andrews, Schlossberg and the remaining defendants have been met with silence.

### The Result of Defendants' Illegal Conduct

136.     Because of Defendants' illegal conduct, Folding Light has effectively been shuttered. It has lost all its valuable assets, had its relationships damaged or destroyed, and has been left without the means even of re-starting under new management or with new traders

because, as the result of Defendants' acts, Folding Light cannot access or utilize its Trade Secrets, Confidential Information, or Intellectual Property, and has been denied access to capital and customers.

**Count I**
**Computer Fraud and Abuse Act**
**(All Defendants)**

137.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 136.

138.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), forbids "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).

139.    The CFAA also forbids "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $ 5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

140.    The CFAA further forbids "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. § 1030(a)(5)(A).

141.    The CFAA defines "protected computer", in pertinent part, as "a computer . . . which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

142.    The CFAA provides for "a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

143.    The computers at issue are protected computers under the CFAA because were used in interstate commerce and communication through financial trading.

144.    In concert and in a conspiracy with Defendants as set forth herein, Patel and Leli and, on information and belief, one or more of Klaas, Schlossberg, Andrews, or Zhang, accessed Folding Light's offices to steal computers containing trade secrets and copyrighted information, including the Platform, and to destroy the remaining copies of the Platform.

145.    Defendants were not authorized to steal and subsequently gain access to Folding Light's computers or information on them, including the Platform.

146.    Defendants were also not authorized to access Folding Light computers in order to delete the trading software off of the remaining Folding Light computers.

147.    Defendants accessed Folding Light's computers to steal the Platform and render the computers, network and Platform inoperable with the intent to obtain Folding Light's Trade Secrets, Confidential Information, and Intellectual Property, to further a fraud, and to damage the data on Folding Light's computers by deleting it or rendering it inoperable.

148.    Folding Light has spent over $2 million in creating the Platform at issue, and the deletion of the Platform caused a loss in value of over $5,000 because Defendants, through their actions, intended to prevent and have actually prevented Folding Light from operating as a going concern.

149.    Folding Light has also lost access to their Trade Secrets, Confidential Information, and Intellectual Property, including the Platform, because Defendants' actions have rendered Folding Light's computers, network and Platform inoperable.

150.    Defendants' unauthorized access and theft of the computers and the Trade Secrets, Confidential Information, and Intellectual Property contained thereon, including the

24

Platform, has caused and is causing irreparable harm to Folding Light, for which it has no adequate remedy at law. Unless this Court restrains Defendants from accessing the computers and the Trade Secrets, the harm will continue to occur in the future. Accordingly, Folding Light is entitled to both a preliminary and a permanent injunction.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count I in its favor and against Defendants Kasey Klaas, Jon Schlossberg, Matthew Andrews, Rizwan Patel, Matthew Leli, Peter Zhang and Bunny Foo Foo Labs, LLC and enter an order:

A. Entering a preliminary and permanent injunction against Defendants and persons or entities within their control from using, copying, disclosing or otherwise making the Trade Secrets, Confidential Information and Intellectual Property available to any third-party and from doing business using any of the foregoing;

B. Ordering Defendants and persons or entities within their control to return any and all copies of Folding Light's Trade Secrets, Confidential Information, Intellectual Property including but not limited to the Platform, any derivative works, and Folding Light's computers and other property;

C. Awarding actual damages and Defendants' profits to Folding Light;

D. Awarding statutory pre- and post-judgment interest on all amounts awarded; and

E. Providing for such other or further relief allowable under the Computer Fraud and Abuse Act and as the Court deems just and equitable.

### Count II
### Misappropriation of Trade Secrets – Defend Trade Secrets Act
### (All Defendants)

151. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 150.

152. The Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if

the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(a).

153. Folding Light is the owner of the Trade Secrets, including the Platform.

154. Folding Light's Trade Secrets were used in, and intended for use in, interstate and foreign commerce because they were used to trade securities and commodities in national and international markets.

155. Folding Light's Trade Secrets, including the Platform, are confidential trade secrets from which Folding Light derives independent economic value because they are not generally known to the public or other persons who could obtain economic value from their disclosure or use.

156. Folding Light has taken and continues to undertake reasonable efforts to maintain the confidentiality, secrecy, and proprietary nature of the Platform and its other Trade Secrets.

157. Defendants have willfully misappropriated and used the Trade Secrets, including the Platform, for their own benefit and to Folding Light's detriment.

158. Defendants acquired the Trade Secrets, including the Platform, through improper means.

159. Defendants' misappropriation and use of the Trade Secrets for their own benefit and to Folding Light's detriment has caused and continues to cause Folding Light to suffer damages and irreparable injury, as set forth herein.

160. Defendants' misappropriation and use of the Trade Secrets is willful and malicious entitling Folding Light to an award of exemplary damages under the Defend Trade Secrets Act.

