**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FOLDING LIGHT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-03949 |
| | ) | |
| KASEY KLAAS, MATTHEW ANDREWS, | ) | Judge Harry D. Leinenweber |
| JON SCHLOSSBERG, RIZWAN PATEL, | ) | |
| MATTHEW LELI, PETER ZHANG, and | ) | |
| BUNNY FOO FOO LABS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**MATTHEW LELI'S ANSWER TO PLAINTIFF'S
COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

NOW COMES Defendant, MATTHEW LELI ("Leli"), by and through his attorneys, Gross

& Boyle, LLC, and responding to Plaintiff's Complaint for Injunctive and Other Relief, answers

as follows:

1.     This action arises out of Defendants' intentional and malicious theft and destruction

of Folding Light's entire business, including nearly all of its confidential trade secrets, intellectual

property, and other property.  The Individual Defendants, all of whom are now or were formerly

affiliated with Folding Light either as a manager, member, or contractor, surreptitiously entered

Folding Light's offices after hours and stole Folding Light's computers, trade secrets, intellectual

property, and other assets, including even its furniture.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged and that he was formerly

affiliated with Plaintiff as a contract worker, but Leli denies that he engaged in any of the alleged

wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

2.     In an effort to conceal their misconduct and in a further effort to destroy Folding Light's business, the Individual Defendants also maliciously deleted nearly all information and data from Folding Light's remaining computers, including Folding Light's confidential and proprietary trading software platform that was the centerpiece of Folding Light's business.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged, but Leli denies that he engaged in any of the alleged wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

3.     Upon information and belief, the Individual Defendants have used the information and property they stole from Folding Light, including Folding Light's trading platform, other trade secrets and intellectual property, and computers to form a competing business, Bunny Foo Foo Labs, LLC ("Bunny Foo Foo Labs") and to siphon away Folding Light's trading customers.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged, but Leli denies that he engaged in any of the alleged wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

4.     After Defendants stole and destroyed Folding Light's intellectual property, trade secrets, and other property, Defendants engaged in a malicious campaign to disparage Folding Light's principals, to usurp its relationships with investors and customers, and to cut off Folding Light's access to capital.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged, but Leli denies that he engaged in any of the alleged wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

5.    Unfortunately, Defendants' illegal campaign was all too successful. Defendants' illegal theft and wanton campaign to usurp for themselves Folding Light's investments and relationships has destroyed Folding Light's business and left it unable to operate.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged, but Leli denies that he engaged in any of the alleged wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

6.    Defendants' conduct gives rise to liability for violation of the Computer Fraud and Abuse Act, misappropriation of trade secrets under the Illinois Trade Secrets Act and the Defend Trade Secrets Act, conversion, breach of contract, tortious interference with contract, tortious interference with business expectancy, and breach of fiduciary duties.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged, but Leli denies that he engaged in any of the alleged wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

7.    Accordingly, Folding Light brings this action seeking injunctive relief, damages, disgorgement of profits, statutory penalties, and attorneys' fees.

ANSWER:

Leli admits only that Plaintiff has styled its action as alleged, but Leli denies that he engaged in any of the alleged wrongdoing and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

8. Folding Light is a Delaware limited liability company with its principal place of business located at 215 West Ohio Street, Chicago, Illinois 60654.

ANSWER:

Leli admits that he performed services for Plaintiff at 215 W. Ohio Street, Chicago Illinois 60654, but he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

9. Klaas is a member of Folding Light and a citizen of the State of Illinois.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

10. Andrews is a former member of Folding Light and is a citizen of the State of Illinois.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

11. Schlossberg is a former member and manager of Folding Light and is a citizen of the State of Illinois.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

4

12.     Patel is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

13.     Leli is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

ANSWER:

Leli admits the allegations of this paragraph.

14.     Zhang is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

15.     Bunny Foo Foo Labs, LLC is a Delaware limited liability company with its principal place of business located at 401 West Superior Street, Chicago, Illinois.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

16.     Pursuant to 28 U.S.C. § 1331, this court has original jurisdiction as Folding Light's Computer Fraud and Abuse Act and Defend Trade Secrets Act claims arise under federal law.

ANSWER:

Leli admits the jurisdiction of this court over the claims asserted but denies the merits of the claims asserted against him.

17.     Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction over the claims arising under Illinois law because they are so related to the claims providing original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

ANSWER:

Leli admits the jurisdiction of this court over the claims asserted but denies the merits of the claims asserted against him.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this district. Folding Light is located in Cook County, Illinois, and Defendants' theft of confidential information, trade secrets, and Folding Light's other property occurred in Cook County, Illinois.

ANSWER:

Leli admits that venue is proper in this court but denies the merits of the claims asserted against him.

19.     In 2017, Brock Flagstad ("Flagstad"), Kasey Klaas ("Klaas"), Jon Schlossberg ("Schlossberg"), and Matt Andrews ("Andrews") began working on the Folding Light business.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

20.     Folding Light was in the business of electronically trading securities and commodities in several markets.

ANSWER:

Leli is admits that Plaintiff engaged in electronically trading securities and cryptocurrency futures, but is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

21.     Beginning in May 2017, Andrews and Schlossberg were retained as independent contractors. Schlossberg was primarily responsible for developing Folding Light's trading platform (as described below) and identifying and creating electronic trades for Folding Light to conduct.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

22.     Andrews was primarily responsible for business development and raising capital with which Folding Light could trade.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

23.     Andrews and Schlossberg were each paid $250,000 per year for this work.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

24.     Beginning in late 2017, Folding Light sought and obtained millions of dollars in outside investment so that it could grow its business. In connection with the outside investment, Folding Light prepared a formal operating agreement by which it would be governed.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

25. On February 1, 2018, Flagstad, Klaas, Schlossberg, Andrews, Rick Sterioti ("Sterioti"), and James Streibich ("Streibich"), as representative of the James Streibich Revocable Trust of 2002, entered into the Folding Light, LLC Limited Liability Company Agreement (the "LLC Agreement").

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

26. A true and accurate copy of the LLC Agreement is attached as Exhibit A.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

27. Pursuant to the LLC Agreement, Folding Light is managed by a Management Committee:

> . . . the business and affairs of the Company shall be managed under the direction of its Managers (collectively, the "Management Committee"). Except as otherwise specifically provided herein or by Applicable Law, the Management Committee shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company and to take all such actions as the Management Committee deems necessary or appropriate to accomplish the purposes of the Company as set forth herein (including without limitation the making of decisions affecting investments, distributions and compensation).