161.    Defendants' misappropriation and use of the Trade Secrets has caused and will continue to cause Folding Light to suffer irreparable and substantial harm, therefore it cannot be fully redressed through damages alone.  Accordingly, Folding Light is entitled to an injunction prohibiting Defendants from further use or disclosure of the Trade Secrets.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count II in its favor and against Defendants Kasey Klaas, Jon Schlossberg, Matthew Andrews, Rizwan Patel, Matthew Leli, Peter Zhang and Bunny Foo Foo Labs, LLC and enter an order:

A.    Entering a preliminary and permanent injunction against Defendants and persons or entities within their control from using, copying, disclosing or otherwise making the Trade Secrets, Confidential Information and Intellectual Property available to any third-party and from doing business using any of the foregoing;

B.    Ordering Defendants and persons or entities within their control to return any and all copies of Folding Light's Trade Secrets and Confidential Information including but not limited to the Platform, any derivative works, and Folding Light's computers and other property;

C.    Awarding actual damages and Defendants' profits to Folding Light;

D.    Awarding damages based upon the unjust enrichment to Defendants based upon their willful and malicious conduct;

E.    Awarding punitive or exemplary damages to Folding Light for Defendants' willful and malicious misappropriation, use, and disclosure of Folding Light's trade secrets;

F.    Awarding statutory pre- and post-judgment interest on all amounts awarded; and

G.    Providing for such other or further relief as appropriate under the Defend Trade Secrets Act and as the Court deems just and equitable.

## Count III
## <u>Misappropriation of Trade Secrets – Illinois Trade Secrets Act</u>
### (All Defendants)

162.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 161.

163.    Pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* (the "ITSA"), a trade secret is "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."   765 ILCS 1065/2(d).

164.    "Misappropriation," in pertinent part, is defined as "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means."  765 ILCS 1065/2(b)(1).

165.    "Improper means" is defined as including "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means."  765 ILCS 1065/2(a)

166.     Pursuant to the ITSA "actual or threatened misappropriation may be enjoined." 765 ILCS 1065/3(a).

167.    Pursuant to the ITSA "a person is entitled to recover damages for misappropriation" which "can include both the actual loss caused by misappropriation and the

unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 765 ILCS 1065/4(a).

168.    Further "[i]f neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." *Id.*

169.    Additionally, "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)." 765 ILCS 1065/4(b).

170.    The Trade Secrets, including the Platform, are sufficiently secret to derive actual or potential value from not being generally known to others who can obtain economic value from their disclosure or use, and Folding Light does derive actual and potential economic value from the secrecy of the Trade Secrets.

171.    Folding Light undertook reasonable efforts under the circumstances to maintain the secrecy and confidentiality of the Trade Secrets.

172.    Folding Light's Trade Secrets, including the Platform, and the secrecy of the Trade Secrets, provide Folding Light with a competitive advantage in the marketplace.

173.    Accordingly, the Platform and other Trade Secrets are protected by ITSA.

174.    Defendants misappropriated Folding Light's Trade Secrets through unlawful means by stealing computers that contained the Platform and other Trade Secrets from Folding Light's office, erasing nearly all data on Folding Light's other computers and rendering them inoperable, and refusing to return other Folding Light computers that contain the Trade Secrets.

175. Defendants' misappropriation of Folding Light's Trade Secrets was willful and malicious because Defendants intentionally stole computers containing the Platform and other Trade Secrets for their own personal gain and erased nearly all data from the remaining computers, rendering them unusable.

176. Defendants' theft of the Trade Secrets has caused and is causing irreparable harm to Folding Light, for which it has no adequate remedy at law because Folding Light is wholly unable to conduct its business or operate because it has been deprived of use of the Platform and the other Trade Secrets. Unless this Court restrains Defendants from using and disclosing Folding Light's trade secrets, the harm will continue to occur in the future. Accordingly, Folding Light is entitled to injunctive relief.

177. Because Defendants' misappropriation of Folding Light's Trade Secrets was willful and malicious, Folding Light is entitled to an award of attorneys' fees pursuant to Section 5 of ITSA. 765 ILCS 1065/5.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count III in its favor and against Defendants Kasey Klaas, Jon Schlossberg, Matthew Andrews, Rizwan Patel, Matthew Leli, Peter Zhang, and Bunny Foo Foo Labs, LLC and enter an order:

A. Entering a preliminary and permanent injunction against Defendants and persons or entities within their control from using, copying, disclosing or otherwise making the Trade Secrets, Confidential Information and Intellectual Property available to any third-party and from doing business using any of the foregoing;

B. Ordering Defendants and persons or entities within their control to return any and all copies of Folding Light's Trade Secrets and Confidential Information including but not limited to the Platform, any derivative works, and Folding Light's computers and other property;

C. Awarding actual damages and Defendants' profits to Folding Light;

D.    Awarding punitive or exemplary damages to Folding Light for Defendants' willful and deliberate misappropriation, use, and disclosure of Folding Light's trade secrets;

E.    Award Folding Light its reasonable attorneys' fees and costs incurred as a result of Defendants' willful misappropriation of its trade secrets;

F.    Awarding statutory pre- and post-judgment interest on all amounts awarded; and

G.    Providing for such other or further relief as provided for in ITSA or as the Court deems just and equitable.

**Count IV**
**Conversion--Platform**
**(All Defendants)**

178.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 177.