(Ex. A, § 6.1(a)).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

28.     The initial Management Committee was comprised of Flagstad, Schlossberg, and Streibich.  (Ex. A, § 6.1(d)).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

29.     Pursuant to the LLC Agreement, Flagstad was the Lead Manager of Folding Light. (Ex. A, § 6.1(i)).  He remains the Lead Manager today.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

30.     The LLC Agreement further provides that:

Upon the Company's request, any Member who has notified the Company of his or her resignation or has been terminated by the Company shall agree to a "garden leave" for a period not to exceed twelve (12) months, as determined by the Management Committee, during which period such Member shall (i) provide services to the Company from a remote location, (ii) refrain from providing services to any Person other than the Company, (iii) adhere to the other provisions of this Section 6.5 and (iv) be entitled to compensation commensurate with the services provided.

(Ex. A, § 6.5(c)).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

31.     The LLC Agreement defines "Intellectual Property" as:

. . . the rights associated with or arising out of any of the following: (i) domestic and foreign patents and patent applications, together with all reissuances, divisionals, continuations, continuations-in-part, revisions, renewals, extensions, and reexaminations thereof, and any identified invention disclosures; (ii) trade secret rights and corresponding rights in confidential information and other non-public information (whether or not patentable), including ideas, formulas, compositions, inventor's notes, discoveries and improvements, know-how, manufacturing and production processes and techniques, testing information, research and development information, inventions, invention disclosures, unpatented blueprints, drawings, specifications, designs, plans, proposals and technical data, business and marketing plans, market surveys, market know-how and customer lists and information (iii) all copyrights, copyrightable works, rights in databases, data collections, "moral" rights, mask works, copyright registrations and applications therefor and corresponding rights in works of authorship; (iv) all trademarks, service marks, logos, trade dress and trade names and domain names indicating the source of goods or services, and other indicia of commercial source or origin (whether registered, common law, statutory or otherwise), all registrations and applications to register the foregoing anywhere in the world and all goodwill associated therewith; (v) all computer software and code, including assemblers, applets, compilers, source code, object code, development tools, design tools, user interfaces and data, in any form or format, however fixed; and (vi) all Internet domain names, electronic addresses, websites, proprietary symbol sets and proprietary voices, uniform resource locators and alphanumeric designations associated therewith and all registrations for any of the foregoing.

(Ex. A, pp. 9-10).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

32. The LLC Agreement states that all Intellectual Property is the property of Folding Light:

(b) Each Member agrees that (i) to the extent permitted by Applicable Law, all such Intellectual Property Created after the date of this Agreement (collectively, the "LLC IP") shall be deemed a "work made for hire" within the meaning of that term under United States Copyright Act, 17 U .S.C. §§ 101 *et seq.*, as amended or superseded, and (ii) the Company shall be deemed the exclusive author of such LLC IP and the exclusive owner of all rights, title and interest in and to such LLC IP in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised.

(c) Each Member hereby (i) assigns and transfers to the Company, in respect of each item of LLC IP, as of the date of its Creation, any and all rights, title and interest such Member may have or acquire in and to any LLC IP (including any LLC IP not deemed, for whatever reason, to be a work made for hire); and (ii) irrevocably waives and assigns to the Company any and all so-called moral rights or "droit moral" as such Member may have in or with respect to such LLC IP. Each Member hereby represents and warrants (x) it shall not make any grant, pledge, or other disposition in respect of any right, title or interest in or to such LLC IP to any Person other than the Company; and (y) such LLC IP will, unless otherwise authorized by the Company in writing, be an original Creation by such Member and will not improperly use or disclose any trade secret, or confidential information, or other property of any other Person.

(Ex. A, § 6.6(b)-(c)).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

33.     The LLC Agreement also forbids the use and disclosure of confidential and propriety information and requires each member to keep such information confidential:

Each Member recognizes and acknowledges that such Member will be entrusted with or have access to confidential and proprietary information of the Company, Affiliates of the Company and/or third parties to which the Company or any Affiliate thereof owes a duty of confidentiality (whether pursuant to Applicable Law, by contract or otherwise). Each Member therefore agrees that for so long as he is a Member, and for the longest period of time permitted by law thereafter, such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance of such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account. Upon ceasing to be a Member for any reason whatsoever, each Member shall use reasonable efforts to promptly (i) delete or cause to be deleted any Confidential Information held in electronic format and (ii) deliver or cause to be delivered to the Company any and all other tangible Confidential Information in each case in such Member's possession, custody or control. As used herein, the

term "Confidential Information" shall mean trade secrets and other non-public information, whether tangible or intangible, in any form or medium, relating to the business or affairs of the Company or its Affiliates that is proprietary to the Company or its Affiliates and which the Company or its Affiliates make reasonable efforts to keep confidential, including, but not limited to, relationships with, and contact information of, Investors and Prospective Investors, materials, research, systems, plans and procedures of or relating to the Company or its Affiliates, databases, software and enhancements thereto, processes, Trading or investment strategies and methodologies, Trading or investment systems, financial products or risk management models, revenue models, manuals, confidential reports, quantitative and other strategies and methodologies, procedures, techniques, discoveries and concepts, financial products and investment positions of the Company or its Affiliates, business plans and strategies, pricing and other financial information, marketing plans, advertising, names, addresses and other information regarding all past, existing Investors and Prospective Investors, vendors and suppliers of the Company or its Affiliates and any confidential information of any such Investors, vendors or suppliers, contractual arrangements, personnel records and other information relating to employees, training materials, statistical data, the source code of the Work, if applicable, and any other non-public information or data comprising or related to the Work, and other proprietary technologies and processes, source code, specifications, inventions, designs, developments of the Company or its Affiliates and other proprietary information used by the Company or its Affiliates in connection with their respective businesses and/or which the Company or any of its Affiliates is obligated to any third party to maintain as confidential. The Members acknowledge that the Confidential Information is vital, sensitive, confidential and proprietary to the Company.

(Ex. A, 6.5(c)).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

34.     The LLC Agreement also provides that in the event a member learns about a potential business opportunity, the member must present that opportunity to Folding Light and not exploit or usurp it for the member's own benefit. (Ex. A, 6.3(c)).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

35.     The LLC Agreement also contains the following covenant restricting the conduct of the Members:

> Each Member hereby agrees that, during the period commencing on the date hereof and ending on the date that is eighteen months immediately following the date such Member is no longer a Member of the Company (such period shall be referred to as the "Restricted Period"), such Member shall not, without the prior written consent of the other Member [*sic*], directly or indirectly, alone or in combination with any other Person, (i) employ, offer employment to, or otherwise attempt to hire, as an employee, consultant, independent contractor or otherwise (or assist any other Person to take any such action regarding), any individual employed or engaged by the Company or any of its Affiliates during the six-month period prior to the date of contact; (ii) solicit an investment (whether a capital investment, debt investment or otherwise) from any Investor or Potential Investor of the Company or its Affiliates; or (iii) otherwise seek to influence or alter any relationship between the Company or any of its Affiliates and any Person referred to in clause (i) or (ii) above.

(Ex. A, § 6.5(a).)