179.    Pursuant to The LLC Agreement §§ 6.6(b)-(c), the Trade Secrets, including the Platform, are the intellectual property of Folding Light.

180.    The computers stolen from Folding Light's office and other tangible property remaining in Defendants' possession are also the property of Folding Light.

181.    The Trade Secrets, Confidential Information, and Folding Light's other Intellectual Property were stolen by Defendants through theft of Folding Light's computers.

182.    By stealing the Trade Secrets, Confidential Information, including the Platform, Folding Light's computers, its other tangible property, and its other Intellectual Property, and by refusing to return these items remaining in Defendants' possession, Defendants wrongfully and without authorization assumed control, dominion, or ownership over Folding Light's Trade Secrets and Confidential Information, including the Platform, Folding Light's computers, its other tangible property, and its other Intellectual Property.

183.    Folding Light has an unconditional and absolute right to the Trade Secrets and Confidential Information, including the Platform, the stolen computers, the stolen other tangible property, and its other Intellectual Property, remaining in Defendants' possession, and to their return.

184.    Folding Light has demanded, including in Schlossberg's and Andrews' termination letters, the return of the Trade Secrets and Confidential Information, including the Platform, the stolen computers, the stolen other tangible property, and its other Intellectual Property remaining in Defendants' possession.

185.    Despite Folding Light's demands, Defendants have and continue to wrongfully and without authorization assume control over the Trade Secrets and Confidential Information, the Platform, the stolen computers, the stolen other tangible property, and Folding Light's other Intellectual Property remaining in Defendants' possession.

186.    As a result of Defendants' refusal to return Folding Lights property, Folding Light has suffered damages in the form of lost ability to control and exploit its own Intellectual Property and Trade Secrets and in the form of the value of the tangible property in Defendants' possession.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count IV in its favor and against Defendants Kasey Klaas, Jon Schlossberg, Matthew Andrews, Rizwan Patel, Matthew Leli, Peter Zhang and Bunny Foo Foo Labs, LLC and enter an order:

A.      Awarding Plaintiff the compensatory and consequential damages resulting from the acts complained of in this Count IV, in amounts to be determined at trial;

B.      Awarding Plaintiff punitive damages as a result of Defendants' willful and malicious conduct;

C.     Awarding statutory pre- and post-judgment interest on all amounts awarded; and

D.     Providing for such other or further relief as the Court deems just and equitable.

**Count V**
**Conversion—Office Furniture**
**(Defendant Klaas)**

187.     Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 186.

188.     Klaas took office furniture from Folding Light's offices without permission of Folding Light.

189.     Folding Light has an unconditional and absolute right to the office furniture.

190.     Folding Light has demanded the return of the office furniture.

191.     Despite Folding Light's demands, Klaas has and continues to wrongfully and without authorization assume control over the office furniture.

192.     By taking Folding Light's office furniture and refusing to return it, Klaas wrongfully and without authorization assumed control, dominion, or ownership over the office furniture.

193.     As a result of Klaas' refusal to return Folding Lights property, Folding Light has suffered damages in the form of lost ability to control and use its office furniture and in the form of the value of the tangible property in Defendants' possession.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count V in its favor and against Defendant Kasey Klaas and enter an order:

A.     Awarding Plaintiff the compensatory and consequential damages resulting from the acts complained of in this Count V, in amounts to be determined at trial;

B. Awarding Plaintiff punitive damages as a result of Defendant's willful and malicious conduct;

C. Awarding statutory pre- and post-judgment interest on all amounts awarded; and

D. Providing for such other or further relief as the Court deems just and equitable.

**Count VI**
**Breach of Contract**
**(Defendant Schlossberg)**

194. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 193.

195. The LLC Agreement is a valid contract entered into, among others, by Schlossberg.

196. Folding Light performed all of its obligations under the LLC Agreement

197. Under the LLC Agreement, Schlossberg agreed to not disclose Folding Light's confidential information:

> Each Member therefore agrees that for so long as he is a Member, *and for the longest period of time permitted by law thereafter*, such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account.

(Ex. A, § 6.5(c)) (emphasis added).

198. The Trade Secrets, including the Platform, consist of Confidential Information and Intellectual Property pursuant to The LLC Agreement.

199.     The Confidential Information and Intellectual Property terms of the LLC Agreement are material.

200.     Schlossberg has breached his obligations under the LLC Agreement by, without the prior written consent of Folding Light:

    a.    Directly using, copying, and disclosing the Trade Secrets for purposes other than in connection with the performance of his duties for Folding Light;

    b.    Failing to take such protective measures as may be reasonably necessary to preserve the secrecy and interest of Folding Light in the Trade Secrets; and

    c.    Using and converting the Trade Secrets for his own benefit and gain.