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

36.     The LLC Agreement defines "Investor" as "any Person who has invested with, or provided funds (whether by a capital investment, debt investment or otherwise) to, the Company or its Affiliates." (Ex. A, p. 10).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

37.     If Folding Light brings a successful legal action to enforce any provisions of The LLC Agreement or to recover damages for breaches of The LLC Agreement, The LLC Agreement provides Folding Light is entitled to recover its attorneys' fees and costs:

In the event of legal action to interpret or enforce any of the terms or provisions of this Agreement or to recover damages for a breach thereof, the prevailing party shall be entitled to recover reasonable attorney's fees actually incurred plus costs.

(Ex. A, § 11.6.)

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

38.    Folding Light was formed to engage in electronic securities and commodities trading in multiple different markets.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

39.    In order to further its trading business and to provide it with flexibility to trade in multiple different markets, Folding Light expended substantial time, money, and other resources to develop intellectual property and trade secrets that give it a competitive advantage in its line of business.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

40.    The trade secrets and intellectual property that Folding Light has developed through great effort and expense include, but are not limited to, business plans, confidential and proprietary trading strategies and processes, computer software, a network infrastructure, and a trading platform (the "Platform").

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

41.     Folding Light has also expended substantial effort and resources to develop confidential and proprietary relationships that are crucial to its business and its ability to expand its business.  These confidential and proprietary relationships are memorialized in customer lists, leads, lists of investors who may be interested in providing capital to Folding Light for trading and access to other financial markets, including exchanges on which BitCoin, a popular cryptocurrency, is traded. (Together, Folding Light's Platform, business plans, confidential and proprietary trading strategies, customer lists, leads, lists of investors, and other items referenced herein are referred to in this complaint as the "Trade Secrets").

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

42.     Folding Light and its investors spent over $2 million developing and improving the Platform and its other Trade Secrets and setting up the business to conduct trades.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

43.     The Platform was developed primarily by Schlossberg and Patel while they were at Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

44.     Schlossberg began work on the Platform in May 2017. In February 2018, Folding Light retained Patel as an independent contractor to assist Schlossberg in writing software code for the Platform.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

45.     The Platform automatically executes certain financial trades based on financial data and an algorithm developed by Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

46.     The Platform includes trading applications, databases, source code, and the algorithm.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

47.     Prior to Defendants' theft, the Platform was unique to Folding Light.

ANSWER:

Leli denies that he engaged in the "theft" alleged by Plaintiff and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

48.     The Platform is Confidential Information and Intellectual Property pursuant to the LLC Agreement.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

49.     As Intellectual Property and Confidential Information under the LLC Agreement, the Platform and other Trade Secrets are the property of Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

50.     Folding Lights' Trade Secrets were protected through various means including, but not limited to, encrypted passwords, two-factor verification, and limited access to the Platform and its source code.

ANSWER:

Leli admits that he is aware that access to certain information at Folding Light required passords and/or two-factor verification. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

51.     Additionally, it was Folding Light's policy that the Trade Secrets were not to be disclosed outside of Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

52.     Schlossberg and Patel had access to the Platform and were the only individuals at Folding Light who had access to, and were permitted to access, the Platform's source code.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

53.     Folding Light's traders also had limited access to the Platform for the purpose of initiating and monitoring trades.

ANSWER:

Leli admits only that he had limited access to Plaintiff's electronic trading tools for the purpose of initiating and monitoring trades, but is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

54.     The Platform was equipped with proprietary firm trading controls.  In order to access the Platform, a person needed a login, password, and to satisfy various multi-factor access controls.

ANSWER:

Leli admits that he required a login identification, a password and, in some instances an additional level of verification to access certain of Plaintiff's electronic trading tools, but Leli is unaware of any proprietary trading controls developed by Plaintiff and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

55.     Additionally, the computers in the trading room which contained the Platform were kept under lock and key, and required a key fob to access them, so that access to the Platform was limited only to individuals on a need-to-know basis.

ANSWER:

Leli denies that the computers located in the room from which he performed trades contained the "Platform," and further denies that said computers were themselves "kept under lock

and key" separate from the lock on the door to the room containing those computers; Leli affirmatively states that said room was shared space accessible by others not affiliated with Plaintiff. Leli admits that a key fob was required to access that room. Leli denies the remaining allegations of this paragraph.

56.    Folding Light's members, managers, and contractors were repeatedly informed, and generally understood, that Folding Light's Confidential Information, Intellectual Property, and other Trade Secrets should not be disclosed to any person outside of Folding Light for any reason.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

57.    Folding Light's members, managers, and contractors were repeatedly informed, and generally understood, that the Platform and its source code are Folding Light's Confidential Information, Intellectual Property, and a trade secret, and should not be disclosed to any person outside of Folding Light for any reason.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

58.    Folding Light had eleven computers in its trading room that allowed for access to its Intellectual Property and Confidential Information, including the Platform.  Access to these computers was limited to Folding Light's managers, members, and traders on a need-to-know basis.  Folding Light's managers, members, and traders could access these computers remotely

through an application called TeamViewer, which allowed both on-premises and off-premises access to the computers in the trading room and the Platform. Access to the TeamViewer application was limited on a need-to-know basis to Folding Light's managers, certain members, and its traders.

ANSWER:

Leli admits that during the period he performed services for Plaintiff, there were only six (6) computers of which he was aware located in the room from which he performed trades, only two of which were used for making trades of the type Leli performed for Plaintiff, and one of those two computers was used to trade Bitcoin futures; a third computer was used for trading currencies; a fourth computer was used by Nathan Corson personally and for selling cash Bitcoin; a fifth computer was available for Leli's personal use although it was never used by him; Leli is unaware of anyone ever using the sixth computer. Leli further admits that he used a computer at his home, purchased by Plaintiff, to remotely access Plaintiff's trading tools using the TeamViewer application. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph, including, without limitation, which of the computer workstations in the trading room were Plaintiff's property and which were the property of others, and therefore demands strict proof thereof.

59. There were also two Folding Light computers in Schlossberg's office and three other Folding Light computers that Schlossberg used in other locations, all of which were kept under lock and key. Only Schlossberg had access to these computers. Schlossberg also was and is in possession of two Folding Light iPad Pros. These iPad Pros contain the TeamViewer application so that Folding Light could monitor trades around the clock. Through all of these

devices, Schlossberg had access to Folding Light's Intellectual Property and Confidential Information.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

60.    Without Folding Light's eleven computers and the Folding Light devices in Schlossberg's possession, Folding Light cannot access or use its Intellectual Property, Confidential Information and Trade Secrets, including the Platform.

ANSWER:

Leli denies the allegations of this paragraph, except that Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph, including, without limitation, which of the computer workstations in the trading room were Plaintiff's property and which were the property of others, and therefore demands strict proof thereof.

61.    Absent Folding Light being able to access the Platform and other Trade Secrets, Folding Light's trading business is effectively dismantled because Folding Light cannot trade, access its trades, view the trading activity that is taking place, or use its proprietary trading algorithm and strategies.

ANSWER:

This paragraph relies upon facts previously denied by Leli, and therefore, Leli denies the allegations contained therein.