201.     In addition, Section 6.5(a) of the LLC Agreement prohibits Folding Light's members from soliciting Folding Light's employees, contractors, or anyone engaged by Folding Light, and Folding Light's investors, following the members' separation from Folding Light.

202.     The non-solicitation term the LLC Agreement is material and enforceable.

203.     Schlossberg breached his obligations under Section 6.5(a) of the LLC Agreement by: (a) employing Zhang, Patel, Leli, Andrews and/or Klaas  to work with Schlossberg in his new, competing business; (b) by soliciting investment from Investors and Potential Investors of Folding Light, including without limitation the Mallers; and (c) by otherwise seeking to influence and alter the relationship between Folding Light and the foregoing persons.

204.     In addition, Section 6.5(c) of the LLC Agreement prohibits a departing member on "garden leave" from working for any other entity and requires their cooperation in transitioning their services to Folding Light.

205.     The garden leave term of the LLC Agreement is material and enforceable.

206.     Schlossberg also breached his obligations under the LLC Agreement by associating with a competing company while on garden leave, in violation of Section 6.5(c) of the LLC Agreement, which prohibits him for one year from "providing services to any Person other than [Folding Light]," and by failing to return Folding Light's property and helping Folding Light to access its Trade Secrets, Confidential Information, and Intellectual Property.

207.     These failures constitute material breaches of Schlossberg's obligations under the LLC Agreement.

208.     Folding Light has suffered and continues to suffer damages as a result of Schlossberg's breaches of the LLC Agreement, including without limitation the loss of the value of its Trade Secrets, Confidential Information and Intellectual Property as well as its relationships with its Investors.

209.     Pursuant to the LLC Agreement, Folding Light is entitled to an award of attorney's fees and its costs for bringing this action to enforce the terms of the LLC Agreement.

210.     Defendant Schlossberg's breaches of the Confidential Information, Intellectual Property, garden leave and non-solicitation provisions of the LLC Agreement have caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be redressed through damages alone.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count VI in its favor and against Defendant Jon Schlossberg and enter an order:

A.     Entering a preliminary and permanent injunction against Schlossberg enjoining him from further breaches of the LLC Agreement and requiring the return of all Folding Light Trade Secrets, Confidential Information and Intellectual Property;

36

B.     Entering a preliminary and permanent injunction prohibiting Schlossberg from providing services to any person other than Folding Light while on garden leave;

C.     Awarding Plaintiff the compensatory and consequential damages resulting from the acts complained of in this Count VI, in amounts to be determined at trial;

D.     Awarding statutory pre- and post-judgment interest on all amounts awarded

E.     Awarding Folding Light its reasonable attorney's fees and costs expended as a result of Schlossberg's breaches of the LLC Agreement; and

F.     Providing for such other or further relief as the Court deems just and equitable.

**Count VII**
**Breach of Contract**
**(Defendant Andrews)**

211.     Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 210.

212.     The LLC Agreement is a valid contract entered into, among others, by Andrews.

213.     Folding Light performed all of its obligations under the LLC Agreement.

214.     Under the LLC Agreement, Andrews agreed to not disclose Folding Light's confidential information:

Each Member therefore agrees that for so long as he is a Member, *and for the longest period of time permitted by law thereafter*, such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account.

37

(Ex. A, § 6.5(c)) (emphasis added).

215.    The Trade Secrets, including the Platform, are Confidential Information and Intellectual Property pursuant to the LLC Agreement.

216.    The Confidential Information and Intellectual Property terms of the LLC Agreement are material.

217.    Andrews has breached his obligations under the LLC Agreement by, without the prior written consent of Folding Light:

        a.    Directly using, copying, and disclosing the Trade Secrets for purposes other than in connection with the performance of his duties for Folding Light;

        b.    Failing to take such protective measures as may be reasonably necessary to preserve the secrecy and interest of Folding Light in the Trade Secrets; and

        c.    Using and converting the Trade Secrets for his own benefit and gain.

218.    In addition, Section 6.5(a) of the LLC Agreement prohibits Folding Light's members from soliciting Folding Light's employees, contractors, or anyone engaged by Folding Light, and Folding Light's investors, following the members' separation from Folding Light.

219.    The non-solicitation term the LLC Agreement is material and enforceable.

220.    Andrews breached his obligations under Section 6.5(a) of the LLC Agreement by: (a) employing Zhang, Patel, Leli, Schlossberg and/or Klaas to work with Andrews in his new, competing business; (b) by soliciting investment from Investors and Potential Investors of Folding Light, including without limitation the Mallers; and (c) by otherwise seeking to influence and alter the relationship between Folding Light and the foregoing persons.

221.    In addition, Section 6.5(c) of the LLC Agreement prohibits a departing member on "garden leave" from working for any other entity and requires their cooperation in transitioning their services to Folding Light.