62.    Flagstad and Klaas are also involved in several other business ventures including Two Screens Media, LLC and Oxford Marketing Partners, LLC.

ANSWER:

Leli admits only that he is generally aware that Flagstad and Klaas are involved in other business ventures other than Plaintiff's business, but he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

63.     Flagstad and Klaas are engaged in a dispute over the separation of those, and other, businesses and ventures.

ANSWER:

Leli admits only that he is generally aware that Flagstad and Klaas are involved in other business ventures other than Plaintiff's business and that a dispute exists between them, but he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

64.     Many of those businesses and ventures, along with Folding Light, operated out of the same shared office space.

ANSWER:

Leli admits only that he is generally aware that Flagstad and Klaas are involved in other business ventures other than Plaintiff's business, and that one or more businesses other than Plaintiff shared the office space from which Leli performed services for Plaintiff, but Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

65.     The tenant for Folding Light's office lease is Channel Clarity Holdings, LLC ("Channel Clarity"), an entity that is majority- owned by Flagstad. Channel Clarity has subleased Folding Light's office space to it.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

66. During the course of their dispute, Klaas, among others, made disparaging statements regarding Folding Light's management, including Flagstad, to multiple parties, including Schlossberg and Andrews for the purpose of altering Schlossberg's and Andrews' allegiances to Folding Light and so that Schlossberg and Andrews would remain loyal to Klaas.

ANSWER:

Leli admits only that he is generally aware that Flagstad and Klaas were involved in a dispute and that an underlying cause of the dispute could have damaging consequences for Plaintiff's standing and licensure to conduct trades, but he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

67. On October 23, 2018, Flagstad asked Klaas to leave the shared Channel Clarity/Folding Light offices by October 31, 2018.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

68. In the Spring of 2018, Folding Light purchased $1,000,000 of Class B Membership Interests in HC Tech Group, Inc. ("HC Tech"), a Delaware limited liability company, pursuant to a Supplemental Trading Agreement between the parties. The Supplemental Trading Agreement provided that Folding Light could require HC Tech to repurchase the Class B interests under certain conditions.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

69.     In late Summer of 2018, Folding Light decided to disengage from HC Tech and require HC Tech to repurchase the Class B interests and, in essence, recover Folding Light's investment.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

70.     Flagstad directed Andrews and Schlossberg to communicate with HC Tech in order to sell the Class B interests and recover Folding Light's investment.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

71.     On or about October 5, 2018, Folding Light discovered that Andrews and Schlossberg had done nothing to recover Folding Light's investment from HC Tech.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

72.     In addition, between August 2018 and October 2018 and thereafter, Schlossberg and Andrews repeated Klaas' disparaging statements regarding Folding Light's management to many more third parties for the purpose of damaging and usurping Folding Light's business relationships with those third parties.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

73.     On October 29, 2018, Schlossberg and Andrews executed a document purporting to give one another a release on behalf of Folding Light for any prior actions, terminating the restrictive covenants of the LLC Agreement and giving Schlossberg "explicit consent … to use any and all trading strategies and IP he so chooses in any future activity."

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

74.     On October 31, 2018, Folding Light sent a letter terminating Schlossberg and redeeming his interest in Folding Light.  A copy of the Schlossberg termination letter is attached as Exhibit B.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

75.     The termination letter informed Schlossberg that his engagement as a contractor of Folding Light was terminated immediately.  (Ex. B, p. 1).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

76.     As Schlossberg was terminated, he ceased to be involved in the Company's business and Folding Light executed its right to redemption pursuant to § 6.7(b) of The LLC Agreement.  (*Id.*)

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

77.     The termination letter further informed Schlossberg that Folding Light was placing Schlossberg on "garden leave" to provide such services as Folding Light required to secure and protect its assets and intellectual property.  (*Id.* at 1-2).

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

78.     The termination letter demanded that Schlossberg immediately exit the premises but directed that he should not remove his office computer, which was the property of Folding Light.  (*Id.* at 2.)

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

79.     The termination letter also demanded that Schlossberg transmit all Intellectual Property belonging to Folding Light and residing on any computer or server in Schlossberg's home or any other location to Folding Light and then certify the return of Folding Light's property in writing by November 1, 2018.  (*Id.* at 2.)

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

80.     Schlossberg did not return any of Folding Light's property.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

81. On October 31, 2018, a similar letter was sent to Andrews, terminating his employment and redeeming his membership interest. A copy of the Andrews termination letter is attached as Exhibit C.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

82. Andrews' termination letter contained the same garden leave and Folding Light property provisions as Schlossberg's termination letter.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

83. As with Schlossberg, Andrews did not return any Folding Light property.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

84. Immediately following their terminations, Andrews, Schlossberg, and the other Individual Defendants took steps to ensure that they could steal and replicate Folding Light's entire business.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

85.     To begin, the Individual Defendants continued to access Folding Light's computer network.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

86.     Upon information and belief, Schlossberg and Andrews were able to continue to access Folding Light's computer systems and the Intellectual Property and Confidential Information contained therein after their termination because, as set forth below, they have usurped Folding Light's relationship with Radius IT, Folding Light's IT vendor ("Radius IT"). As Folding Light's IT vendor, Radius IT has the ability to control access to Folding Light's computer systems, thereby permitting Schlossberg and Andrews to access Folding Light's computer systems, Intellectual Property, and Confidential Information and Trade Secrets contained therein.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

87.     Next, upon information and belief, Klaas, Andrews, and Schlossberg solicited the other Individual Defendants to join them in stealing and replicating Folding Light's entire business.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

88.     As described further herein, despite Schlossberg's and Andrews' terminations, Defendants engaged in a conspiracy to access Folding Light's computer system without authorization and to misappropriate Folding Light's Trade Secrets, including the Platform.

ANSWER:

Leli denies the allegations of this paragraph as to him to the extent the term "Defendants" was intended to include him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

89.     Shortly after Schlossberg and Andrews were terminated, Leli and Patel resigned as Folding Light contractors without notice and disappeared.  Upon information and belief and as further described herein, Leli and Patel went to work for Bunny Foo Foo Labs in identical or substantially similar positions and/or roles.