222.    The garden leave term of the LLC Agreement is material and enforceable.

223.    Andrews also breached his obligations under the LLC Agreement by associating with a competing company while on garden leave, in violation of Section 6.5(c) of the LLC Agreement, which prohibits him for one year from "providing services to any Person other than [Folding Light]," and by failing to return Folding Light's and by failing to return Folding Light's property and helping Folding Light to access its Trade Secrets, Confidential Information, and Intellectual Property.

224.    These failures constitute material breaches of Andrews' obligations under the LLC Agreement.

225.    Folding Light has suffered and continues to suffer damages as a result of Andrews' breaches of the LLC Agreement, including without limitation the loss of the value of its Trade Secrets, Confidential Information, and Intellectual Property as well as its relationships with its Investors.

226.    Pursuant to the LLC Agreement, Folding Light is entitled to an award of attorney's fees and costs for bringing this action to enforce the terms of the LLC Agreement.

227.    Defendant Andrews' breaches of the Confidential Information, Intellectual Property, garden leave and non-solicitation provisions of the LLC Agreement have caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be redressed through damages alone.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count VII in its favor and against Defendant Matthew Andrews and enter an order:

A.  Entering a preliminary and permanent injunction against Andrews enjoining him from further breaches of the LLC Agreement and requiring the return of all Folding Light Trade Secrets, Confidential Information and Intellectual Property;

B.  Entering a preliminary and permanent injunction prohibiting Schlossberg from providing services to any person other than Folding Light while on garden leave;

C.  Awarding Plaintiff the compensatory and consequential damages resulting from the acts complained of in this Count VII, in amounts to be determined at trial;

D.  Awarding statutory pre- and post-judgment interest on all amounts awarded;

E.  Awarding Folding Light its reasonable attorney's fees and costs expended as a result of Andrews' breaches of the LLC Agreement; and

F.  Providing for such other or further relief as the Court deems just and equitable.

**Count VIII**
**Breach of Contract**
**(Defendant Klaas)**

228.  Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 227.

229.  The LLC Agreement is a valid contract entered into, among others, by Klaas.

230.  Folding Light has performed all of its obligations under the LLC Agreement.

231.  Under the LLC Agreement, Klaas agreed to not disclose Folding Light's confidential information:

Each Member therefore agrees that for so long as he is a Member, *and for the longest period of time permitted by law thereafter*, such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any

Confidential Information (as defined below) other than in the performance such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account.

(Ex. A, § 6.5(c)) (emphasis added).

232.    The Trade Secrets, including the Platform, are Confidential Information and Intellectual Property pursuant to the LLC Agreement.

233.    The Confidential Information and Intellectual Property terms of the LLC Agreement are material.

234.    Upon information and belief, Klaas has breached his obligations under the LLC Agreement by, without the prior written consent of Folding Light:

    a.    Directly using, copying, and disclosing the Trade Secrets for purposes other than in connection with the performance of his duties for Folding Light;

    b.    Failing to take such protective measures as may be reasonably necessary to preserve the secrecy and interest of Folding Light in the Trade Secrets; and

    c.    Using and converting the Trade Secrets for his own benefit and gain.

235.    In addition, Section 6.5(a) of the LLC Agreement prohibits Folding Light's members from soliciting Folding Light's employees, contractors, or anyone engaged by Folding Light, and Folding Light's investors, following the members' separation from Folding Light.

236.    The non-solicitation term the LLC Agreement is material and enforceable.

237.   In addition, Klaas breached his obligations under Section 6.5(a) of the LLC Agreement by: (a) employing Zhang, Patel, Leli, Schlossberg and/or Andrews to work with Klaas in his new, competing business; (b) by soliciting investment from Investors and Potential Investors of Folding Light, including without limitation the Mallers; and (c) by otherwise seeking to influence and alter the relationship between Folding Light and the foregoing persons.

238.   These failures constitute material breaches of Klaas' obligations under the LLC Agreement.

239.   Folding Light has suffered and continues to suffer damages as a result of Klaas' breaches of the LLC Agreement, including without limitation the loss of the value of its Trade Secrets, Confidential Information and Intellectual Property.

240.   Pursuant to the LLC Agreement, Folding Light is entitled to an award of attorney's fees and costs for bringing this action to enforce the terms of the LLC Agreement.

241.   Defendant Klaas' breaches of the Confidential Information, Intellectual Property, and non-solicitation provisions of the LLC Agreement have caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be redressed through damages alone.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count VIII in its favor and against Defendant Kasey Klaas and enter an order:

A.   Entering a preliminary and permanent injunction against Andrews enjoining him from further breaches of the LLC Agreement and requiring the return of all Folding Light Trade Secrets, Confidential Information and Intellectual Property;

B.   Awarding Plaintiff the compensatory and consequential damages resulting from the acts complained of in this Count VIII, in amounts to be determined at trial;

C.     Awarding statutory pre- and post-judgment interest on all amounts awarded;

D.     Awarding Folding Light its reasonable attorney's fees and costs expended as a result of Klaas' breaches of the LLC Agreement; and

E.     Providing for such other or further relief as the Court deems just and equitable.

**Count IX**
**Tortious Interference With Contract**
**(Defendant Bunny Foo Foo Labs, LLC)**

242.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 241.