ANSWER:

Leli denies that he "resigned" as he understood that Plaintiff was ceasing operations and therefore there was no need for his continued services. Leli further denies that he "disappeared" or was in any way unreachable through any means previously available to Plaintiff to reach him; Leli admits that shortly after Plaintiff ceased operations, he commenced performing services for Bunny Foo Foo Labs ("BFFL") as an independent contractor, but denies that the work he performed was identical to the work he performed for Plaintiff. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

90.     The Individual Defendants then broke in to Folding Light's office to steal Folding Light's property.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

91.     During the weekend of November 2 through November 4, 2018, Zhang, Patel, and Leli entered the Folding Light offices.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

92.     While at the Folding Light offices, Zhang, Patel, and Leli took the two Folding Light computers in Schlossberg's office without Folding Light's authorization.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

93.     Zhang, Patel, and Leli then proceeded, without authorization, to erase nearly all data from the eleven Folding Light computers in the trading section of the office, including the Platform and Folding Light's other Intellectual Property, Confidential Information and Trade Secrets, and to reset them to factory settings.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

94.     Upon information and belief, Zhang, Patel, and Leli stole the two computers containing Folding Light's Intellectual Property, Confidential Information and Trade Secrets, including the Platform, and erased nearly all data on the rest of the Folding Light computers, at the direction of Klaas, Schlossberg, and Andrews.  On information and belief, one or more of Klaas, Schlossberg or Andrews also entered Folding Light's offices during the weekend of November 2 through November 4, 2018, and assisted Zhang, Patel, and Leli with the actions set forth above.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

95.     One computer remaining in the Folding Light offices has files related to the Platform, but does not have the user interface required to actually use the Platform.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

96.     The Platform allows users to place trades and view the trades that have been placed.

ANSWER:

Leli admits that Plaintiff's electronic trading tools accessed by him during his engagement with Plaintiff, enabled him to place trades and view trades he placed. Leli is without sufficient

knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

97.     In stealing the Platform and erasing nearly all data from Folding Light's computers, Defendants have effectively dismantled Folding Light's business because they have completely cut off the ability of Folding Light to access the Platform and to execute trades.

ANSWER:

This paragraph relies upon facts previously denied by Leli, and therefore, Leli denies the allegations contained therein.

98.     Defendants are now in exclusive control of Folding Light's Intellectual Property, Confidential Information and Trade Secrets, including the Platform, and, upon information and belief, Defendants are using these materials for their own economic advantage.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

99.     Upon information and belief, Defendants are now using Folding Light's Intellectual Property, Confidential Information and Trade Secrets to start and conduct their own business, Bunny Foo Foo Labs, which is a direct competitor of Folding Light and is identical to Folding Light, and to siphon business from Folding Light to this new business.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he denies that BFFL is a direct competitor of Plaintiff and is identical to Plaintiff. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

100. During the weekend of November 2 through November 4, 2018, Klaas entered Channel Clarity's offices and took some of Folding Light's office furniture. Additionally, during that weekend, Klaas and/or one or more of the Individual Defendants took Folding Light's televisions, collectible artwork, and wine without permission.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

101. Folding Light has demanded several times that Klaas and/or Defendants return to Folding Light any and all of its property, including without limitation its Intellectual Property, Confidential Information, Trade Secrets, and other property.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

102. Defendants have refused to return Folding Light's Intellectual Property, Confidential Information, Trade Secrets, and other property.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

103. The Individual Defendants also interfered with Folding Light's business and investor relationships and Folding Light's access to capital.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

104.    On or about November 6, 2018, Sterioti contacted HC Tech to request the repurchase by HC Tech of the Class B interests described above.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

105.    In subsequent discussions, HC Tech informed Folding Light that Andrews had contacted HC Tech and told it not to return the money used to purchase the Class B interests to Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

106.    HC Tech also told Folding Light that Andrews told HC Tech to return the money to Andrews himself.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

107.    When Folding Light confronted Andrews regarding his interference, Andrews responded that "the most efficient use of everyone's time would be for you and Kasey to speak ASAP."

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

108.    Eventually, despite Andrews' efforts to interfere with the return of Folding Light's investment in HC Tech, HC Tech agreed to return the money to Folding Light in three installment payments.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

109.    In February 2018, Folding Light retained Zhang as an independent contractor. Zhang's roles and responsibilities included serving as the Chief Operations Officer for Folding Light.  In that position, Zhang was responsible for managing and developing relationships with various trading exchanges as well as leading product development and project management of the Platform.

ANSWER:

Leli admits that Zhang was employed by Plaintiff in some capacity, but Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

110.    One of Folding Light's lines of trading business was trading on cryptocurrency futures exchanges.

ANSWER:

Leli admits only that for the period Leli performed services for Plaintiff, Plaintiff traded bitcoin by making bitcoin futures purchases to hedge cash bitcoin sales, but Leli is without

sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

111.    In connection with Folding Light's trading business, through the expenditure of substantial time, money, and other resources, Folding Light developed a relationship with Bill and Brooke Mallers, the ("Mallers").  The Mallers own a large amount of cryptocurrency, including BitCoin.

ANSWER:

Leli admits that Jack Mallers owned cryptocurrency, including BitCoin. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

112.    Zhang was involved in developing Folding Light's relationship with the Mallers.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

113.    Eventually, the Mallers and Folding Light entered into an arrangement where the Mallers lent Folding Light BitCoin so that Folding Light could trade those BitCoin.

ANSWER:

Leli admits that Jack Mallers owned cryptocurrency, including BitCoin. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

114.    In February 2018, the Mallers lent Folding Light 10 BitCoin.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

115.    In March 2018, the Mallers lent Folding Light 290 BitCoin.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

116.    As Andrews, Schlossberg and Zhang knew, Folding Light's relationship with the Mallers was critical to its future business plans.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

117.    On information and belief, prior to Folding Light placing Andrews and Schlossberg on "garden leave", one or more of Klaas, Schlossberg, Andrews, Zhang, and Patel flew to visit the Mallers on at least two occasions.  During these visits, one or more of Klaas, Schlossberg, Andrews, Zhang, and Patel falsely and maliciously disparaged Folding Light's management, including Flagstad, to the Mallers as part of their planned efforts to dismantle Folding Light's business and to secure access to BitCoins from the Mallers family for their own use.  The purpose of Klaas', Schlossberg's, Andrews', Zhang's, and/or Patel's visits to the Mallers family was to induce them to stop doing business with Folding Light and to do business with Defendants instead.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

118.    As a result of Defendants' meeting with the Mallers, Folding Light has been prevented from conducting further business with the Mallers.

ANSWER:

Leli denies meeting with the Mallers as alleged, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

119.    Defendants interference did not stop with HC Tech and the Mallers.   On information and belief, Defendants met with nearly every company and individual that did or had done business with Folding Light and made disparaging comments regarding Folding Light's management for the express purpose of damaging those companies' and individuals' relationships with Folding Light and inducing those companies and individuals into doing business with Defendants instead of Folding Light.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

120.    Defendants also interfered with Folding Light's IT vendor.

ANSWER:

Leli objects to this paragraph as vague. Without waiving said objection, Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

121.    Folding Light contracted with an information technology firm known as Radius IT. Radius IT and its employee, Tim Hicks, helped Folding Light to maintain its network of servers and personal computers.