243.    Folding Light on the one hand, and Defendants Klaas, Andrews, and Schlossberg on the other hand, are parties to the LLC Agreement.

244.    The LLC Agreement is a valid and enforceable contract.

245.    Upon information and belief, at all relevant times Defendants Klaas, Andrews, and Schlossberg have been and are members and/or employees of Bunny Foo Foo Labs.

246.    By virtue of Klaas', Andrews', and Schlossberg's roles at Bunny Foo Foo Labs, Bunny Foo Foo Labs had actual knowledge of the existence of the valid and enforceable LLC Agreement between Folding Light on the one hand and Klaas, Andrews, and Schlossberg on the other hand, as well as Klaas', Andrews', and Schlossberg's confidentiality obligations pursuant to Section 6.5(b) of the LLC Agreement to maintain the secrecy of Folding Light's Trade Secrets, Confidential Information, and Intellectual Property, including the Platform, and to not disclose that information to any third-parties not in connection with Folding Light's business.

247.    Additionally, by virtue of Andrews' and Schlossberg's roles at Bunny Foo Foo Labs, Bunny Foo Foo Labs had actual knowledge of the fact that pursuant to Section 6.5(c) of the LLC Agreement, Andrews and Schlossberg were placed on "garden leave" preventing them

from "providing services to any Person other than [Folding Light]" beginning on October 31, 2018 for no greater than 12 months.

248.     Despite this knowledge, Bunny Foo Foo Labs tortiously and without justification interfered with the LLC Agreement by encouraging Klaas, Andrews, and Schlossberg to steal Folding Light's Confidential Information, Intellectual Property, and Trade Secrets, including the Platform, and to disclose it to Bunny Foo Foo Labs so that Bunny Foo Foo Labs could compete with Folding Light.

249.     Additionally, Bunny Foo Foo Labs tortiously and without justification interfered with the LLC Agreement by recruiting Andrews and Schlossberg to provide services to Bunny Foo Foo Labs while they were prohibited from providing services to Bunny Foo Foo Labs pursuant to Sections 6.5(a) and 6.5(c) of the LLC Agreement.

250.     As the result of Bunny Foo Foo Labs' interference, Folding Light has suffered damages in an amount to be determined at trial of this cause.

251.     Bunny Foo Foo Labs acted willfully, maliciously, and with intentional disregard of Folding Light's rights, thereby entitling Folding Light to punitive damages in an amount to be determined at trial.

252.     Bunny Foo Foo Labs' interference has caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be fully redressed through damages alone.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count IX in its favor and against Defendant Bunny Foo Foo Labs, LLC and enter an order:

A.     Entering a preliminary and permanent injunction against Bunny Foo Foo Labs and persons or entities within its control preventing them from using, duplicating, or disclosing to any third-party the Trade Secrets, including

the Platform, Folding Light's Confidential Information, or Folding Light's Intellectual Property;

B.      Entering a preliminary and permanent injunction against Bunny Foo Foo Labs prohibiting it from employing Schlossberg and Andrews for a period of twelve months;

C.      Entering a preliminary and permanent injunction against Bunny Foo Foo Labs and persons or entities within its control requiring them to return any and all copies of the Platform, Folding Light's confidential information, or Folding Light's intellectual property;

D.      Awarding compensatory damages for the actual losses incurred due to Bunny Foo Foo Labs' tortious interference with the LLC Agreement;

E.      Awarding punitive damages due to the willful and malicious nature of Bunny Foo Foo Labs' conduct;

F.      Awarding statutory pre- and post-judgment interest on all amounts awarded; and,

G.      Providing for such other or further relief as the Court deems just and equitable.

**Count X**
**Tortious Interference with Contract**
**(Defendants Klaas, Schlossberg, and Andrews)**

253.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 252.

254.    Folding Light has a valid and enforceable contract with Radius IT to provide information technology services to Folding Light.

255.    Defendants Klaas, Schlossberg and Andrews knew about Radius IT's contract to provide information technology services, and in fact worked with Radius IT to obtain such services for Folding Light prior to their departure.

256.    Following their departure, upon information and belief Defendants Klaas, Schlossberg and Andrews lied to Radius IT, disparaged Flagstad and Folding Light, and

otherwise wrongfully induced Radius IT to cease, without notice, performing services for Folding Light in breach of Radius IT's agreement.

257.     In so doing, these Defendants intentionally and without justification induced Radius IT to breach its agreement.

258.     Radius IT breached its agreement with Folding Light.

259.     Radius's breach, and these Defendants' inducement of that breach, caused substantial damages to Folding Light.

260.     These Defendants acted willfully, maliciously, and with intentional disregard of Folding Light's rights, thereby entitling Folding Light to punitive damages in an amount to be determined at trial.