ANSWER:

Leli admits that Plaintiff engaged Radius IT and/or Tim Hicks, but he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

122.    Following defendants' departure from Folding Light and theft of Folding Light's computers and data, Flagstad contacted Radius IT on behalf of Folding Light to ask for its help in restoring its network and accessing its Platform so that it could view outstanding and future trades and continue its work.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

123.    Although Flagstad asked for help from Radius IT and Tim Hicks on several occasions, they have never responded.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

124.    Upon information and belief, Radius IT did not respond because they were improperly instructed not to do so by Defendants Klaas, Schlossberg and Andrews.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

125. Upon information and belief, Radius IT continues to work with Defendants Klaas, Schlossberg and Andrews to help them to utilize the Platform and to perform trades that otherwise would have been performed by Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

126. Upon information and belief, in November 2018, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli began sharing an office space and using the office furniture that Defendants took from Folding Light without authorization and for their own benefit.

ANSWER:

Leli admits that in November 2018, he was engaged as an independent contractor by BFFL and performed services from an office space also utilized by Klaas, Schlossberg, Andrews, Zhang and Patel. Leli denies the remaining allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

127. Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli knowingly and actively participated in the decision to steal Folding Light computers, erase nearly all data from the rest of Folding Light's computers, and take control of Folding Light's Intellectual Property, Confidential Information and Trade Secrets.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

128. Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli are currently in control of and using for their own benefit Folding Light's Intellectual Property, Confidential Information and Trade Secrets.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

129. Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli, have used the Intellectual Property, Confidential Information, and Trade Secrets they stole, including the Platform, to form a business nearly identical to Folding Light.

ANSWER:

Leli denies the allegations of this paragraph as to him and denies that the business, BFFL, for which he was engaged as an independent contractor, was, during the time of his engagement, nearly identical to Plaintiff's business. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

130. Upon information and belief, that business is operating under the name Bunny Foo Foo Labs.

ANSWER:

Leli admits only that BFFL was the name of the business for which he was engaged as an independent contractor commencing in November 2018 and denies the remaining allegations and inferences set forth in this paragraph.

131.    Bunny Foo Foo Labs was organized under the laws of Delaware on October 9, 2018.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

132.    On information and belief, Bunny Foo Foo Labs is owned and/or controlled by Klaas and one or more of the Individual Defendants.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

133.    Upon information and belief, Klaas, Andrews and Schlossberg solicited Patel, Leli and Zhang to work with them in their new, competing business.

ANSWER:

Leli admits only that he was offered work as an independent contractor with BFFL commencing in November 2018 by Klaas, Andrews and/or Schlossberg and denies the remaining allegations of this paragraph.

134.    Upon information and belief, Klaas, Andrews and Schlossberg actively solicited investments from Investors and Potential Investors of Folding Light, as defined in Section 6.5(a) of the LLC Agreement.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

135.    Repeated requests for information regarding the current relationship between Klaas, Andrews, Schlossberg and the remaining defendants have been met with silence.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

136.    Because of Defendants' illegal conduct, Folding Light has effectively been shuttered. It has lost all its valuable assets, had its relationships damaged or destroyed, and has been left without the means even of re-starting under new management or with new traders because, as the result of Defendants' acts, Folding Light cannot access or utilize its Trade Secrets, Confidential Information, or Intellectual Property, and has been denied access to capital and customers.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

**Count I**
**Computer Fraud and Abuse Act**
**(All Defendants)**

137.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 136.

ANSWER:

As and for his answer to Paragraph 137 of Count I, Leli adopts and realleges his answers to Paragraphs 1 through 136 above as though fully set forth herein.

138.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), forbids "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

139.    The CFAA also forbids "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $ 5,000 in any 1-year period."  18 U.S.C. § 1030(a)(4).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

140.     The CFAA further forbids "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. § 1030(a)(5)(A).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

141.     The CFAA defines "protected computer", in pertinent part, as "a computer . . . which is used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

142.     The CFAA provides for "a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  18 U.S.C. § 1030(g).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

143.    The computers at issue are protected computers under the CFAA because were used in interstate commerce and communication through financial trading.

ANSWER:

Leli objects to this paragraph's reference to "the computers at issue" as vague. Further, this paragraph asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statute speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli. Further answering, Leli is without sufficient information to admit or deny the ownership of the computers previously referenced in this Count I by Plaintiffs and therefore demands strict proof thereof.

144.    In concert and in a conspiracy with Defendants as set forth herein, Patel and Leli and, on information and belief, one or more of Klaas, Schlossberg, Andrews, or Zhang, accessed Folding Light's offices to steal computers containing trade secrets and copyrighted information, including the Platform, and to destroy the remaining copies of the Platform.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he further denies knowledge of any Trade Secrets, copyrighted information or "the Platform" stored on computers in the shared office space utilized by Plaintiff from which Leli performed services as an independent contractor for Plaintiff. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

145.    Defendants were not authorized to steal and subsequently gain access to Folding Light's computers or information on them, including the Platform.

ANSWER:

46

Leli denies the inference as to him that he stole and/or subsequently gained access to Plaintiff's computers or information contained on any of Plaintiff's computers, including "the Platform." Leli admits that he was not authorized "to steal" from Plaintiff and to thereafter access any such stolen property. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

146.    Defendants were also not authorized to access Folding Light computers in order to delete the trading software off of the remaining Folding Light computers.

ANSWER:

Leli admits that he was not so authorized, but Leli denies the inference that any computers utilized by him either at the shared office space occupied by Plaintiff, or at his home, or at the offices occupied by BFFL contained any trading software developed by Plaintiff. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

147.    Defendants accessed Folding Light's computers to steal the Platform and render the computers, network and Platform inoperable with the intent to obtain Folding Light's Trade Secrets, Confidential Information, and Intellectual Property, to further a fraud, and to damage the data on Folding Light's computers by deleting it or rendering it inoperable.

ANSWER:

Leli denies the allegations of this paragraph as to him, and he further denies knowledge of any Trade Secrets, Confidential Information, Intellectual Property or "the Platform" stored on computers in the shared office space utilized by Plaintiff from which Leli performed services as an independent contractor for Plaintiff. Leli is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

148.     Folding Light has spent over $2 million in creating the Platform at issue, and the deletion of the Platform caused a loss in value of over $5,000 because Defendants, through their actions, intended to prevent and have actually prevented Folding Light from operating as a going concern.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

149.     Folding Light has also lost access to their Trade Secrets, Confidential Information, and Intellectual Property, including the Platform, because Defendants' actions have rendered Folding Light's computers, network and Platform inoperable.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

150.     Defendants' unauthorized access and theft of the computers and the Trade Secrets, Confidential Information, and Intellectual Property contained thereon, including the Platform, has caused and is causing irreparable harm to Folding Light, for which it has no adequate remedy at law.  Unless this Court restrains Defendants from accessing the computers and the Trade Secrets, the harm will continue to occur in the future. Accordingly, Folding Light is entitled to both a preliminary and a permanent injunction.

ANSWER:

Leli denies the allegations of this paragraph as to him, denies the legal conclusions and positions asserted, and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

WHEREFORE, Leli respectfully requests that the Court enter judgment on Count I in his favor and against Plaintiff for his costs and attorneys fees incurred in defending the claims asserted against him, together with such other and further relief this Court deems just and equitable under the circumstances.