261.     These Defendants' interference has caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be fully redressed through damages alone.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count X in its favor and against Defendants Klaas, Schlossberg and Andrews and enter an order:

A.     Entering a preliminary and permanent injunction against Defendants Klaas, Schlossberg and Andrews prohibiting them from further interference with the Radius IT agreement;

B.     Awarding compensatory damages for the actual losses incurred due to these Defendants' tortious interference with the Radius IT agreement;

C.     Awarding punitive damages due to the willful and malicious nature of these Defendants' conduct;

D.     Awarding statutory pre- and post-judgment interest on all amounts awarded; and

E.     Providing for such other or further relief as the Court deems just and equitable.

## Count XI
## Tortious Interference with Business Expectancy
### (Klaas, Schlossberg, Andrews, Zhang, and Patel)

262.     Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 261.

263.     At the time Defendants began their competing business venture, Folding Light had a reasonable expectation of entering into and/or continuing its business relationships with the Mallers. At all times relevant hereto, Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel were aware of Folding Light's business expectancies with the Mallers because each of these defendants was involved in maintaining Folding Light's business relationship with the Mallers.

264.     Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel intentionally and without justification interfered with Folding Light's valid business relationship with the Mallers by usurping this business with the Mallers and failing to offer the business opportunity to Folding Light.

265.     As a direct and proximate result of the Defendants' unlawful conduct, Folding Light has sustained substantial damages, including lost profits and the loss of goodwill.

266.     These Defendants' tortious interference was marked by deception and bad faith, warranting the imposition of punitive damages.

267.     These Defendants' interference has caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be fully redressed through damages alone.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count XI in its favor and against Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel and enter an order:

A. Entering a preliminary and permanent injunction against Defendants Klaas, Schlossberg, Andrews, Zhang and Patel prohibiting them from further interference with Folding Light's relationship with the Mallers;

B. Awarding all compensatory damages resulting from these Defendants' tortious interference in an amount to be proven at trial;

C. Awarding punitive damages due to the intentional, bad faith, willful and malicious nature of these Defendants' conduct;

D. Awarding statutory pre- and post-judgment interest on all amounts awarded;

E. Providing for such other or further relief as the Court deems just and equitable.

## Count XII
## Breach of Fiduciary Duty
### (Defendants Klaas, Schlossberg, and Andrews)

268. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 267.

269. Defendant Klaas is a member of Folding Light.

270. At all relevant times prior to their termination, Defendants Schlossberg and Andrews were members of Folding Light.

271. At all relevant times prior to his termination, Defendant Schlossberg was a manager of Folding Light.

272. By virtue of their status as members and/or managers of Folding Light, Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel owed fiduciary duties of loyalty, care, and good faith to Folding Light.

273. Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel breached their fiduciary duties of loyalty, care, and good faith to Folding Light by:

a.     Copying and stealing the Trade Secrets, including the Platform, and disclosing them to third-parties, including but not limited to Bunny Foo Foo Labs;

b.     Directly using the Trade Secrets for Bunny Foo Foo Labs' and their own benefit, and to the detriment of Folding Light, prior to their terminations;

c.     Failing to take such protective measures as may be reasonably necessary to preserve the secrecy and interest of Folding Light in the Trade Secrets;

d.     Defendants Andrews and Schlossberg providing services to Bunny Foo Foo Labs, Folding Light's direct competitor, after Folding Light placed them on garden leave;

e.     Stealing property from Folding Light, including without limitation Folding Light's computers and office furniture, for Bunny Foo Foo Labs' and their own benefit;

f.     Deleting the Platform and other Trade Secrets from Folding Labs' computers in an effort to conceal their misconduct and to prevent Folding Light from using the Trade Secrets; and,

g.     Using the Platform and Folding Light's other Trade Secrets to siphon Folding Light's trading customers to Bunny Foo Foo Labs and to usurp other business opportunities that rightfully belong to Folding Light.

274.    In the absence of Defendants Klaas', Andrews', and Schlossberg's actions, Defendant Bunny Foo Foo Labs would not be able to operate or to provide products or services to Folding Light's customers.

275.     As a direct and proximate result of Klaas', Andrews', and Schlossberg's breaches, Folding Light has been severely and irreparably damaged, and Defendants have unlawfully profited and benefited.

276.     Klaas', Andrews', and Schlossberg's actions were willful and malicious and undertaken with reckless indifference to Folding Light's rights.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count XII in its favor and against Defendants Kasey Klaas, Jon Schlossberg, and Matthew Andrews, and enter an order:

A.     Requiring Defendants to provide to Folding Light an account of Defendants' profits arising from Klaas', Andrews', and Schlossberg's breaches of their fiduciary duties to Folding Light;

B.     Awarding Folding Light compensatory damages for the actual losses incurred due to Klaas', Andrews', and Schlossberg's breaches of their fiduciary duties to Folding Light, including disgorgement the value of any salary or benefits paid to Klaas, Andrews, or Schlossberg during the time of their ongoing breaches of their fiduciary duties to Folding Light;

C.     Awarding Folding Light punitive damages due to the willful and malicious nature of Klaas', Andrews', and Schlossberg's conduct;

D.     Awarding Folding Light its reasonable attorneys' fees and costs incurred as a result of the breaches of fiduciary duties;

E.     Awarding statutory pre- and post-judgment interest on all amounts awarded; and,

F.     Providing for such other or further relief as the Court deems just and equitable.

**Count XIII**
**Aiding and Abetting Breach of Fiduciary Duty**
**(Against Patel, Leli, Zhang and Bunny Foo Foo Labs)**

277.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 276.