**Count II**
**Misappropriation of Trade Secrets – Defend Trade Secrets Act**
**(All Defendants)**

151. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 150.

ANSWER:

As and for his answer to Paragraph 151 of Count II, Leli adopts and realleges his answers to Paragraphs 1 through 150 above as though fully set forth herein.

152. The Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(a).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

153.    Folding Light is the owner of the Trade Secrets, including the Platform.

ANSWER:

See answer to Paragraph 49.

154.    Folding Light's Trade Secrets were used in, and intended for use in, interstate and foreign commerce because they were used to trade securities and commodities in national and international markets.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

155.    Folding Light's Trade Secrets, including the Platform, are confidential trade secrets from which Folding Light derives independent economic value because they are not generally known to the public or other persons who could obtain economic value from their disclosure or use.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

156.    Folding Light has taken and continues to undertake reasonable efforts to maintain the confidentiality, secrecy, and proprietary nature of the Platform and its other Trade Secrets.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

157.    Defendants have willfully misappropriated and used the Trade Secrets, including the Platform, for their own benefit and to Folding Light's detriment.

ANSWER:

Leli denies having misappropriated anything belonging to Plaintiff; Leli admits using various of Plaintiff's trading tools and data during his engagement as an independent contractor for Plaintiff in exchange for compensation from Plaintiff; Leli denies the remaining allegations and inferences contained in this paragraph as to him, and he is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

158.    Defendants acquired the Trade Secrets, including the Platform, through improper means.

ANSWER:

Leli denies the allegations of this paragraph as to him, denies the legal conclusions and positions asserted, and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

159.    Defendants' misappropriation and use of the Trade Secrets for their own benefit and to Folding Light's detriment has caused and continues to cause Folding Light to suffer damages and irreparable injury, as set forth herein.

ANSWER:

Leli denies the allegations of this paragraph as to him, denies the legal conclusions and positions asserted, and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

160.    Defendants' misappropriation and use of the Trade Secrets is willful and malicious entitling Folding Light to an award of exemplary damages under the Defend Trade Secrets Act.

ANSWER:

Leli denies the allegations of this paragraph as to him, denies the legal conclusions and positions asserted, and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

161.    Defendants' misappropriation and use of the Trade Secrets has caused and will continue to cause Folding Light to suffer irreparable and substantial harm, therefore it cannot be fully redressed through damages alone.  Accordingly, Folding Light is entitled to an injunction prohibiting Defendants from further use or disclosure of the Trade Secrets.

ANSWER:

Leli denies the allegations of this paragraph as to him, denies the legal conclusions and positions asserted, and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

WHEREFORE, Leli respectfully requests that the Court enter judgment on Count II in his favor and against Plaintiff for his costs and attorneys fees incurred in defending the claims asserted against him, together with such other and further relief this Court deems just and equitable under the circumstances.

## Count III
## Misappropriation of Trade Secrets – Illinois Trade Secrets Act
### (All Defendants)

162.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 161.

ANSWER:

As and for his answer to Paragraph 162 of Count III, Leli adopts and realleges his answers to Paragraphs 1 through 161 above as though fully set forth herein.

163.     Pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* (the "ITSA"), a trade secret is "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:  (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."  765 ILCS 1065/2(d).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

164.     "Misappropriation," in pertinent part, is defined as "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means."  765 ILCS 1065/2(b)(1).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

165.     "Improper means" is defined as including "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means."  765 ILCS 1065/2(a).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

166.    Pursuant to the ITSA "actual or threatened misappropriation may be enjoined." 765 ILCS 1065/3(a).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

167.    Pursuant to the ITSA "a person is entitled to recover damages for misappropriation" which "can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."  765 ILCS 1065/4(a).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

168.    Further "[i]f neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by

misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." *Id.*

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

169.    Additionally, "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)." 765 ILCS 1065/4(b).

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or premise to which no response is required of Leli. Further answering, Leli affirmatively states that the cited statutory section speaks for itself, and any deviation by Plaintiff from the official text thereof is denied by Leli.

170.    The Trade Secrets, including the Platform, are sufficiently secret to derive actual or potential value from not being generally known to others who can obtain economic value from their disclosure or use, and Folding Light does derive actual and potential economic value from the secrecy of the Trade Secrets.

ANSWER:

See answer to Paragraph 155.

171.    Folding Light undertook reasonable efforts under the circumstances to maintain the secrecy and confidentiality of the Trade Secrets.

ANSWER:

See answer to Paragraph 156.

172.     Folding Light's Trade Secrets, including the Platform, and the secrecy of the Trade Secrets, provide Folding Light with a competitive advantage in the marketplace.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

173.     Accordingly, the Platform and other Trade Secrets are protected by ITSA.

ANSWER:

This paragraph contains no allegations of fact but instead asserts a legal position or or conclusion to which no response is required of Leli.

174.     Defendants misappropriated Folding Light's Trade Secrets through unlawful means by stealing computers that contained the Platform and other Trade Secrets from Folding Light's office, erasing nearly all data on Folding Light's other computers and rendering them inoperable, and refusing to return other Folding Light computers that contain the Trade Secrets.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

175.     Defendants' misappropriation of Folding Light's Trade Secrets was willful and malicious because Defendants intentionally stole computers containing the Platform and other Trade Secrets for their own personal gain and erased nearly all data from the remaining computers, rendering them unusable.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

176.     Defendants' theft of the Trade Secrets has caused and is causing irreparable harm to Folding Light, for which it has no adequate remedy at law because Folding Light is wholly unable to conduct its business or operate because it has been deprived of use of the Platform and the other Trade Secrets. Unless this Court restrains Defendants from using and disclosing Folding Light's trade secrets, the harm will continue to occur in the future.  Accordingly, Folding Light is entitled to injunctive relief.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

177.     Because Defendants' misappropriation of Folding Light's Trade Secrets was willful and malicious, Folding Light is entitled to an award of attorneys' fees pursuant to Section 5 of ITSA.  765 ILCS 1065/5.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

WHEREFORE, Leli respectfully requests that the Court enter judgment on Count III in his favor and against Plaintiff for his costs and attorneys fees incurred in defending the claims asserted

against him, together with such other and further relief this Court deems just and equitable under the circumstances.

## Count IV
## <u>Conversion--Platform</u>
### (All Defendants)

178.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 177.

ANSWER:

As and for his answer to Paragraph 162 of Count IV, Leli adopts and realleges his answers to Paragraphs 1 through 161 above as though fully set forth herein.

179.    Pursuant to The LLC Agreement §§ 6.6(b)-(c), the Trade Secrets, including the Platform, are the intellectual property of Folding Light.

ANSWER:

Leli is without sufficient knowledge to admit or deny the allegations of this paragraph and therefore demands strict proof thereof.