278.    At all relevant times, Patel, Leli, Zhang and Bunny Foo Foo Labs, through its agents, knew that Klaas, Schlossberg and Andrews were founding members and/or managers of Folding Light and therefore owed Folding Light fiduciary duties, including, among others, duties of loyalty and good faith and the duty not to engage in self-dealing or to usurp corporate opportunities of Folding Light.

279.    As set forth above, these Defendants, in order to advance their own financial interests, knowingly aided and abetted, encouraged and actively participated in Klaas, Schlossberg, and Andrews' breaches of their fiduciary duties by, among other things, helping them to steal Folding Light's Trade Secrets, computers and other property, and providing them with resources and assistance in setting up an identical competing business.

280.    These Defendants' aid, abetment and active participation in the breaches of fiduciary duties of Klaas, Schlossberg and Andrews directly and proximately caused Folding Light to suffer damages, including the complete loss of their business.

281.    These Defendants' aid, abetment and active participation in these breaches of fiduciary duties was vexatious and intentionally and deliberately harmful to Folding Light.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count XIII in its favor and against Defendants Patel, Leli, Zhang and Bunny Foo Foo Labs, LLC, and enter an order:

A.   Awarding Folding Light compensatory damages resulting from these Defendants' aiding and abetting the breaches of fiduciary duties of Klaas, Schlossberg and Andrews;

B.   Awarding Folding Light disgorgement of all money and benefits received by these Defendants as a result of their wrongful conduct;

C.   Awarding Folding Light punitive damages due to the willful and malicious nature of their conduct;

D.   Awarding statutory pre- and post-judgment interest on all amounts awarded; and,

E.   Providing for such other or further relief as the Court deems just and equitable.

**Count XIV**
**Civil Conspiracy**
**(All Defendants)**

282.   Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 281.

283.   The Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct, as described herein, including, among other things, theft of trade secrets and other property, copyright infringement, breach of fiduciary duty and tortious interference.

284.   As part of this conspiracy, between at least October 19, 2018 and November 5, 2018, Defendants agreed to a common scheme to steal computers from Folding Light, erase nearly all data from Folding Light's remaining computers, and use Folding Lights' Trade Secrets, including the Platform, for their own personal gain.

285.   To further their common scheme, Defendants agreed to participate together in a number of unlawful overt acts, including theft of the computers, illegally retaining Folding Light's property, and erasing Folding Light's other computers.

286.     Defendants committed each of the foregoing overt acts.

287.     Folding Light cannot be sure of the exact date or dates that Defendants reached their agreement to participate in the unlawful acts against it, but on information and belief, these agreements were reached in communications that will be produced by Defendants in discovery.

288.     The intent and purpose of the conspiracy, and the underlying combination of unlawful acts and misconduct committed by the Defendants was to usurp Folding Light's corporate opportunities and business. Each of the Defendants had a financial motive and incentive to accomplish the foregoing conspiracy.

289.     The Defendants understood and accepted the foregoing scheme and agreed to do its/his respective part, as described herein, to further and accomplish the foregoing objective.

290.     By entering into this conspiracy, the Defendants permitted, encouraged and/or induced all of the unlawful acts and misconduct as described herein.

291.     As a direct and proximate result of the Defendants' unlawful conduct, Folding Light has sustained substantial damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on Count XIV in its favor and against Defendants Kasey Klaas, Jon Schlossberg, Matthew Andrews, Rizwan Patel, Matthew Leli, Peter Zhang and Bunny Foo Foo Labs, LLC and enter an order:

A.     Awarding Plaintiff the compensatory and consequential damages resulting from the acts complained of in this Count XIV, in amounts to be determined at trial;

B.     Awarding Plaintiff punitive damages as a result of Defendants' tortious conduct;

C.     Awarding statutory pre- and post--judgment interest on all amounts awarded; and

D.     Providing for such other or further relief as the Court deems just and equitable.

## JURY DEMAND

**Folding Light demands a jury trial on all issues so triable.**

Respectfully submitted,

FOLDING LIGHT, LLC,

June 12, 2019                        By:_____ /s/ Brian C. Haussmann_____
                                                    One of Their attorneys

Brian C. Haussmann (ARDC #6283054)
Jacob B. Berger (ARDC #6318332)
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street
7th Floor
Chicago, Illinois 60604
Phone: (312) 762-9450
Fax: (312) 261-1165
bhaussmann@tdrlawfirm.com
jberger@tdrlawfirm.com