180.    The computers stolen from Folding Light's office and other tangible property remaining in Defendants' possession are also the property of Folding Light.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

181.    The Trade Secrets, Confidential Information, and Folding Light's other Intellectual Property were stolen by Defendants through theft of Folding Light's computers.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

182.    By stealing the Trade Secrets, Confidential Information, including the Platform, Folding Light's computers, its other tangible property, and its other Intellectual Property, and by refusing to return these items remaining in Defendants' possession, Defendants wrongfully and without authorization assumed control, dominion, or ownership over Folding Light's Trade Secrets and Confidential Information, including the Platform, Folding Light's computers, its other tangible property, and its other Intellectual Property.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

183.    Folding Light has an unconditional and absolute right to the Trade Secrets and Confidential Information, including the Platform, the stolen computers, the stolen other tangible property, and its other Intellectual Property, remaining in Defendants' possession, and to their return.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

184.    Folding Light has demanded, including in Schlossberg's and Andrews' termination letters, the return of the Trade Secrets and Confidential Information, including the Platform, the

stolen computers, the stolen other tangible property, and its other Intellectual Property remaining in Defendants' possession.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

185.    Despite Folding Light's demands, Defendants have and continue to wrongfully and without authorization assume control over the Trade Secrets and Confidential Information, the Platform, the stolen computers, the stolen other tangible property, and Folding Light's other Intellectual Property remaining in Defendants' possession.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

186.    As a result of Defendants' refusal to return Folding Lights property, Folding Light has suffered damages in the form of lost ability to control and exploit its own Intellectual Property and Trade Secrets and in the form of the value of the tangible property in Defendants' possession.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

WHEREFORE, Leli respectfully requests that the Court enter judgment on Count IV in his favor and against Plaintiff for his costs and attorneys fees incurred in defending the claims asserted

against him, together with such other and further relief this Court deems just and equitable under the circumstances.

**Count V**
**Conversion—Office Furniture**
**(Defendant Klaas)**

**Count VI**
**Breach of Contract**
**(Defendant Schlossberg)**

**Count VII**
**Breach of Contract**
**(Defendant Andrews)**

**Count VIII**
**Breach of Contract**
**(Defendant Klaas)**

**Count IX**
**Tortious Interference With Contract**
**(Defendant Bunny Foo Foo Labs, LLC)**

**Count X**
**Tortious Interference with Contract**
**(Defendants Klaas, Schlossberg, and Andrews)**

**Count XI**
**Tortious Interference with Business Expectancy**
**(Klaas, Schlossberg, Andrews, Zhang, and Patel)**

**Count XII**
**Breach of Fiduciary Duty**
**(Defendants Klaas, Schlossberg, and Andrews)**

**Count XIII**
**Aiding and Abetting Breach of Fiduciary Duty**
**(Against Patel, Leli, Zhang and Bunny Foo Foo Labs)**

277.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 276.

ANSWER:

As and for his answer to Paragraph 277 of Count XIII, Leli adopts and realleges his answers to Paragraphs 1 through 186 above as though fully set forth herein, making no answer to Paragraphs 187 through 276 as Leli is not named the counts for which those paragraphs were incorporated and which make no allegations pertaining to Leli.

278.    At all relevant times, Patel, Leli, Zhang and Bunny Foo Foo Labs, through its agents, knew that Klaas, Schlossberg and Andrews were founding members and/or managers of Folding Light and therefore owed Folding Light fiduciary duties, including, among others, duties of loyalty and good faith and the duty not to engage in self-dealing or to usurp corporate opportunities of Folding Light.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

279.    As set forth above, these Defendants, in order to advance their own financial interests, knowingly aided and abetted, encouraged and actively participated in Klaas, Schlossberg, and Andrews' breaches of their fiduciary duties by, among other things, helping them to steal Folding Light's Trade Secrets, computers and other property, and providing them with resources and assistance in setting up an identical competing business.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

280.     These Defendants' aid, abetment and active participation in the breaches of fiduciary duties of Klaas, Schlossberg and Andrews directly and proximately caused Folding Light to suffer damages, including the complete loss of their business.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

281.     These Defendants' aid, abetment and active participation in these breaches of fiduciary duties was vexatious and intentionally and deliberately harmful to Folding Light.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

WHEREFORE, Leli respectfully requests that the Court enter judgment on Count XIII in his favor and against Plaintiff for his costs and attorneys fees incurred in defending the claims asserted against him, together with such other and further relief this Court deems just and equitable under the circumstances.

**Count XIV**
**Civil Conspiracy**
**(All Defendants)**

282.     Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 281.

ANSWER:

As and for his answer to Paragraph 282 of Count XIV, Leli adopts and realleges his answers to Paragraphs 277 through 281 above as though fully set forth herein.

283.     The Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct, as described herein, including, among other things, theft of trade secrets and other property, copyright infringement, breach of fiduciary duty and tortious interference.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

284.     As part of this conspiracy, between at least October 19, 2018 and November 5, 2018, Defendants agreed to a common scheme to steal computers from Folding Light, erase nearly all data from Folding Light's remaining computers, and use Folding Lights' Trade Secrets, including the Platform, for their own personal gain.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

285.     To further their common scheme, Defendants agreed to participate together in a number of unlawful overt acts, including theft of the computers, illegally retaining Folding Light's property, and erasing Folding Light's other computers.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

286.    Defendants committed each of the foregoing overt acts.

ANSWER:

Leli objects to this paragraph as vague. Without waiving said objection, Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

287.    Folding Light cannot be sure of the exact date or dates that Defendants reached their agreement to participate in the unlawful acts against it, but on information and belief, these agreements were reached in communications that will be produced by Defendants in discovery.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

288.    The intent and purpose of the conspiracy, and the underlying combination of unlawful acts and misconduct committed by the Defendants was to usurp Folding Light's corporate opportunities and business. Each of the Defendants had a financial motive and incentive to accomplish the foregoing conspiracy.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

289.    The Defendants understood and accepted the foregoing scheme and agreed to do its/his respective part, as described herein, to further and accomplish the foregoing objective.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

290.    By entering into this conspiracy, the Defendants permitted, encouraged and/or induced all of the unlawful acts and misconduct as described herein.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

291.    As a direct and proximate result of the Defendants' unlawful conduct, Folding Light has sustained substantial damages.

ANSWER:

Leli denies the allegations of this paragraph as to him and is without sufficient knowledge to admit or deny the remaining allegations of this paragraph and therefore demands strict proof thereof.

WHEREFORE, Leli respectfully requests that the Court enter judgment on Count XIV in his favor and against Plaintiff for his costs and attorneys fees incurred in defending the claims

asserted against him, together with such other and further relief this Court deems just and equitable under the circumstances.

Respectfully submitted,

MATTHEW LELI, Defendant

By:   */s/ Mark C. Gross*
        One of his attorneys

Mark C. Gross
Gross & Boyle, LLC
Attorneys for Defendant Matthew Leli
15 Salt Creek Lane, Suite 207
Hinsdale, Illinois 60521
630-887-7070
*mgross@gbllc.law*