**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FOLDING LIGHT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19 CV 03949 |
| | ) | |
| KASEY KLAAS, MATTHEW ANDEWS | ) | Hon. Harry D. Leinenweber |
| JON SCHLOSSBERG, RIZWAN PATEL | ) | |
| MATTHEW LELI, PETER ZHANG, and | ) | |
| BUNNY FOO FOO LABS, LLC. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS KASEY KLAAS AND BUNNY FOO FOO LABS' ANSWER, AFFIRMATIVE DEFENSES, CROSS-CLAIM AND THIRD-PARTY COMPLAINT

Defendants KASEY KLAAS ("Klaas") and Bunny Foo Foo Labs, Inc. ("BFF Labs") (collectively referred to as "Defendants"), by and through their attorneys Polales Horton LLP, in response to the Complaint of FOLDING LIGHT, LLC ("Folding Light" or "Plaintiff") states as follows:

## ANSWER TO COMPLAINT

1.      This action arises out of Defendants' intentional and malicious theft and destruction of Folding Light's entire business, including nearly all of its confidential trade secrets, intellectual property, and other property. The Individual Defendants, all of whom are now or were formerly affiliated with Folding Light either as a manager, member, or contractor, surreptitiously entered Folding Light's offices after hours and stole Folding Light's computers, trade secrets, intellectual property, and other assets, including even its furniture.

1

**ANSWER**:   Defendants admit that Klaas is or was affiliated with Folding Light as a member. Defendants deny all other allegations contained in paragraph 1.

2.     In an effort to conceal their misconduct and in a further effort to destroy Folding Light's business, the Individual Defendants also maliciously deleted nearly all information and data from Folding Light's remaining computers, including Folding Light's confidential and proprietary trading software platform that was the centerpiece of Folding Light's business.

**ANSWER**:   Defendants deny the allegations in paragraph 2.

3.     Upon information and belief, the Individual Defendants have used the information and property they stole from Folding Light, including Folding Light's trading platform, other trade secrets and intellectual property, and computers to form a competing business, Bunny Foo Foo Labs, LLC ("Bunny Foo Foo Labs") and to siphon away Folding Light's trading customers.

**ANSWER**:   Defendants deny the allegations contained in paragraph 3.

4.     After Defendants stole and destroyed Folding Light's intellectual property, trade secrets, and other property, Defendants engaged in a malicious campaign to disparage Folding Light's principals, to usurp its relationships with investors and customers, and to cut off Folding Light's access to capital.

**ANSWER**:   Defendants deny the allegations contained in paragraph 4.

5.     Unfortunately, Defendants' illegal campaign was all too successful. Defendants' illegal theft and wanton campaign to usurp for themselves Folding Light's investments and relationships has destroyed Folding Light's business and left it unable to operate.

**ANSWER**:   Defendants have insufficient information with which to admit or deny whether Folding Light's business has been destroyed and is unable to be operated, but specifically deny that Defendants caused or contributed to the alleged destruction of Folding Light. Answering further, Defendants deny the remaining allegations contained in paragraph 5.

6.     Defendants' conduct gives rise to liability for violation of the Computer Fraud and Abuse Act, misappropriation of trade secrets under the Illinois Trade Secrets Act and the Defend Trade Secrets Act, conversion, breach of contract, tortious interference with contract, tortious interference with business expectancy, and breach of fiduciary duties.

**ANSWER**: Defendants deny the allegations contained in paragraph 6.

7.     Accordingly, Folding Light brings this action seeking injunctive relief, damages, disgorgement of profits, statutory penalties, and attorneys' fees.

**ANSWER**:  Defendants deny the allegations contained in paragraph 7.

8.     Folding Light is a Delaware limited liability company with its principal place of business located at 215 West Ohio Street, Chicago, Illinois 60654.

**ANSWER**: Defendants admit the allegation contained in paragraph 8.

9.     Klaas is a member of Folding Light and a citizen of the State of Illinois.

**ANSWER**: Defendants admit the allegations contained in paragraph 9.

10.    Andrews is a former member of Folding Light and is a citizen of the State of Illinois.

**ANSWER**:  Defendants have insufficient information with which to admit or deny whether Andrews is a "former" member of Folding Light or whether Andrews is a citizen of the State of Illinois and therefore denies those allegations.

11.    Schlossberg is a former member and manager of Folding Light and is a citizen of the State of Illinois.

**ANSWER**: Defendants have insufficient information with which to admit or deny whether Schlossberg is a "former" member of Folding Light or whether Schlossberg is a citizen of the State of Illinois and therefore denies those allegations.

12.     Patel is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

**ANSWER**: Defendants admit that Patel is a former independent contractor for Folding Light. Defendants have insufficient information with which to admit or deny whether Patel is a citizen of the State of Illinois and therefore deny the allegation.

13.     Leli is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

**ANSWER**: Defendants admit that Leli is a former independent contractor for Folding Light. Defendants have insufficient information with which to admit or deny whether Leli is a citizen of the State of Illinois and therefore deny the allegation.

14.     Zhang is a former independent contractor for Folding Light and is a citizen of the State of Illinois.

**ANSWER**:  Defendants deny that Zhang is a former independent contractor for Folding Light. Defendants have insufficient information with which to

admit or deny whether Zhang is a citizen of the State of Illinois and therefore deny the allegation.

15.     Bunny Foo Foo Labs, LLC is a Delaware limited liability company with its principal place of business located at 401 West Superior Street, Chicago, Illinois.

**ANSWER**: Defendants admit the allegations contained in paragraph 15.

16.     Pursuant to 28 U.S.C. § 1331, this court has original jurisdiction as Folding Light's Computer Fraud and Abuse Act and Defend Trade Secrets Act claims arise under federal law.

**ANSWER**: The jurisdictional allegations contained in paragraph 16 state legal conclusions to which no answer is required.

17.     Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction over the claims arising under Illinois law because they are so related to the claims providing original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER**: The jurisdictional allegations contained in paragraph 17 state legal conclusions to which no answer is required. To the extent an answer is required, Defendants admit that Klaas is a citizen of the state of Illinois.

18.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in this district. Folding Light is located in Cook County, Illinois, and Defendants' theft of confidential information, trade secrets, and Folding Light's other property occurred in Cook County, Illinois.

**ANSWER**: The venue allegations in paragraph 18 state legal conclusions to which no answer is required.

19.     In 2017, Brock Flagstad ("Flagstad"), Kasey Klaas ("Klaas"), Jon Schlossberg ("Schlossberg"), and Matt Andrews ("Andrews") began working on the Folding Light business.

**ANSWER:** Defendants deny the allegations contained in paragraph 19.

20.     Folding Light was in the business of electronically trading securities and commodities in several markets.

**ANSWER:** Defendants admit the allegations contained in paragraph 20.

21.     Beginning in May 2017, Andrews and Schlossberg were retained as independent contractors. Schlossberg was primarily responsible for developing Folding Light's trading platform (as described below) and identifying and creating electronic trades for Folding Light to conduct.

**ANSWER:** Defendants admit the allegations contained in paragraph 21.

22.     Andrews was primarily responsible for business development and raising capital with which Folding Light could trade.

**ANSWER**: Defendants admit the allegations contained in paragraph 22.

23.     Andrews and Schlossberg were each paid $250,000 per year for this work.

**ANSWER**:    Defendants admit the allegations contained in paragraph 22.

24.     Beginning in late 2017, Folding Light sought and obtained millions of dollars in outside investment so that it could grow its business. In connection with the outside investment, Folding Light prepared a formal operating agreement by which it would be governed.

**ANSWER**: Defendants admit the allegations contained in paragraph 24.

25. On February 1, 2018, Flagstad, Klaas, Schlossberg, Andrews, Rick Sterioti ("Sterioti"), and James Streibich ("Streibich"), as representative of the James Streibich Revocable Trust of 2002, entered into the Folding Light, LLC Limited Liability Company Agreement (the "LLC Agreement").

**ANSWER:** Defendants admit that the Folding Light LLC Agreement was executed by the persons listed in paragraph 25, but deny that the Folding Light LLC Agreement was executed on February 1, 2018. Rather, the Folding Light LLC Agreement was fully executed in May 2018.

26.    A true and accurate copy of the LLC Agreement is attached as Exhibit A.

**ANSWER:** Defendants admit the allegations contained in paragraph 26.

27.    Pursuant to the LLC Agreement, Folding Light is managed by a Management Committee:

. . . the business and affairs of the Company shall be managed under the direction of its Managers (collectively, the "Management Committee"). Except as otherwise specifically provided herein or by Applicable Law, the Management Committee shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company and to take all such actions as the Management Committee deems necessary or appropriate to accomplish the purposes of the Company as set forth herein (including without limitation the making of decisions affecting investments, distributions and compensation). (Ex. A, § 6.1(a)).

**ANSWER:** To the extent the allegations in Paragraph 27 seek to paraphrase or characterize written documents, those documents speak for themselves and

Defendants deny the allegations to the extent that they are inconsistent with those documents.

28.     The initial Management Committee was comprised of Flagstad, Schlossberg, and Streibich. (Ex. A, § 6.1(d)).

**ANSWER:**  Defendants admits the allegations contained in paragraph 28.

29.     Pursuant to the LLC Agreement, Flagstad was the Lead Manager of Folding Light. (Ex. A, § 6.1(i)). He remains the Lead Manager today.

**ANSWER:** Defendants admit that the LLC Agreement designated Flagstad as the Lead Manager of Folding Light. Defendants have insufficient information with which to admit or deny whether Flagstad is the Lead Manager today and therefore deny the allegation.

30.     The LLC Agreement further provides that:
Upon the Company's request, any Member who has notified the Company of his or her resignation or has been terminated by the Company shall agree to a "garden leave" for a period not to exceed twelve (12) months, as determined by the Management Committee, during which period such Member shall (i) provide services to the Company from a remote location, (ii) refrain from providing services to any Person other than the Company, (iii) adhere to the other provisions of this Section 6.5 and (iv) be entitled to compensation commensurate with the services provided. (Ex. A, § 6.5(c)).

**ANSWER:** To the extent the allegations in Paragraph 30 seek to paraphrase or characterize written documents, those documents speak for themselves and

Defendants deny the allegations to the extent that they are inconsistent with

those documents.

31. The LLC Agreement defines "Intellectual Property" as:

> . . . the rights associated with or arising out of any of the following: (i) domestic and foreign patents and patent applications, together with all reissuances, divisionals, continuations, continuations-in-part, revisions, renewals, extensions, and reexaminations thereof, and any identified invention disclosures; (ii) trade secret rights and corresponding rights in confidential information and other nonpublic information (whether or not patentable), including ideas, formulas, compositions, inventor's notes, discoveries and improvements, know-how, manufacturing and production processes and techniques, testing information, research and development information, inventions, invention disclosures, unpatented blueprints, drawings, specifications, designs, plans, proposals and technical data, business and marketing plans, market surveys, market know-how and customer lists and information (iii) all copyrights, copyrightable works, rights in databases, data collections, "moral" rights, mask works, copyright registrations and applications therefor and corresponding rights in works of authorship; (iv) all trademarks, service marks, logos, trade dress and trade names and domain names indicating the source of goods or services, and other indicia of commercial source or origin (whether registered, common law, statutory or otherwise), all registrations and applications to register the foregoing anywhere in the world and all goodwill associated therewith; (v) all computer software and code, including assemblers, applets, compilers, source code, object code, development tools, design tools, user interfaces and data, in any form or format, however fixed; and (vi) all Internet domain names, electronic addresses, websites, proprietary symbol sets and proprietary voices, uniform resource locators and alphanumeric designations associated therewith and all registrations for any of the foregoing. (Ex. A, pp. 9-10).

**ANSWER:** To the extent the allegations in Paragraph 31 seek to paraphrase or

characterize written documents, those documents speak for themselves and

Defendants deny the allegations to the extent that they are inconsistent with those documents.

32. The LLC Agreement states that all Intellectual Property is the property of Folding Light:

> (b) Each Member agrees that (i) to the extent permitted by Applicable Law, all such Intellectual Property Created after the date of this Agreement (collectively, the "LLC IP") shall be deemed a "work made for hire" within the meaning of that term under United States Copyright Act, 17 U .S.C. §§ 101 et seq., as amended or superseded, and (ii) the Company shall be deemed the exclusive author of such LLC IP and the exclusive owner of all rights, title and interest in and to such LLC IP in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised.

> (c) Each Member hereby (i) assigns and transfers to the Company, in respect of each item of LLC IP, as of the date of its Creation, any and all rights, title and interest such Member may have or acquire in and to any LLC IP (including any LLC IP not deemed, for whatever reason, to be a work made for hire); and (ii) irrevocably waives and assigns to the Company any and all so-called moral rights or "droit moral" as such Member may have in or with respect to such LLC IP. Each Member hereby represents and warrants (x) it shall not make any grant, pledge, or other disposition in respect of any right, title or interest in or to such LLC IP to any Person other than the Company; and (y) such LLC IP will, unless otherwise authorized by the Company in writing, be an original Creation by such Member and will not improperly use or disclose any trade secret, or confidential information, or other property of any other Person. (Ex. A, § 6.6(b)-(c)).

**ANSWER:** To the extent the allegations in Paragraph 32 seek to paraphrase or characterize written documents, those documents speak for themselves and

Defendants deny the allegations to the extent that they are inconsistent with those documents.

33. The LLC Agreement also forbids the use and disclosure of confidential and propriety information and requires each member to keep such information confidential: Each Member recognizes and acknowledges that such Member will be entrusted with or have access to confidential and proprietary information of the Company, Affiliates of the Company and/or third parties to which the Company or any Affiliate thereof owes a duty of confidentiality (whether pursuant to Applicable Law, by contract or otherwise). Each Member therefore agrees that for so long as he is a Member, and for the longest period of time permitted by law thereafter, such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance of such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account. Upon ceasing to be a Member for any reason whatsoever, each Member shall use reasonable efforts to promptly (i) delete or cause to be deleted any Confidential Information held in electronic format and (ii) deliver or cause to be delivered to the Company any and all other tangible Confidential Information in each case in such Member's possession, custody or control. As used herein, the term "Confidential Information" shall mean trade secrets and other non-public information, whether tangible or intangible, in any form or medium, relating to the business or affairs of the Company or its Affiliates that is proprietary to the Company or its Affiliates and which the Company or its Affiliates make reasonable efforts to keep confidential, including, but not limited to, relationships with, and contact information of, Investors and Prospective Investors, materials, research, systems, plans and procedures of or relating to the Company or its Affiliates, databases, software and enhancements thereto,

processes, Trading or investment strategies and methodologies, Trading or investment systems, financial products or risk management models, revenue models, manuals, confidential reports, quantitative and other strategies and methodologies, procedures, techniques, discoveries and concepts, financial products and investment positions of the Company or its Affiliates, business plans and strategies, pricing and other financial information, marketing plans, advertising, names, addresses and other information regarding all past, existing Investors and Prospective Investors, vendors and suppliers of the Company or its Affiliates and any confidential information of any such Investors, vendors or suppliers, contractual arrangements, personnel records and other information relating to employees, training materials, statistical data, the source code of the Work, if applicable, and any other non-public information or data comprising or related to the Work, and other proprietary technologies and processes, source code, specifications, inventions, designs, developments of the Company or its Affiliates and other proprietary information used by the Company or its Affiliates in connection with their respective businesses and/or which the Company or any of its Affiliates is obligated to any third party to maintain as confidential. The Members acknowledge that the Confidential Information is vital, sensitive, confidential and proprietary to the Company. (Ex. A, 6.5(c)).

**ANSWER:** To the extent the allegations in Paragraph 33 seek to paraphrase or characterize written documents, those documents speak for themselves and Defendants deny the allegations to the extent that they are inconsistent with those documents.

34. The LLC Agreement also provides that in the event a member learns about a potential business opportunity, the member must present that opportunity to Folding Light and not exploit or usurp it for the member's own benefit. (Ex. A, 6.3(c)).

**ANSWER:** To the extent the allegations in Paragraph 34 seek to paraphrase or characterize written documents, those documents speak for themselves and

Defendants deny the allegations to the extent that they are inconsistent with those documents.

35. The LLC Agreement also contains the following covenant restricting the conduct of the Members:

> Each Member hereby agrees that, during the period commencing on the date hereof and ending on the date that is eighteen months immediately following the date such Member is no longer a Member of the Company (such period shall be referred to as the "Restricted Period"), such Member shall not, without the prior written consent of the other Member [sic], directly or indirectly, alone or in combination with any other Person, (i) employ, offer employment to, or otherwise attempt to hire, as an employee, consultant, independent contractor or otherwise (or assist any other Person to take any such action regarding), any individual employed or engaged by the Company or any of its Affiliates during the six month period prior to the date of contact; (ii) solicit an investment (whether a capital investment, debt investment or otherwise) from any Investor or Potential Investor of the Company or its Affiliates; or (iii) otherwise seek to influence or alter any relationship between the Company or any of its Affiliates and any Person referred to in clause (i) or (ii) above. (Ex. A, § 6.5(a).)

**<u>ANSWER:</u>**   To the extent the allegations in Paragraph 35 seek to paraphrase or characterize written documents, those documents speak for themselves and Defendants deny the allegations to the extent that they are inconsistent with those documents.

36. The LLC Agreement defines "Investor" as "any Person who has invested with, or provided funds (whether by a capital investment, debt investment or otherwise) to, the Company or its Affiliates." (Ex. A, p. 10).

**ANSWER:** To the extent the allegations in Paragraph 36 seek to paraphrase or characterize written documents, those documents speak for themselves and Defendant denies the allegations to the extent that they are inconsistent with those documents.

37. If Folding Light brings a successful legal action to enforce any provisions of The LLC Agreement or to recover damages for breaches of The LLC Agreement, The LLC Agreement provides Folding Light is entitled to recover its attorneys' fees and costs:

> In the event of legal action to interpret or enforce any of the terms or provisions of this Agreement or to recover damages for a breach thereof, the prevailing party shall be entitled to recover reasonable attorney's fees actually incurred plus costs. (Ex. A, § 11.6.)

**ANSWER:** To the extent the allegations in Paragraph 37 seek to paraphrase or characterize written documents, those documents speak for themselves and Defendants deny the allegations to the extent that they are inconsistent with those documents.

38. Folding Light was formed to engage in electronic securities and commodities trading in multiple different markets.

**ANSWER:** Defendants admit the allegations contained in paragraph 38.

39. In order to further its trading business and to provide it with flexibility to trade in multiple different markets, Folding Light expended substantial time, money, and other resources to develop intellectual property and trade secrets that give it a competitive advantage in its line of business.

**ANSWER:** Defendants admit the allegations contained in paragraph 39.

40. The trade secrets and intellectual property that Folding Light has developed through great effort and expense include, but are not limited to, business plans, confidential and proprietary trading strategies and processes, computer software, a network infrastructure, and a trading platform (the "Platform").

**ANSWER:**  Defendants admit the allegations contained in paragraph 40.

41. Folding Light has also expended substantial effort and resources to develop confidential and proprietary relationships that are crucial to its business and its ability to expand its business. These confidential and proprietary relationships are memorialized in customer lists, leads, lists of investors who may be interested in providing capital to Folding Light for trading and access to other financial markets, including exchanges on which BitCoin, a popular cryptocurrency, is traded. (Together, Folding Light's Platform, business plans, confidential and proprietary trading strategies, customer lists, leads, lists of investors, and other items referenced herein are referred to in this complaint as the "Trade Secrets").

**ANSWER**: Defendants admit the allegations contained in paragraph 41.

42. Folding Light and its investors spent over $2 million developing and improving the Platform and its other Trade Secrets and setting up the business to conduct trades.

**ANSWER**:  Defendants have insufficient information with which to admit

or deny the allegations in paragraph 42 and therefore deny the allegations

and demand strict proof thereof..

43. The Platform was developed primarily by Schlossberg and Patel while they were at Folding Light.

**ANSWER**:  Defendants admit the allegations contained in paragraph 43.

44. Schlossberg began work on the Platform in May 2017. In February 2018, Folding Light retained Patel as an independent contractor to assist Schlossberg in writing software code for the Platform.

**ANSWER**: Defendants admit the allegations contained in paragraph 44.

45. The Platform automatically executes certain financial trades based on financial data and an algorithm developed by Folding Light.

**ANSWER**:  Defendantsdeny the allegations contained in paragraph 45. .

46.    The Platform includes trading applications, databases, source code, and the algorithm.

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations in paragraph 46 and therefore deny them and demand strict proof thereof.

47.    Prior to Defendants' theft, the Platform was unique to Folding Light.

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations in paragraph 47 and therefore deny the allegations and demand strict proof thereof..

48. The Platform is Confidential Information and Intellectual Property pursuant to the LLC Agreement.

**ANSWER**:  Defendants state that the allegations contained in paragraph 48 constitute legal conclusions to which no answer is required.

49. As Intellectual Property and Confidential Information under the LLC Agreement, the Platform and other Trade Secrets are the property of Folding Light.

16

**ANSWER**: Defendants state that the allegations contained in paragraph 49 constitute legal conclusions to which no answer is required.

50. Folding Lights' Trade Secrets were protected through various means including, but not limited to, encrypted passwords, two-factor verification, and limited access to the Platform and its source code.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 50 and therefore deny them and demand strict proof thereof

51. Additionally, it was Folding Light's policy that the Trade Secrets were not to be disclosed outside of Folding Light.

**ANSWER**: Defendants admit the allegations contained in paragraph 51.

52. Schlossberg and Patel had access to the Platform and were the only individuals at Folding Light who had access to, and were permitted to access, the Platform's source code.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 52 and therefore deny them and demand strict proof thereof.

53. Folding Light's traders also had limited access to the Platform for the purpose of initiating and monitoring trades.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 53 and therefore deny them and demand strict proof thereof.

54. The Platform was equipped with proprietary firm trading controls. In order to access the Platform, a person needed a login, password, and to satisfy various multi-factor access controls.

**ANSWER**: Defendants have insufficient information with which to admit or deny

the allegations in paragraph 54 and therefore deny them and demand strict

proof thereof.

55. Additionally, the computers in the trading room which contained the Platform were kept under lock and key, and required a key fob to access them, so that access to the Platform was limited only to individuals on a need-to-know basis.

**ANSWER**: Defendants have insufficient information with which to admit or

deny the allegations in paragraph 55 and therefore denies them and demand

strict proof thereof.

56. Folding Light's members, managers, and contractors were repeatedly informed, and generally understood, that Folding Light's Confidential Information, Intellectual Property, and other Trade Secrets should not be disclosed to any person outside of Folding Light for any reason.

**ANSWER**: Defendants have insufficient information with which to admit or deny

the allegations in paragraph 56 and therefore denies them and demand strict

proof thereof.

57. Folding Light's members, managers, and contractors were repeatedly informed, and generally understood, that the Platform and its source code are Folding Light's Confidential Information, Intellectual Property, and a trade secret, and should not be disclosed to any person outside of Folding Light for any reason.

ANSWER: Defendants have insufficient information with which to admit or deny the allegations in paragraph 57 and therefore deny them and demand strict proof thereof.

58. Folding Light had eleven computers in its trading room that allowed for access to its Intellectual Property and Confidential Information, including the Platform. Access to these computers was limited to Folding Light's managers, members, and traders on a need-to-know basis. Folding Light's managers, members, and traders could access these computers remotely through an application called TeamViewer, which allowed both on-premises and off-premises access to the computers in the trading room and the Platform. Access to the TeamViewer application was limited on a need-to-know basis to Folding Light's managers, certain members, and its traders.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 58 and therefore deny them and demands strict proof thereof.

59. There were also two Folding Light computers in Schlossberg's office and three other Folding Light computers that Schlossberg used in other locations, all of which were kept under lock and key. Only Schlossberg had access to these computers. Schlossberg also was and is in possession of two Folding Light iPad Pros. These iPad Pros contain the TeamViewer application so that Folding Light could monitor trades around the clock. Through all of these devices, Schlossberg had access to Folding Light's Intellectual Property and Confidential Information.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 59 and therefore deny them and demand strict proof thereof.

60. Without Folding Light's eleven computers and the Folding Light devices in Schlossberg's possession, Folding Light cannot access or use its Intellectual Property, Confidential Information and Trade Secrets, including the Platform.

**ANSWER**: Defendants have insufficient information with which to admit or deny

the allegations in paragraph 60 and therefore deny them and demand strict

proof thereof.

61. Absent Folding Light being able to access the Platform and other Trade Secrets, Folding Light's trading business is effectively dismantled because Folding Light cannot trade, access its trades, view the trading activity that is taking place, or use its proprietary trading algorithm and strategies.

**ANSWER**: Defendants have insufficient information with which to admit or deny

the allegations in paragraph 61 and therefore deny them and demand strict

proof thereof.

62. Flagstad and Klaas are also involved in several other business ventures including Two Screens Media, LLC and Oxford Marketing Partners, LLC.

**ANSWER**:   Defendants admit the allegations contained in paragraph 62.

63. Flagstad and Klaas are engaged in a dispute over the separation of those, and other, businesses and ventures.

ANSWER: Defendants admit the allegations contained in paragraph 63.

64. Many of those businesses and ventures, along with Folding Light, operated out of the same shared office space.

**ANSWER**:   Defendants admits that Flagstad and Klaas operated businesses

other than Folding Light out of the same shared office space.

65. The tenant for Folding Light's office lease is Channel Clarity Holdings, LLC ("Channel Clarity"), an entity that is majority- owned by Flagstad. Channel Clarity has subleased Folding Light's office space to it.

**ANSWER**: Defendants have insufficient information with which to admit or deny

the allegations in paragraph 65 and therefore deny them and demand strict

proof thereof.

66.     During the course of their dispute, Klaas, among others, made disparaging statements regarding Folding Light's management, including Flagstad, to multiple parties, including Schlossberg and Andrews for the purpose of altering Schlossberg's and Andrews' allegiances to Folding Light and so that Schlossberg and Andrews would remain loyal to Klaas.

**ANSWER**:    Defendants deny the allegations contained in paragraph 66.

67.     On October 23, 2018, Flagstad asked Klaas to leave the shared Channel Clarity/Folding Light offices by October 31, 2018.

**ANSWER**:    Defendants deny the allegations contained in paragraph 67.

68.     In the Spring of 2018, Folding Light purchased $1,000,000 of Class B Membership Interests in HC Tech Group, Inc. ("HC Tech"), a Delaware limited liability company, pursuant to a Supplemental Trading Agreement between the parties. The Supplemental Trading Agreement provided that Folding Light could require HC Tech to repurchase the Class B interests under certain conditions.

**ANSWER**:    Defendants have insufficient information with which to admit or deny the allegations in paragraph 68 and therefore deny them and demand strict proof thereof In late Summer of 2018, Folding Light decided to disengage from HC Tech and require HC Tech to repurchase the Class B interests and, in essence, recover Folding Light's investment.

**ANSWER**: Defendants deny the allegations in paragraph 69. Answering further, Defendants state that Streibich verbally asked Defendants to facilitate the repurchase of Class B interests from HC Tech and Defendants refused given

the risks associated with wiring the proceeds to a bank account that only Flagstad had control of.

70.     Flagstad directed Andrews and Schlossberg to communicate with HC Tech in order to sell the Class B interests and recover Folding Light's investment.

**ANSWER**:   Defendants have insufficient information with which to admit or deny the allegations in paragraph 70 and therefore deny them and demands strict proof thereof.

71.     On or about October 5, 2018, Folding Light discovered that Andrews and Schlossberg had done nothing to recover Folding Light's investment from HC Tech.

**ANSWER**:   Defendants have insufficient information with which to admit or deny the allegations in paragraph 71 and therefore deny them and demand strict proof thereof.

72.     In addition, between August 2018 and October 2018 and thereafter, Schlossberg and Andrews repeated Klaas' disparaging statements regarding Folding Light's management to many more third parties for the purpose of damaging and usurping Folding Light's business relationships with those third parties.

**ANSWER**:   Defendants have insufficient information with which to admit or deny the allegations in paragraph 72 and therefore deny them and demands strict proof thereof.

73.     On October 29, 2018, Schlossberg and Andrews executed a document purporting to give one another a release on behalf of Folding Light for any prior actions, terminating the restrictive covenants of the LLC

Agreement and giving Schlossberg "explicit consent ... to use any and all trading strategies and IP he so chooses in any future activity."

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations in paragraph 73 and therefore deny them and demand strict proof thereof.

74.    On October 31, 2018, Folding Light sent a letter terminating Schlossberg and redeeming his interest in Folding Light. A copy of the Schlossberg termination letter is attached as Exhibit B.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 74 and therefore deny them.

75.    The termination letter informed Schlossberg that his engagement as a contractor of Folding Light was terminated immediately. (Ex. B, p. 1).

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 75 and therefore deny them.

76.    As Schlossberg was terminated, he ceased to be involved in the Company's business and Folding Light executed its right to redemption pursuant to § 6.7(b) of The LLC Agreement. (Id.)

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations in paragraph 76 and therefore deny them.

77.    The termination letter further informed Schlossberg that Folding Light was placing Schlossberg on "garden leave" to provide such services as Folding Light required to secure and protect its assets and intellectual property. (Id. at 1-2).

**ANSWER**:  Defendants have insufficient information with which to admit

or deny the allegations in paragraph 77 and therefore deny them.

78.     The termination letter demanded that Schlossberg immediately exit the premises but directed that he should not remove his office computer, which was the property of Folding Light. (Id. at 2.)

**ANSWER**: Defendants have insufficient information with which to admit or

deny the allegations in paragraph 78 and therefore deny them.

79.     The termination letter also demanded that Schlossberg transmit all Intellectual Property belonging to Folding Light and residing on any computer or server in Schlossberg's home or any other location to Folding Light and then certify the return of Folding Light's property in writing by November 1, 2018. (Id. at 2.)

**ANSWER**:  Defendants have insufficient information with which to admit or

deny the allegations in paragraph 79 and therefore deny them.

80.     Schlossberg did not return any of Folding Light's property.

**ANSWER**: Defendants have insufficient information with which to admit or

deny the allegations in paragraph 80 and therefore deny them.

81.     On October 31, 2018, a similar letter was sent to Andrews, terminating his employment and redeeming his membership interest. A copy of the Andrews termination letter is attached as Exhibit C.

**ANSWER**:  Defendants have insufficient information with which to admit or

deny the allegations in paragraph 81 and therefore deny them.

82. Andrews' termination letter contained the same garden leave and Folding Light property provisions as Schlossberg's termination letter.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 82 and therefore deny them.

83. As with Schlossberg, Andrews did not return any Folding Light property.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 83 and therefore deny them.

84. Immediately following their terminations, Andrews, Schlossberg, and the other Individual Defendants took steps to ensure that they could steal and replicate Folding Light's entire business.

**ANSWER**: Defendants deny the allegations in paragraph 84 as it pertains to Klaas. Defendants have insufficient information with which to admit or deny the remaining allegations contained in paragraph 84 and therefore deny them.

85. To begin, the Individual Defendants continued to access Folding Light's computer network.

**ANSWER**: Defendants denies the allegations in paragraph 85 as it pertains to Klaas. Defendants have insufficient information with which to admit or deny the remaining allegations contained in paragraph 85 and therefore deny them.

86. Upon information and belief, Schlossberg and Andrews were able to continue to access Folding Light's computer systems and the Intellectual Property and Confidential Information contained therein after their termination

because, as set forth below, they have usurped Folding Light's relationship with Radius IT, Folding Light's IT vendor ("Radius IT"). As Folding Light's IT vendor, Radius IT has the ability to control access to Folding Light's computer systems, thereby permitting Schlossberg and Andrews to access Folding Light's computer systems, Intellectual Property, and Confidential Information and Trade Secrets contained therein.

**ANSWER**: Defendants have insufficient information with which to admit or

deny the allegations in paragraph 86 and therefore deny them.

87. Next, upon information and belief, Klaas, Andrews, and Schlossberg solicited the other Individual Defendants to join them in stealing and replicating Folding Light's entire business.

**ANSWER**: Defendants deny the allegations contained in paragraph 87.

88. As described further herein, despite Schlossberg's and Andrews' terminations, Defendants engaged in a conspiracy to access Folding Light's computer system without authorization and to misappropriate Folding Light's Trade Secrets, including the Platform.

**ANSWER**: The Defendant denies the allegations in paragraph 88.

89. Shortly after Schlossberg and Andrews were terminated, Leli and Patel resigned as Folding Light contractors without notice and disappeared. Upon information and belief and as further described herein, Leli and Patel went to work for Bunny Foo Foo Labs in identical or substantially similar positions and/or roles.

**ANSWER**: The Defendants deny the allegations contained in paragraph 89.

90. The Individual Defendants then broke in to Folding Light's office to steal Folding Light's property.

**ANSWER**: Defendants denies the allegation in paragraph 90 as it pertains

to Klaas. Defendants have insufficient information with which to admit or

deny the remaining allegations contained in paragraph 90 and therefore deny them.

91. During the weekend of November 2 through November 4, 2018, Zhang, Patel, and Leli entered the Folding Light offices.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 91 and therefore deny them.

92. While at the Folding Light offices, Zhang, Patel, and Leli took the two Folding Light computers in Schlossberg's office without Folding Light's authorization.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 91 and therefore deny them.

93. Zhang, Patel, and Leli then proceeded, without authorization, to erase nearly all data from the eleven Folding Light computers in the trading section of the office, including the Platform and Folding Light's other Intellectual Property, Confidential Information and Trade Secrets, and to reset them to factory settings.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 77 and therefore deny them.

94. Upon information and belief, Zhang, Patel, and Leli stole the two computers containing Folding Light's Intellectual Property, Confidential Information and Trade Secrets, including the Platform, and erased nearly all data on the rest of the Folding Light computers, at the direction of Klaas, Schlossberg, and Andrews. On information and belief, one or more of Klaas, Schlossberg or Andrews also entered Folding Light's offices during the weekend of November 2 through November 4, 2018, and assisted Zhang, Patel, and Leli with the actions set forth above.

**ANSWER**: Defendants deny the allegations in paragraph 94 as it pertains to Klaas. Defendants have insufficient information with which to admit or deny the remaining allegations contained in paragraph 94 and therefore deny them.

95. One computer remaining in the Folding Light offices has files related to the Platform, but does not have the user interface required to actually use the Platform.

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations in paragraph 95 and therefore deny them.

96. The Platform allows users to place trades and view the trades that have been placed.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 96 and therefore deny them.

97. In stealing the Platform and erasing nearly all data from Folding Light's computers, Defendants have effectively dismantled Folding Light's business because they have completely cut off the ability of Folding Light to access the Platform and to execute trades.

**ANSWER**: Defendants deny the allegations contained in paragraph 97.

98. Defendants are now in exclusive control of Folding Light's Intellectual Property, Confidential Information and Trade Secrets, including the

Platform, and, upon information and belief, Defendants are using these materials for their own economic advantage.

**ANSWER**: Defendants deny the allegations in paragraph 98 as it pertains to Klaas and BFF Labs. Defendants have insufficient information with which to admit or deny the remaining allegations contained in paragraph 98 and therefore deny them.

99. Upon information and belief, Defendants are now using Folding Light's Intellectual Property, Confidential Information and Trade Secrets to start and conduct their own business, Bunny Foo Foo Labs, which is a direct competitor of Folding Light and is identical to Folding Light, and to siphon business from Folding Light to this new business.

**ANSWER**: Defendants deny the allegations contained in paragraph 99.

100. During the weekend of November 2 through November 4, 2018, Klaas entered Channel Clarity's offices and took some of Folding Light's office furniture. Additionally, during that weekend, Klaas and/or one or more of the Individual Defendants took Folding Light's televisions, collectible artwork, and wine without permission.

**ANSWER**: Defendants deny the allegations contained in paragraph 99.

101. Folding Light has demanded several times that Klaas and/or Defendants return to Folding Light any and all of its property, including without limitation its Intellectual Property, Confidential Information, Trade Secrets, and other property.

**ANSWER**: Defendants deny the allegations contained in paragraph 101. .

102. Defendants have refused to return Folding Light's Intellectual Property, Confidential Information, Trade Secrets, and other property.

**ANSWER**: Defendants deny the allegations contained in paragraph 102.

103. The Individual Defendants also interfered with Folding Light's business and investor relationships and Folding Light's access to capital.

**ANSWER**: Defendants deny the allegations contained in paragraph 103.

104. On or about November 6, 2018, Sterioti contacted HC Tech to request the repurchase by HC Tech of the Class B interests described above.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 104 and therefore deny them.

105. In subsequent discussions, HC Tech informed Folding Light that Andrews had contacted HC Tech and told it not to return the money used to purchase the Class B interests to Folding Light

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations contained in paragraph 105 and therefore deny them.

106. HC Tech also told Folding Light that Andrews told HC Tech to return the money to Andrews himself.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 106 and therefore deny them.

107. When Folding Light confronted Andrews regarding his interference, Andrews responded that "the most efficient use of everyone's time would be for you and Kasey to speak ASAP."

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 104 and therefore deny them..

108. Eventually, despite Andrews' efforts to interfere with the return of Folding Light's investment in HC Tech, HC Tech agreed to return the money to Folding Light in three installment payments.

**ANSWER**: Defendants have insufficient information with which to admit or deny the allegations in paragraph 108 and therefore deny them.

109. In February 2018, Folding Light retained Zhang as an independent contractor. Zhang's roles and responsibilities included serving as the Chief Operations Officer for Folding Light. In that position, Zhang was responsible for managing and developing relationships with various trading exchanges as well as leading product development and project management of the Platform.

**ANSWER**: Defendants deny the allegations contained in paragraph 109.

110. One of Folding Light's lines of trading business was trading on cryptocurrency futures exchanges.

**ANSWER**: Defendants admit the allegations contained in paragraph 110.

111. In connection with Folding Light's trading business, through the expenditure of substantial time, money, and other resources, Folding Light developed a relationship with Bill and Brooke Mallers, the ("Mallers"). The Mallers own a large amount of cryptocurrency, including BitCoin.

**ANSWER**: Defendants admit that Folding Light had a relationship with the Mallers. Answering further, Defendants have insufficient information with which to admit or deny the remaining allegations contained in paragraph 111 and therefore deny them.

112. Zhang was involved in developing Folding Light's relationship with the Mallers.

**ANSWER**:    Defendants deny the allegations contained in paragraph 112.

113.    Eventually, the Mallers and Folding Light entered into an arrangement where the Mallers lent Folding Light BitCoin so that Folding Light could trade those BitCoin.

**ANSWER**:    Defendants admit the allegations contained in paragraph 113.

114.    In February 2018, the Mallers lent Folding Light 10 BitCoin.

**ANSWER**:    Defendant admits that in February 2018 the Mallers lent 10 BitCoin to Folding Light.

115.    In March 2018, the Mallers lent Folding Light 290 BitCoin.

**ANSWER**: Defendants admit the allegations contained in paragraph 115.

116.    As Andrews, Schlossberg and Zhang knew, Folding Light's relationship with the Mallers was critical to its future business plans.

**ANSWER**:    Defendants have insufficient information with which to admit or deny the allegations in paragraph 116 and therefore deny them.

117.    On information and belief, prior to Folding Light placing Andrews and Schlossberg on "garden leave", one or more of Klaas, Schlossberg, Andrews, Zhang, and Patel flew to visit the Mallers on at least two occasions. During these visits, one or more of Klaas, Schlossberg, Andrews, Zhang, and Patel falsely and maliciously disparaged Folding Light's management, including Flagstad, to the Mallers as part of their planned efforts to dismantle Folding Light's business and to secure access to BitCoins from the Mallers family for their own use. The purpose of Klaas', Schlossberg's, Andrews', Zhang's, and/or Patel's visits to the Mallers family was to induce them to stop doing business with Folding Light and to do business with Defendants instead.

**ANSWER**:   Defendants deny the allegations contained in paragraph 117.

118.   As a result of Defendants' meeting with the Mallers, Folding Light has been prevented from conducting further business with the Mallers.

**ANSWER**: Defendants have insufficient information with which to admit or

deny the allegations in paragraph 118 and therefore deny them.

119.   Defendants interference did not stop with HC Tech and the Mallers. On information and belief, Defendants met with nearly every company and individual that did or had done business with Folding Light and made disparaging comments regarding Folding Light's management for the express purpose of damaging those companies' and individuals' relationships with Folding Light and inducing those companies and individuals into doing business with Defendants instead of Folding Light.

**ANSWER**:   Defendants deny the allegations contained in paragraph 119.

120.   Defendants also interfered with Folding Light's IT vendor.

**ANSWER**: Defendants deny the allegations contained in paragraph 99.

121.   Folding Light contracted with an information technology firm known as Radius IT. Radius IT and its employee, Tim Hicks, helped Folding Light to maintain its network of servers and personal computers.

 **ANSWER**:   Defendants deny the allegations contained in paragraph 121.

122.   Following defendants' departure from Folding Light and theft of Folding Light's computers and data, Flagstad contacted Radius IT on behalf of Folding Light to ask for its help in restoring its network and accessing its Platform so that it could view outstanding and future trades and continue its work.

**ANSWER**:  Defendants deny the allegations in paragraph 122 pertaining to theft of Folding Light's computers and data. Answering further, Defendants state that they have insufficient information with which to admit or deny the remaining allegations in paragraph 122 and therefore deny them.

123.    Although Flagstad asked for help from Radius IT and Tim Hicks on several occasions, they have never responded.

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations contained in paragraph 123 and therefore deny them.

124.    Upon information and belief, Radius IT did not respond because they were improperly instructed not to do so by Defendants Klaas, Schlossberg and Andrews.

**ANSWER**:  Defendants deny the allegations contained in paragraph 124.

125.    Upon information and belief, Radius IT continues to work with Defendants Klaas, Schlossberg and Andrews to help them to utilize the Platform and to perform trades that otherwise would have been performed by Folding Light.

**ANSWER**: Defendants deny the allegations contained in paragraph 125.

126.    Upon information and belief, in November 2018, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli began sharing an office space and using the office furniture that Defendants took from Folding Light without authorization and for their own benefit.

**ANSWER**:  Defendants admit that Klaas shared office space at 401 West Superior. Defendants deny the remaining allegations in paragraph 126.

127.    Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli knowingly and actively participated in the decision to steal Folding Light computers, erase nearly all data from the rest of Folding Light's computers, and take control of Folding Light's Intellectual Property, Confidential Information and Trade Secrets.

**ANSWER**:  Defendants deny the allegations contained in paragraph 127

128.    Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli are currently in control of and using for their own benefit Folding Light's Intellectual Property, Confidential Information and Trade Secrets.

**ANSWER**:  Defendants deny the allegations contained in paragraph 128.

129.    Upon information and belief, Klaas, Schlossberg, Andrews, Zhang, Patel, and Leli, have used the Intellectual Property, Confidential Information, and Trade Secrets they stole, including the Platform, to form a business nearly identical to Folding Light.

**ANSWER**:  Defendants deny the allegations contained in paragraph 129.

130.    Upon information and belief, that business is operating under the name Bunny Foo Foo Labs.

**ANSWER**:  Defendants deny the allegations contained in paragraph 130.

131.    Bunny Foo Foo Labs was organized under the laws of Delaware on October 9, 2018.

**ANSWER**:  Defendants admit the allegations contained in paragraph 131.

132.    On information and belief, Bunny Foo Foo Labs is owned and/or controlled by Klaas and one or more of the Individual Defendants.

**ANSWER**: Defendants deny the allegations contained in paragraph 132

133.    Upon information and belief, Klaas, Andrews and Schlossberg solicited Patel, Leli and Zhang to work with them in their new, competing business.

**ANSWER**:    Defendants deny the allegations contained in paragraph 133.

134.    Upon information and belief, Klaas, Andrews and Schlossberg actively solicited investments from Investors and Potential Investors of Folding Light, as defined in Section 6.5(a) of the LLC Agreement.

**ANSWER:**    Defendants deny the allegations contained in paragraph 134.

135.    Repeated requests for information regarding the current relationship between Klaas, Andrews, Schlossberg and the remaining defendants have been met with silence.

**ANSWER:**    Defendants deny the allegations contained in paragraph 135.

136.    Because of Defendants' illegal conduct, Folding Light has effectively been shuttered. It has lost all its valuable assets, had its relationships damaged or destroyed, and has been left without the means even of re-starting under new management or with new traders because, as the result of Defendants' acts, Folding Light cannot access or utilize its Trade Secrets, Confidential Information, or Intellectual Property, and has been denied access to capital and customers.

**ANSWER:**    Defendants deny the allegations contained in paragraph 136.

**<u>Count I</u>**
**<u>Computer Fraud and Abuse Act</u>**

## **(All Defendants)**

137.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 136.

**ANSWER:**   Defendants repeat and incorporate their answers to all of the preceding allegations within Paragraphs 1-136 as if set forth fully in his response to Paragraph 137.

138.    The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), forbids "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).

**ANSWER:**   The allegations in Paragraph 138 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

139.    The CFAA also forbids "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $ 5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

**ANSWER:**   The allegations in Paragraph 139 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

140.    The CFAA further forbids "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. § 1030(a)(5)(A). 141. The CFAA defines "protected

computer", in pertinent part, as "a computer . . . which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). 142. The CFAA provides for "a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

**ANSWER:** The allegations in Paragraph 140 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

141. The CFAA defines "protected computer", in pertinent part, as "a computer . . . which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

**ANSWER**: The allegations in Paragraph 141 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

142. The CFAA provides for "a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

**ANSWER**: The allegations in Paragraph 142 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

143. The computers at issue are protected computers under the CFAA because were used in interstate commerce and communication through financial trading.

**ANSWER**:   The allegations in Paragraph 143 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

144.   In concert and in a conspiracy with Defendants as set forth herein, Patel and Leli and, on information and belief, one or more of Klaas, Schlossberg, Andrews, or Zhang, accessed Folding Light's offices to steal computers containing trade secrets and copyrighted information, including the Platform, and to destroy the remaining copies of the Platform.

**ANSWER**:   Defendants deny the allegations contained in paragraph 144 as it pertains to Klaas. Defendants have insufficient information with which to admit or deny the remaining allegations in paragraph 144 and therefore deny them.

145.   Defendants were not authorized to steal and subsequently gain access to Folding Light's computers or information on them, including the Platform.

**ANSWER**: Defendants deny the allegations in paragraph 145 as it pertains to themselves, to the extent the allegations infer that Defendants did steal and/or subsequently gain access to Folding Light's computers or information on them, including the Platform.

146.   Defendants were also not authorized to access Folding Light computers in order to delete the trading software off of the remaining Folding Light computers.

**ANSWER**:   Defendants deny the allegations contained in paragraph 146.

147. Defendants accessed Folding Light's computers to steal the Platform and render the computers, network and Platform inoperable with the intent to obtain Folding Light's Trade Secrets, Confidential Information, and Intellectual Property, to further a fraud, and to damage the data on Folding Light's computers by deleting it or rendering it inoperable.

**ANSWER**: Defendants deny the allegations contained in paragraph 147.

148. Folding Light has spent over $2 million in creating the Platform at issue, and the deletion of the Platform caused a loss in value of over $5,000 because Defendants, through their actions, intended to prevent and have actually prevented Folding Light from operating as a going concern.

**ANSWER**: Defendants deny the allegations contained in paragraph 148.

149. Folding Light has also lost access to their Trade Secrets, Confidential Information, and Intellectual Property, including the Platform, because Defendants' actions have rendered Folding Light's computers, network and Platform inoperable.

**ANSWER:** Defendants have insufficient information with which to admit or

deny the allegations in paragraph 149 and therefore deny them.

150. Defendants' unauthorized access and theft of the computers and the Trade Secrets, Confidential Information, and Intellectual Property contained thereon, including the Platform, has caused and is causing irreparable harm to Folding Light, for which it has no adequate remedy at law. Unless this Court restrains Defendants from accessing the computers and the Trade Secrets, the harm will continue to occur in the future. Accordingly, Folding Light is entitled to both a preliminary and a permanent injunction.

**ANSWER:** Defendants deny the allegations contained in paragraph 99.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate

## Count II
## Misappropriation of Trade Secrets – Defend Trade Secrets Act
## (All Defendants)

151.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 150.

**ANSWER:**    Defendants repeat and incorporate their answers to all of the preceding_allegations within Paragraphs 1-150 as if set forth fully in his response to Paragraph 151.

152.    The Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(a).

 **ANSWER**:  The allegations in paragraph 152 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

153.    Folding Light is the owner of the Trade Secrets, including the Platform.

**ANSWER**: The allegations in paragraph 153 state legal conclusions that the Defendant has insufficient information with which to admit or deny and therefore denies them.

154.   Folding Light's Trade Secrets were used in, and intended for use in, interstate and foreign commerce because they were used to trade securities and commodities in national and international markets.

**ANSWER**: The allegations in paragraph 154 state legal conclusions that Defendant has insufficient information with which to admit or deny and therefore denies them.

155.   Folding Light's Trade Secrets, including the Platform, are confidential trade secrets from which Folding Light derives independent economic value because they are not generally known to the public or other persons who could obtain economic value from their disclosure or use.

**ANSWER**:  Defendants have insufficient information with which to admit or deny the allegations in paragraph 155 and therefore deny them.

156.   Folding Light has taken and continues to undertake reasonable efforts to maintain the confidentiality, secrecy, and proprietary nature of the Platform and its other Trade Secrets.

**ANSWER**: Defendant has insufficient information with which to admit or deny the allegations in paragraph 156 and therefore denies them.

157.   Defendants have willfully misappropriated and used the Trade Secrets, including the Platform, for their own benefit and to Folding Light's detriment.

**ANSWER**:  Defendants deny the allegations contained in paragraph 157.

158.  Defendants acquired the Trade Secrets, including the Platform, through improper means.

**ANSWER**:  Defendants deny the allegations contained in paragraph 158.

159.  Defendants' misappropriation and use of the Trade Secrets for their own benefit and to Folding Light's detriment has caused and continues to cause Folding Light to suffer damages and irreparable injury, as set forth herein.

**ANSWER**:  Defendants deny the allegations contained in paragraph 159.

160.  Defendants' misappropriation and use of the Trade Secrets is willful and malicious entitling Folding Light to an award of exemplary damages under the Defend Trade Secrets Act.

**ANSWER:** Defendants deny the allegations contained in paragraph 160.

161.  Defendants' misappropriation and use of the Trade Secrets has caused and will continue to cause Folding Light to suffer irreparable and substantial harm, therefore it cannot be fully redressed through damages alone. Accordingly, Folding Light is entitled to an injunction prohibiting Defendants from further use or disclosure of the Trade Secrets.

**ANSWER:**  Defendants deny the allegations contained in paragraph 161.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate

**Count III**
**Misappropriation of Trade Secrets – Illinois Trade Secrets Act**
**(All Defendants)**

43

162.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 161.

**ANSWER:** Defendants repeat and incorporate their answers to all of the preceding allegations within Paragraphs 1-161 as if set forth fully in their response to Paragraph 162.

163.    Pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 et seq. (the "ITSA"), a trade secret is "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being
generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).


**ANSWER:**   The allegations in paragraph 163 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

164.    "Misappropriation," in pertinent part, is defined as "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means." 765 ILCS 1065/2(b)(1).

**ANSWER:**   The allegations in paragraph 164 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

165.    "Improper means" is defined as including "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential

relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." 765 ILCS 1065/2(a)

**ANSWER:** The allegations in paragraph 165 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

166. Pursuant to the ITSA "actual or threatened misappropriation may be enjoined." 765 ILCS 1065/3(a).

**ANSWER:** The allegations in paragraph 166 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

167. Pursuant to the ITSA "a person is entitled to recover damages for misappropriation" which "can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 765 ILCS 1065/4(a).

**ANSWER:** The allegations in paragraph 167 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

168. Further "[i]f neither damages nor unjust enrichment caused by the misappropriation are proved by a preponderance of the evidence, the court may award damages caused by misappropriation measured in terms of a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret." Id.

**ANSWER**:   The allegations in paragraph 168 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

169.    Additionally, "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)." 765 ILCS 1065/4(b).

**ANSWER**:   The allegations in paragraph 169 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

170.    The Trade Secrets, including the Platform, are sufficiently secret to derive actual or potential value from not being generally known to others who can obtain economic value from their disclosure or use, and Folding Light does derive actual and potential economic value from the secrecy of the Trade Secrets.

**ANSWER**:   The allegations in paragraph 170 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

171.    Folding Light undertook reasonable efforts under the circumstances to maintain the secrecy and confidentiality of the Trade Secrets.

**ANSWER**:   The allegations in paragraph 171 state legal conclusions that the Defendants have insufficient information with which to admit or deny. To the extent an answer is required, the allegations are denied.

**172.** Folding Light's Trade Secrets, including the Platform, and the secrecy of the Trade Secrets, provide Folding Light with a competitive advantage in the marketplace.

**ANSWER:** The allegations in paragraph 172 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

173. Accordingly, the Platform and other Trade Secrets are protected by ITSA.

**ANSWER:** The allegations in paragraph 173 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

174. Defendants misappropriated Folding Light's Trade Secrets through unlawful means by stealing computers that contained the Platform and other Trade Secrets from Folding Light's office, erasing nearly all data on Folding Light's other computers and rendering them inoperable, and refusing to return other Folding Light computers that contain the Trade Secrets.

**ANSWER:** Defendants deny the allegations contained in paragraph 174.

175. Defendants' misappropriation of Folding Light's Trade Secrets was willful and malicious because Defendants intentionally stole computers containing the Platform and other Trade Secrets for their own personal gain and erased nearly all data from the remaining computers, rendering them unusable.

**ANSWER:** Defendants deny the allegations contained in paragraph 175.

176.   Defendants' theft of the Trade Secrets has caused and is causing irreparable harm to Folding Light, for which it has no adequate remedy at law because Folding Light is wholly unable to conduct its business or operate because it has been deprived of use of the Platform and the other Trade Secrets. Unless this Court restrains Defendants from using and disclosing Folding Light's trade secrets, the harm will continue to occur in the future. Accordingly, Folding Light is entitled to injunctive relief.

**ANSWER:**   Defendants deny the allegations contained in paragraph 176.

177.   Because Defendants' misappropriation of Folding Light's Trade Secrets was willful and malicious, Folding Light is entitled to an award of attorneys' fees pursuant to Section 5 of ITSA. 765 ILCS 1065/5.

**ANSWER:**   Defendant deny that they misappropriated any trade secrets as alleged in paragraph 177. Answering further, the remaining allegations in paragraph 177 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate

### Count IV
### Conversion—Platform
### (All Defendants)

178.   Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 177.

**ANSWER:** Defendants repeat and incorporate their answers to all of the preceding allegations within Paragraphs 1-177 as if set forth fully in their response to Paragraph 178.

179.    Pursuant to The LLC Agreement §§ 6.6(b)-(c), the Trade Secrets, including the Platform, are the intellectual property of Folding Light.

**ANSWER**:   The allegations in paragraph 179 state legal conclusions to which

no answer is required. To the extent an answer is required, the allegations are

denied.

180.    The computers stolen from Folding Light's office and other tangible property remaining in Defendants' possession are also the property of Folding Light.

**ANSWER**:   Defendants deny the allegations contained in paragraph 180.

181.    The Trade Secrets, Confidential Information, and Folding Light's other Intellectual Property were stolen by Defendants through theft of Folding Light's computers.

**ANSWER**:   Defendants deny the allegations contained in paragraph 181.

182.    By stealing the Trade Secrets, Confidential Information, including the Platform, Folding Light's computers, its other tangible property, and its other Intellectual Property, and by refusing to return these items remaining in Defendants' possession, Defendants wrongfully and without authorization assumed control, dominion, or ownership over Folding Light's Trade Secrets and Confidential Information, including the Platform, Folding Light's computers, its other tangible property, and its other Intellectual Property.

**ANSWER**:   Defendants deny the allegations contained in paragraph 182.

183.    Folding Light has an unconditional and absolute right to the Trade Secrets and Confidential Information, including the Platform, the stolen computers, the stolen other tangible property, and its other Intellectual Property, remaining in Defendants' possession, and to their return.

**ANSWER**: The allegations in paragraph 169 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

184.   Folding Light has demanded, including in Schlossberg's and Andrews' termination letters, the return of the Trade Secrets and Confidential Information, including the Platform, the stolen computers, the stolen other tangible property, and its other Intellectual Property remaining in Defendants' possession.

**ANSWER**:   As to themselves, Defendants specifically deny that there is any stolen property and deny the remaining allegations contained in paragraph 184.

185.   Despite Folding Light's demands, Defendants have and continue to wrongfully and without authorization assume control over the Trade Secrets and Confidential Information, the Platform, the stolen computers, the stolen other tangible property, and Folding Light's other Intellectual Property remaining in Defendants' possession.

**ANSWER:**   Defendants deny the allegations contained in paragraph 185.

186. As a result of Defendants' refusal to return Folding Lights property, Folding Light has suffered damages in the form of lost ability to control and exploit its own Intellectual Property and Trade Secrets and in the form of the value of the tangible property in Defendants' possession.

**ANSWER:**   Defendants deny the allegations contained in paragraph 99.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

## Count V

### Conversion—Office Furniture
### (Defendant Klaas)

187.     Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 186.

**ANSWER**:   Defendant Klaas repeats and incorporates his answers to all of the preceding allegations within Paragraphs 1-186 as if set forth fully in their response to Paragraph 187.

188.     Klaas took office furniture from Folding Light's offices without permission of Folding Light.

**ANSWER**: Defendant Klaas denies the allegation contained in paragraph 188.

189.     Folding Light has an unconditional and absolute right to the office furniture.

**ANSWER**:   Defendant Klaas denies the allegation contained in paragraph 189.

190.     Folding Light has demanded the return of the office furniture.

**ANSWER**:   Defendant Klaas denies the allegations contained in paragraph 190.

191.     Despite Folding Light's demands, Klaas has and continues to wrongfully and without authorization assume control over the office furniture.

**ANSWER**:   Defendant Klaas denies the allegation contained in paragraph 191.

192.     By taking Folding Light's office furniture and refusing to return it, Klaas wrongfully and without authorization assumed control, dominion, or ownership over the office furniture.

**ANSWER**:   Defendant Klaas denies the allegation contained in paragraph 192.

193. As a result of Klaas' refusal to return Folding Lights property, Folding Light has suffered damages in the form of lost ability to control and use its office furniture and in the form of the value of the tangible property in Defendants' possession.

**ANSWER**: Defendant Klaas denies the allegation contained in paragraph 192.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

**Count VI**
**Breach of Contract**
**(Defendant Schlossberg)**

THIS COUNT IS NOT ASSERTED AGAINST THESE ANSWERING DEFENDANTS, THEREFORE NO RESPONSE IS REQUIRED BY THESE DEFENDANTS.

**Count VII**
**Breach of Contract**
**(Defendant Andrews)**

THIS COUNT IS NOT ASSERTED AGAINST THESE ANSWERING DEFENDANTS, THEREFORE NO RESPONSE IS REQUIRED BY THESE DEFENDANTS.

**Count VIII**
**Breach of Contract**
**(Defendant Klaas)**

228. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 227.

**ANSWER**: Defendant repeats and incorporates his answers to all of the preceding allegations within Paragraphs 1-227 as if set forth fully in their response to Paragraph 228.

229. The LLC Agreement is a valid contract entered into, among others, by Klaas.

**ANSWER**: The allegations in paragraph 229 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

230. Folding Light has performed all of its obligations under the LLC Agreement.

**ANSWER**: The allegations in paragraph 230 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

231. Under the LLC Agreement, Klaas agreed to not disclose Folding Light's confidential information:

> Each Member therefore agrees that for so long as he is a Member, *and for the longest period of time permitted by law thereafter,* such Member shall (i) not, without the prior written consent of the other Member, directly or indirectly use, copy or duplicate, or disclose or otherwise make available to any third party, any Confidential Information (as defined below) other than in the performance such Member's duties with respect to the Company, (ii) take such protective measures as may be reasonably necessary to preserve the secrecy and interest of the Company in the Confidential Information, and (iii) not, without the prior written consent of the other Member, utilize or convert Confidential Information for such Member's own benefit or gain, of whatever nature other than (x) in performance of such Member's duties to the Company (whether as

a Manager, Member or otherwise) or (y) in connection with such Member's Trading for his own account.

(Ex. A, § 6.5(c)) (emphasis added).

**ANSWER**: The allegations in paragraph 231 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

232. The Trade Secrets, including the Platform, are Confidential Information and Intellectual Property pursuant to the LLC Agreement.

**ANSWER**: The allegations in paragraph 232 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

233. The Confidential Information and Intellectual Property terms of the LLC Agreement are material.

**ANSWER**: The allegations in paragraph 233 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

234. Upon information and belief, Klaas has breached his obligations under the LLC Agreement by, without the prior written consent of Folding Light:

  a. Directly using, copying, and disclosing the Trade Secrets for purposes other than in connection with the performance of his duties forFolding Light;

b. Failing to take such protective measures as may be reasonably necessary to preserve the secrecy and interest of Folding Light in the Trade Secrets; and

c. Using and converting the Trade Secrets for his own benefit and gain.

**ANSWER**: Defendant Klaas denies the allegation contained in paragraph 234.

235. In addition, Section 6.5(a) of the LLC Agreement prohibits Folding Light's members from soliciting Folding Light's employees, contractors, or anyone engaged by Folding Light, and Folding Light's investors, following the members' separation from Folding Light.

**ANSWER**: The allegations in paragraph 235 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

236. The non-solicitation term the LLC Agreement is material and enforceable.

**ANSWER:** The allegations in paragraph 169 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

237. In addition, Klaas breached his obligations under Section 6.5(a) of the LLC Agreement by: (a) employing Zhang, Patel, Leli, Schlossberg and/or Andrews to work with Klaas in his new, competing business; (b) by soliciting investment from Investors and Potential Investors of Folding Light, including without limitation the Mailers; and (c) by otherwise seeking to influence and alter the relationship between Folding Light and the foregoing persons.

**ANSWER**:    Defendant Klaas denies the allegation contained in paragraph 237.

238.    These failures constitute material breaches of Klaas' obligations under the LLC Agreement.

**ANSWER**:    Defendant Klaas denies the allegation contained in paragraph 238.

239.    Folding Light has suffered and continues to suffer damages as a result of Klaas' breaches of the LLC Agreement, including without limitation the loss of the value of its Trade Secrets, Confidential Information and Intellectual Property.

**ANSWER**:    Defendant Klaas denies the allegation contained in paragraph 239.

240.    Pursuant to the LLC Agreement, Folding Light is entitled to an award of attorney's fees and costs for bringing this action to enforce the terms of the LLC Agreement.

**ANSWER**:    Defendant Klaas denies the allegation contained in paragraph 240.

241.    Defendant Klaas' breaches of the Confidential Information, Intellectual Property, and non-solicitation provisions of the LLC Agreement have caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be redressed through damages alone.

**ANSWER**:    Defendant Klaas denies the allegation contained in paragraph 241.


WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.


**Count IX**

56

## Tortious Interference With Contract
## (Defendant Bunny Foo Foo Labs, LLC)

242.   Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 241.

**ANSWER**: Defendant repeats and incorporates its answers to all of the preceding allegations within Paragraphs 1-241 as if set forth fully in its response to Paragraph 242.

243.   Folding Light on the one hand, and Defendants Klaas, Andrews, and Schlossberg on the other hand, are parties to the LLC Agreement.

**ANSWER**: Defendant admits the allegations contained in paragraph 243.

244.   The LLC Agreement is a valid and enforceable contract.

**ANSWER**: The allegations in paragraph 244state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

245.   Upon information and belief, at all relevant times Defendants Klaas, Andrews, and Schlossberg have been and are members and/or employees of Bunny Foo Foo Labs.

**ANSWER**: Defendant denies the allegations contained in paragraph 245.

246.   By virtue of Klaas', Andrews', and Schlossberg's roles at Bunny Foo Foo Labs, Bunny Foo Foo Labs had actual knowledge of the existence of the valid and enforceable LLC Agreement between Folding Light on the one hand and Klaas, Andrews, and Schlossberg on the other hand, as well as Klaas', Andrews', and Schlossberg's confidentiality obligations pursuant to Section 6.5(b) of the LLC Agreement to maintain the secrecy of Folding Light's Trade

Secrets, Confidential Information, and Intellectual Property, including the Platform, and to not disclose that information to any third-parties not in connection with Folding Light's business.

**ANSWER**: The allegations in paragraph 246 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

247. Additionally, by virtue of Andrews' and Schlossberg's roles at Bunny Foo Foo Labs, Bunny Foo Foo Labs had actual knowledge of the fact that pursuant to Section 6.5(c) of the LLC Agreement, Andrews and Schlossberg were placed on "garden leave" preventing them from "providing services to any Person other than [Folding Light]" beginning on October 31, 2018 for no greater than 12 months.

**ANSWER**: The allegations in paragraph 247 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

248. Despite this knowledge, Bunny Foo Foo Labs tortiously and without justification interfered with the LLC Agreement by encouraging Klaas, Andrews, and Schlossberg to steal Folding Light's Confidential Information, Intellectual Property, and Trade Secrets, including the Platform, and to disclose it to Bunny Foo Foo Labs so that Bunny Foo Foo Labs could compete with Folding Light.

**ANSWER**: Defendant denies the allegations contained in paragraph 248.

249. Additionally, Bunny Foo Foo Labs tortiously and without justification interfered with the LLC Agreement by recruiting Andrews and

Schlossberg to provide services to Bunny Foo Foo Labs while they were prohibited from providing services to Bunny Foo Foo Labs pursuant to Sections 6.5(a) and 6.5(c) of the LLC Agreement.

**ANSWER**: Defendant denies the allegations contained in paragraph 249.

250. As the result of Bunny Foo Foo Labs' interference, Folding Light has suffered damages in an amount to be determined at trial of this cause.

**ANSWER**: Defendant denies the allegations contained in paragraph 250.

251. Bunny Foo Foo Labs acted willfully, maliciously, and with intentional disregard of Folding Light's rights, thereby entitling Folding Light to punitive damages in an amount to be determined at trial.

**ANSWER**: Defendant denies the allegations contained in paragraph 251.

252. Bunny Foo Foo Labs' interference has caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be fully redressed through damages alone.

**ANSWER**: Defendant BFF Labs denies the allegation contained in paragraph 252.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.


## Count X

### Tortious Interference with Contract
### (Defendants Klaas, Schlossberg, and Andrews)

253. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 252.

**<u>ANSWER:</u>** Defendant Klaas repeats and incorporates his answers to all of the preceding allegations within Paragraphs 1-252 as if set forth fully in his response to Paragraph 253.

254.    Folding Light has a valid and enforceable contract with Radius IT to provide information technology services to Folding Light.

**<u>ANSWER</u>**:    Defendant Klaas has insufficient information with which to admit or deny the allegations in paragraph 254 and therefore denies them.

255.    Defendants Klaas, Schlossberg and Andrews knew about Radius IT's contract to provide information technology services, and in fact worked with Radius IT to obtain such services for Folding Light prior to their departure.

**<u>ANSWER</u>**: Defendant Klaas denies the allegations contained in paragraph 255.

256.    Following their departure, upon information and belief Defendants Klaas, Schlossberg and Andrews lied to Radius IT, disparaged Flagstad and Folding Light, and otherwise wrongfully induced Radius IT to cease, without notice, performing services for Folding Light in breach of Radius IT's agreement.

**<u>ANSWER</u>**:    Defendant Klaas denies the allegations in paragraph 256 as it pertains to himself. Defendant Klaas has insufficient information with which to admit or deny the remaining allegations in paragraph 256 as it pertains to the other Defendants and therefore denies them.

257.    In  so  doing,  these  Defendants  intentionally  and  without justification induced Radius IT to breach its agreement.

**ANSWER**:    Defendant  Klaas  denies  the  allegations  contained  in  paragraph

257.

258.    Radius IT breached its agreement with Folding Light.

**ANSWER:**  The allegations in paragraph 258 state legal conclusions that the

Defendant Klaas has insufficient information with which to admit or deny. To

the extent an answer is required, Defendant Klaas denies the allegations.

259.    Radius's breach, and these Defendants' inducement of that breach, caused substantial damages to Folding Light.

**ANSWER:** Defendant Klaas denies the allegation contained in paragraph

259.

260.    These Defendants acted willfully, maliciously, and with intentional disregard of Folding Light's rights, thereby entitling Folding Light to punitive damages in an amount to be determined at trial.

**ANSWER:** Defendant  Klaas  denies  the  allegation  contained  in  paragraph

260.

261.    These  Defendants'  interference  has  caused  and  will  continue  to cause Folding Light irreparable and substantial injuries and therefore cannot be fully redressed through damages alone.

**ANSWER:** Defendant  Klaas  denies  the  allegation  contained  in  paragraph

261.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

## Count XI

## Tortious Interference with Business Expectancy

## (Klaas, Schlossberg, Andrews, Zhang, and Patel)

262.     Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 261.

**ANSWER:**     Defendant Klaas repeats and incorporates his answers to all of the preceding allegations within Paragraphs 1-261 as if set forth fully in his response to Paragraph 262.

263.     At the time Defendants began their competing business venture, Folding Light had a reasonable expectation of entering into and/or continuing its business relationships with the Mallers. At all times relevant hereto, Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel were aware of Folding Light's business expectancies with the Mallers because each of these defendants was involved in maintaining Folding Light's business relationship with the Mallers.

**ANSWER**:     Defendant Klaas denies the allegation contained in paragraph 263.

264.     Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel intentionally and without justification interfered with Folding Light's valid business relationship with the Mallers by usurping this business with the Mallers and failing to offer the business opportunity to Folding Light.

**ANSWER**:  Defendant Klaas denies the allegation contained in paragraph

264.

266. As a direct and proximate result of the Defendants' unlawful conduct, Folding Light has sustained substantial damages, including lost profits and the loss of goodwill.

**ANSWER**:  Defendant Klaas specifically denies that he engaged in any

unlawful conduct. The allegations in paragraph 265 state legal conclusions

that Defendant Klaas has insufficient information with which to admit or deny.

To the extent an answer is required, Defendant Klaas denies the allegations.

266. These Defendants' tortious interference was marked by deception and bad faith, warranting the imposition of punitive damages.

**ANSWER**:  Defendant Klaas denies the allegation contained in paragraph 266.

267. These Defendants' interference has caused and will continue to cause Folding Light irreparable and substantial injuries and therefore cannot be fully redressed through damages alone.

**ANSWER:**  Defendant Klaas denies the allegation contained in paragraph 267.
  WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and

requests that the Court enter judgment in their favor on all counts and award

them attorneys' fees, costs and such other relief as may be appropriate.

### Count XII

### Breach of Fiduciary Duty

### (Defendants Klaas, Schlossberg, and Andrews)

268. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 267.

**ANSWER:** Defendant Klaas repeats and incorporates his answers to all of the preceding allegations within Paragraphs 1-267 as if set forth fully in his response to Paragraph 268.

269. Defendant Klaas is a member of Folding Light.

**ANSWER:** Defendant Klaas admits the allegation contained in paragraph 269.

270. At all relevant times prior to their termination, Defendants Schlossberg and Andrews were members of Folding Light.

**ANSWER**: Defendant Klaas admits the allegations found in paragraph 270.

271. At all relevant times prior to his termination, Defendant Schlossberg was a manager of Folding Light.

**ANSWER**: Defendant Klaas admits the allegation found in paragraph 271.

272. By virtue of their status as members and/or managers of Folding Light, Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel owed fiduciary duties of loyalty, care, and good faith to Folding Light.

**ANSWER**: The allegations in paragraph 272 state legal conclusions to which no answer is required. To the extent an answer is required, the allegations are denied.

273. Defendants Klaas, Schlossberg, Andrews, Zhang, and Patel breached their fiduciary duties of loyalty, care, and good faith to Folding Light by:

a. Copying and stealing the Trade Secrets, including the Platform, and disclosing them to third-parties, including but not limited to Bunny Foo Foo Labs;

b. Directly using the Trade Secrets for Bunny Foo Foo Labs' and their own benefit, and to the detriment of Folding Light, prior to their terminations;

c. Failing to take such protective measures as may be reasonably necessary to preserve the secrecy and interest of Folding Light in the Trade Secrets;

d. Defendants Andrews and Schlossberg providing services to Bunny Foo Foo Labs, Folding Light's direct competitor, after Folding Light placed them on garden leave;

e. Stealing property from Folding Light, including without limitation Folding Light's computers and office furniture, for Bunny Foo Foo Labs' and their own benefit;

f. Deleting the Platform and other Trade Secrets from Folding Labs' computers in an effort to conceal their misconduct and to prevent Folding Light from using the Trade Secrets; and,

g. Using the Platform and Folding Light's other Trade Secrets to siphon Folding Light's trading customers to Bunny Foo Foo Labs and to usurp other business opportunities that rightfully belong to Folding Light.

<u>ANSWER:</u>  Defendant Klaas denies the allegation in paragraph 273 and the sub-paragraphs of 273 as it pertains to himself. Defendant has insufficient information with which to admit or deny the remaining allegations found in paragraph 273 and the subparagraphs of 273 as it pertains to the other Defendants. To the extent an answer is required, Defendant denies the remaining allegations.

274.    In the absence of Defendants Klaas', Andrews', and Schlossberg's actions, Defendant Bunny Foo Foo Labs would not be able to operate or to provide products or services to Folding Light's customers.

**ANSWER**:  Defendant Klaas denies the allegation contained in paragraph 274.

275.    As a direct and proximate result of Klaas', Andrews', and Schlossberg's breaches, Folding Light has been severely and irreparably damaged, and Defendants have unlawfully profited and benefited.

**ANSWER**:   Defendant Klaas denies the allegation contained in paragraph 275.

276.    Klaas', Andrews', and Schlossberg's actions were willful and malicious and undertaken with reckless indifference to Folding Light's rights.

**ANSWER:**   Defendant Klaas denies the allegation contained in paragraph 276.
        WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

### Count XIII

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Patel, Leli, Zhang and Bunny Foo Foo Labs)

277.    Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 276.

**ANSWER**: Defendant repeats and incorporates its answers to all of the preceding allegations within Paragraphs 1-276 as if set forth fully in their response to Paragraph 277.

278.   At all relevant times, Patel, Leli, Zhang and Bunny Foo Foo Labs, through its agents, knew that Klaas, Schlossberg and Andrews were founding members and/or managers of Folding Light and therefore owed Folding Light fiduciary duties, including, among others, duties of loyalty and good faith and the duty not to engage in self-dealing or to usurp corporate opportunities of Folding Light.

**ANSWER**:  Defendant denies the allegations contained in paragraph 278.

279.   As set forth above, these Defendants, in order to advance their own financial interests, knowingly aided and abetted, encouraged and actively participated in Klaas, Schlossberg, and Andrews' breaches of their fiduciary duties by, among other things, helping them to steal Folding Light's Trade Secrets, computers and other property, and providing them with resources and assistance in setting up an identical competing business.

**ANSWER**:  Defendant denies the allegations contained in paragraph 279.

280.   These Defendants' aid, abetment and active participation in the breaches of fiduciary duties of Klaas, Schlossberg and Andrews directly and proximately caused Folding Light to suffer damages, including the complete loss of their business.

**ANSWER**:  Defendant denies the allegations contained in paragraph 280.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

**Count XIV**

## **Civil Conspiracy**
## **(All Defendants)**

282. Plaintiff realleges and incorporates by this reference as if fully set forth herein the allegations in paragraphs 1 through 281.

**ANSWER:** Defendants repeat and incorporate their answers to all of the preceding allegations within Paragraphs 1-281 as if set forth fully in his response to Paragraph 282.

283. The Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct, as described herein, including, among other things, theft of trade secrets and other property, copyright infringement, breach of fiduciary duty and tortious interference.

**ANSWER**: Defendants deny the allegations contained in paragraph 283.

284. As part of this conspiracy, between at least October 19, 2018 and November 5, 2018, Defendants agreed to a common scheme to steal computers from Folding Light, erase nearly all data from Folding Light's remaining computers, and use Folding Lights' Trade Secrets, including the Platform, for their own personal gain.

**ANSWER**: Defendants deny the allegations contained in paragraph 284.

285. To further their common scheme, Defendants agreed to participate together in a number of unlawful overt acts, including theft of the computers, illegally retaining Folding Light's property, and erasing Folding Light's other computers.

ANSWER: Defendants deny the allegations contained in paragraph 285.

286. Defendants committed each of the foregoing overt acts.

**ANSWER**: Defendants deny the allegations contained in paragraph 286.

287. Folding Light cannot be sure of the exact date or dates that Defendants reached their agreement to participate in the unlawful acts against it, but on information and belief, these agreements were reached in communications that will be produced by Defendants in discovery.

**ANSWER**:  Defendants deny the allegations contained in paragraph 287.

288. The intent and purpose of the conspiracy, and the underlying combination of unlawful acts and misconduct committed by the Defendants was to usurp Folding Light's corporate opportunities and business. Each of the Defendants had a financial motive and incentive to accomplish the foregoing conspiracy.

**ANSWER**:  Defendants deny the allegations contained in paragraph 288.

289. The Defendants understood and accepted the foregoing scheme and agreed to do its/his respective part, as described herein, to further and accomplish the foregoing objective.

**ANSWER**:  Defendants deny the allegations contained in paragraph 289.

290. By entering into this conspiracy, the Defendants permitted, encouraged and/or induced all of the unlawful acts and misconduct as described herein.

**ANSWER**:  Defendants deny the allegations contained in paragraph 290.  .

291. As a direct and proximate result of the Defendants' unlawful conduct, Folding Light has sustained substantial damages.

**ANSWER**:  Defendants deny the allegations contained in paragraph 99.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Unclean Hands)

1.     Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

2.     Plaintiff's claims are barred in whole or in part by its failure to mitigate its alleged damages. As to the losses and damages claimed by Plaintiff, Plaintiff was put on notice by the factual information received by it or its representatives that those losses and damages might be suffered. Plaintiff negligently failed to take any action to protect itself or to minimize its possible damages. Damages sought by Plaintiff should be reduced by the percentage of the comparative negligence of, and failure to mitigate damages by, Plaintiff.

### THIRD AFFIRMATIVE DEFENSE
### (Waiver)

3.     Plaintiff's claims are barred in whole or in part by the doctrine of waiver. By virtue of the knowledge, statements and conduct of Plaintiff, its agents, employees and representatives, Plaintiff has waived any right to relief herein by intentionally relinquishing its known rights.

## FOURTH AFFIRMATIVE DEFENSE
### (Estoppel)

4. Plaintiff is estopped from asserting any claim for relief to which it might otherwise be entitled by virtue of its own knowledge, statements and conduct, or by the knowledge, statements and conduct of others whose conduct is chargeable to Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE
### (Prior Material Breach)

5. Plaintiff's breach of contract claim is barred in whole or in part by the doctrine of Plaintiff's prior material breach by failing to provide proper garden leave as set forth in the Cross-Complaint set forth below.

## SIXTH AFFIRMATIVE DEFENSE
### (The Business Judgment Rule)

6. Plaintiff's claims are barred in whole or in part by the business judgment rule.

## SEVENTH AFFIRMATIVE DEFENSE
### (Contributory Negligence and/or Comparative Fault)

7. Plaintiff's claims are barred in whole or in part by its own wrongful conduct and/or the conduct of others.

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and requests that the Court enter judgment in their favor on all counts and award them attorneys' fees, costs and such other relief as may be appropriate.

## **CROSS-COMPLAINT AND THIRD-PARTY COMPLAINT**

Defendant, Cross-Claimant and Third Party Claimant KASEY KLAAS ("KLAAS") brings this action individually, and derivatively on behalf of FOLDING LIGHT, LLC ("Folding Light" or the "Company") of which he is and at all times material hereto was a Member, and for his Cross/Third Party Complaint against Third Party Defendant BROCK FLAGSTAD ("Flagstad") and the Company for Damages and Other Relief, states as follows:

## **Nature of Cross/Third Party Action**

1.     This action arises out of Flagstad's intentional theft of hundreds of thousands of dollars from the Company as well as his utter disregard for his fiduciary duties to Folding Light and its members, which proximately damaged Folding Light in excess of ten million dollars ($10,000,000). Brazenly and with no regard for his fellow Members of the Company, Flagstad used Company funds to bankroll his lavish personal lifestyle, including cars, private planes, and extravagant vacations. Flagstad's utter greed knew no bounds and his ability to use the Company as his personal ATM was unchecked because of his unfettered powers as Lead Manager of the Company. Flagstad's behavior is a clear breach of his fiduciary duties to the Company and its Members and his use of Company assets to satisfy his personal, self-gratifying desires is a pure case of conversion of Company assets.

2.      The Complaint Flagstad caused to be filed on behalf of Folding Light is factually inaccurate and includes countless fabrications that are completely devoid from reality.

3.      Contrary to the yarn Flagstad tries to weave in the Complaint, because of Flagstad's admitted embezzlement of Folding Light funds and other serious misconduct, and his refusal to live up to his promise to resign after his embezzlement was caught by other Members, it had been decided by the Members that Folding Light would wind down.

3.      Flagstad's unbounded personal greed, malfeasance, extreme mismanagement of Folding Light operations and breaches of his fiduciary duties as Lead Manager and a Member of Folding Light provide clear bases for recovery by Klaas against Flagstad.

**The Parties**

4.      Klaas is a citizen of the State of Illinois and at all times material hereto was, and believes he still is, a Member of Folding Light.

5.      Folding Light is a Delaware limited liability company with its principal place of business located at 215 West Ohio Street, Chicago, Illinois 60654.

6.      Flagstad is a citizen of the State of Illinois, a Member of Folding Light, and Folding Light's Lead Manager.

## Jurisdiction and Venue

7.     Pursuant to 28 U.S.C. Section 1367, this Court has supplemental jurisdiction over this matter because the claims are so related to the claims asserted in the Complaint providing original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper in this Court, pursuant to 28 U.S.C. Section 1391(a), because a substantial part of the events giving rise to the claims occurred in this district.

## Relevant Background

9.     In the Spring of 2017, Klaas and Flagstad met Andrews and Schlossberg and the four began discussing the creation of a trading company that eventually became Folding Light.[1]

10.     Toward the end of 2017, a friend of Flagstad, Jim Streibech ("Streibich"), agreed to purchase 18% of the anticipated company for $2 Million, with the understanding that his investment was *only* to be used for trading capital and *not* operational working capital.

11.     In April 2018, Klaas and Flagstad, along with Schlossberg, Andrews, Rick Sterioti, and Streibich, formed Folding Light.

12.     In April of 2018, the Folding Light, LLC Limited Liability Company Agreement ("LLC Agreement") was executed and back dated to February 1,

---

[1] Klaas was not involved in trading prior to Folding Light and has not been involved in trading since the demise of Folding Light due to Flagstad's destructive behavior.

2018. A true and accurate copy of the LLC Agreement is attached to the Complaint as Exhibit A.

13.     Under the Operating Agreement, Flagstad was designated as the Lead Manager. Flagstad set up a Company bank account at PNC that he directly controlled and had sole access to.

14.     Shockingly, only a matter of weeks after the LLC Agreement was executed in late May, Flagstad began siphoning money from Folding Light's account to himself and another company that Flagstad has a controlling interest in—Financial Freedom Advisors ("FFA"). Over the seven-week period between June 1 and July 24, 2018, Flagstad managed to transfer $340,000.00 of Folding Light funds to himself and FFA.

15.     On April 19, 2018, Flagstad entered into a loan agreement on behalf of Folding Light to borrow 300 Bitcoin.

16.     On June 1 and June 4, Flagstad liquidated 120 Bitcoin, yielding $891,825 in cash that he transferred to the Folding Light bank account.

17.     On June 19, June 25, July 3, and July 6, Flagstad transferred a total of $250,000 from the Folding Light account to an account solely under his individual control in the name of Financial Freedom Advisors, LLC, an entity Flagstad solely controls.

18.     On July 24, 2018 Flagstad caused $50,000 to be withdrawn from Folding Light's trading account and transferred to its bank account.

Flagstad promptly transferred the $50,000 from Folding Light's bank account to Financial Freedom Advisors, LLC.

19.     On September 7, 2018, Klaas and others from Folding Light discovered that Flagstad had transferred cash from the liquidated Bitcoin into his own accounts. When Klaas asked Flagstad regarding the location of the cash and the Bitcoin, Flagstad lied. He said the funds were either "in the hedge," meaning in a position taken by Folding Light or in the company's trading account, knowing full well he had pocketed over a quarter million dollars of that money and made over seventy transactions in the account he solely controlled.

20.     In the meeting, Flagstad admitted that he misappropriated the funds from Folding Light, and he agreed to pay the money back. When Klaas confronted Flagstad, Flagstad began to cry.  Klaas asked Flagstad, "What the f__ were you thinking?!"  Flagstad replied, "I thought we had already made it."

21.     On September 10, 2018, Flagstad met with Klaas and other members of the Folding Light Board of Directors.

22.     It was therefore agreed by the Members, including Flagstad, that Flagstad should formally be asked to resign.

23.     In late September 2018, Streibich and Schlossberg sent Flagstad a letter requesting his resignation as Lead Manager.

24.     Flagstad refused the resignation request, so a wind down of the Company was instituted.

25.    In October 2018, directions and other communications from Management Committee Members revolved around the Company winding down, including the firing of staff, the consolidation of code, the potential sale of computer equipment, and the termination of service agreements and joint ventures (including a deal with HC Technologies).

26.    The Company continued to accumulate unpaid bills and the full winddown of the Company did not happen.

27.    But the full winddown of the Company did not happen and despite previously asking for Flagstad's resignation as Lead Manager, Streibich later partnered with Flagstad and Flagstad assumed control over the day to day operations of the Company.

28.    In late October, Flagstad as Lead Manager, issued termination letters to Schossberg and Andrews.

29.    On information and belief, since October 31, 2018, Flagstad and Folding Light have obtained cash and other assets belonging to Folding Light and have not used or disbursed such assets in conformity with their fiduciary duties and consistent with the agreements between the Members, at least in part for the personal benefit of Flagstad.

30.    Flagstad's theft and breaches of fiduciary duties as Lead Manager of Folding Light directly caused Klaas to lose the full value of his investment in Folding Light including but not limited to: the $800,000 Klaas invested to cover the Company's expenses; the $300,000 Klaas paid to cover the Company's

credit card bills, and Klaas' share of the $250,000 investment in Folding Light's trading strategy.

31. The LLC Agreement provides:

"In the event of legal action to interpret or enforce any of the terms or provisions of this Agreement or to recover damages for a breach thereof, the prevailing party shall be entitled to recover reasonable attorney's fees actually incurred plus costs."

(Complaint, Ex. A, § 11.6.)

## Count I
## Conversion
### (Derivatively on behalf of Folding Light, against Flagstad)

32. Klaas realleges and incorporates by reference allegations 1-31, as though fully set forth herein.

33. As of June 2018, Folding Light had received funds from Streibich in exchange for an ownership interest in Folding Light, which funds (the "Trading Capital") were strictly earmarked for trading capital and *not* operational working capital.

34. The Trading Capital was an asset owned by Folding Light, to which Flagstad had no ownership right, nor any right to use for any purpose, nor to cause Folding Light to use for any purpose other than trading.

35. Between June 1 and July 24, 2018, Flagstad wrongfully assumed ownership of approximately $340,000.00 of Folding Light funds that either

were proceeds of a bitcoin sale or were covered by Trading Capital funds, and transferred them to himself or to FFA, a company he controls.

36. Flagstad's said transfers of Folding Light funds constituted a conversion of Folding Light's assets and an appropriation thereof for himself.

37. Demand was made on Flagstad to repay the assets converted. Although Flagstad confessed to the misappropriation and agreed to repayment, Andrews is informed and believes that only approximately $245,000 of the amount converted has been repaid.

38. Approximately $95,000 of the converted Folding Light funds thus remains in the possession and control of Flagstad.

39. Flagstad has wrongfully assumed control and/or ownership of additional Folding Light funds and/or assets which have never been repaid or returned to the Company despite Flagstad not being entitled to said funds.

40. Flagstad has wrongfully caused additional Folding Light funds and/or assets to be removed from Folding Light accounts or control and delivered to one or more third parties, which funds or assets have never been repaid or returned to the Company.

**WHEREFORE**, Klaas respectfully requests that the Court enter judgment on Count I in favor of Folding Light and against Third Party Defendant Flagstad and enter an order:

A.  Awarding actual and compensatory damages to Folding Light;

B.  Awarding statutory pre- and post-judgment interest on all amounts awarded;

C.  Awarding attorneys' fees and costs to Klaas; and

D.  Awarding such other or further relief as the court deems just and equitable.

**Count II**
**Breach of Fiduciary Duties**
**(Derivatively on behalf of Folding Light, against Flagstad)**

41.   Klaas realleges and incorporates by reference allegations 1-40, as though fully set forth herein.

42.   Flagstad, as Lead Manager, owes fiduciary duties of loyalty to Folding Light and its members pursuant to Illinois statutory and common law, including without limitation 805 ILCS 180/15-3(b).

43.   Among other things, Flagstad's duty of loyalty to Folding Light includes the following:

a. To account to Folding Light and to hold as trustee for it any property, profit, or benefit derived by him in the conduct or winding up of Folding Light's business or derived from a use by him of Folding Light's property, including the appropriation of a Folding Light opportunity; and

b. To act fairly when he deals with Folding Light in the conduct or winding up of Folding Light's business as or on behalf of a party having an interest adverse to Folding Light.

44. Flagstad breached his fiduciary duty of loyalty to Folding Light by among other things:

a. Transferring to himself and FFA, for his own use and benefit, at least $340,000.00 in Company funds and assets to which he was not entitled;

b. Failing and refusing to pay Company operating expenses from his own funds as agreed, instead causing Trading Capital of the Company to be utilized to cover Company expenses in the amount of at least an additional $635,000.00;

c. Failing and refusing to repay all Company funds wrongfully diverted by him, as and when initially demanded, causing the Company to be required to liquidate trading positions in order to make creditors whole, which caused the Company to incur further losses;

d. Opening the Company to further exposure on trade(s) and in other respects than it should not have been subject to had Flagstad's malfeasance not occurred; and

e. Failing to advise the other Company Members and Managers of the true facts and events causing unacceptable Company exposure and risk.

45. Flagstad's breaches of his fiduciary duty of loyalty were intentional, willful, wanton and/or malicious in that, among other things, they were intended to benefit Flagstad at the expense, and to the detriment, of Folding Light and Klaas and others.

46. Folding Light has suffered and continues to suffer damages as a result of Flagstad's misconduct and breaches of the LLC Agreement, including without limitation the loss of the value of its business and relationships with its Investors.

47. As a direct and proximate result of Flagstad's beaches of his fiduciary duty of loyalty Folding Light has been damaged in an amount exceeding Ten Million Dollars ($10,000,000.00). Had Flagstad not violated his fiduciary duty of loyalty, Folding Light would not have suffered such losses.

48. Klaas has not made a demand upon Folding Light that it prosecutes this claim on its own behalf against Flagstad because Flagstad is presently the Lead Manager of Folding Light. Accordingly, making demand upon Folding Light to investigate Flagstad's wrongdoing and to prosecute this claim is likely to be futile and is therefore excused.

**WHEREFORE**, Klaas respectfully requests that the Court enter judgment on Count II in favor of Folding Light and against Third Party Defendant Brock Flagstad and enter an order:

A. Awarding actual and compensatory damages to Folding Light;

B. Awarding damages based upon the unjust enrichment to Flagstad based upon his willful and malicious conduct;

C. Awarding punitive or exemplary damages to Klaas and Folding Light for Flagstad's willful and malicious conduct;

D. Awarding statutory pre- and post-judgment interest on all amounts awarded;

E. Ordering that Flagstad not share in any amounts recovered by Klaas by way of this derivative claim;

F. Awarding such other or further relief as the Court deems just and equitable.

## Count III
## (Accounting)

63. Klaas realleges and incorporates by reference allegations 1-48, as though fully set forth herein..

64. As described herein, Flagstad has committed multiple breaches of fiduciary duties against Folding Light and its members and has misappropriated/converted Folding Light's funds at a time when he had exclusive assets to its bank account and subsequently.

65.     In order to determine the exact nature and extent of Flagstad's misappropriation, transfer, misuse, and other improper acts with regard to Folding Light monies, books, records and assets, an accounting is required.

**WHEREFORE**, Klaas respectfully requests that the Court enter judgment on Count III in favor of Klaas and Folding Light and against Third Party Defendant Brock Flagstad and enter an order:

A. Allowing Klaas inspection, copying and analysis of all of the books and records of Folding Light;

B. For an accounting of all of Folding Light's books and records, including without limitation tracing of any funds transferred or removed from Folding Light and its account(s) by Flagstad;

C. Directing Flagstad to deliver any bank statements, books, records, or other information in his possession or control referencing any funds improperly diverted from Folding Light;

D. Requiring Flagstad to reimburse Folding Light and Klaas for all costs, expenses, fees, including but not limited to accounting and attorneys' fees, related in any way to the accounting;

E. Awarding attorneys' fees and costs to Klaas; and

F. Awarding such other or further relief as the Court deems just and equitable.

**Count IV**
**(Dissolution of Folding Light)**

66.     Klaas realleges and incorporates by reference allegations 1-51, as though fully set forth herein.

67.     Pursuant to 805 ILCS180/35-1(a)(5)(A), a judicial decree of dissolution of a LLC may be entered upon application of a member where the manager(s) of the LLC have acted, are acting, or will act in a manner that is illegal or fraudulent.

68.     Pursuant to 805 ILCS 180/35-1(a)(5)(B), a judicial decree of dissolution of a LLC may be entered upon application of a member where the manager(s) of the LLC have acted and/or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant.

69.     Pursuant to 805 ILCS 180/35-1(a)(4)(C), a judicial decree of dissolution of an LLC may be entered upon application of a member where it is not reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement.

70.     By engaging in the conduct described herein, Flagstad has acted in a manner that is illegal, fraudulent and oppressive and which was, is, and continues to be directly harmful to Folding Light's Members, including Klaas. In addition, it is not reasonably practicable to carry on Folding Light's business in conformity with the LLC Agreement as a result of Flagstad's conduct, which also precipitated other incapacitating events.

71.     Based on the foregoing, this Court should order a dissolution of Folding Light and require that Folding Light wind up its business and distribute its assets in accordance with 805 ILCS 180/35-4 and 805 ILCS 180/35-10.

**WHEREFORE**, Kasey Klaas respectfully seeks an order of dissolution against Folding Light, payment of all amounts owed by Folding Light to Klaas, payment of Klaas' attorney's fees and costs of suit herein, and such other relief as the Court deems reasonable, just and equitable.

### Count IV
### (Appointment of Receiver)

72.     Klaas realleges and incorporates by reference allegations 1-57, as though fully set forth herein.

73.     Pursuant to 805 ILCS 180/35-4(e)(1), the Court may order judicial supervision of the winding up of a dissolved limited liability company, including appointment of a person to wind up the LLC's business, upon application of a member, where the applicant establishes good cause.

74.     As set forth here, Flagstad, acting as Lead Manager of Folding Light, has misapplied and wasted LLC assets and acted in a manner that is illegal, fraudulent and oppressive. Flagstad's conduct was, is, and continues to be directly harmful to Folding Light's Members, including Klaas. It is not reasonably practicable to permit Flagstad to wind up Folding Light's business and distribute its assets in accordance with 805 ILCS 180/35-4 and 805 ILCS 180/35-10.

75. After entry of an order of dissolution, and based on 805 ILCS 180/35¬4(e)(1), this Court should appoint a neutral third-party to wind up the business and distribute the assets of Folding Light, including payment of all amounts owed to Folding Light's Members.

**WHEREFORE**, based on the above allegations, Klaas respectfully requests that this Court enter an order appointing a neutral third-party receiver to wind up the business and distribute the assets of Folding Light, directing payment of Klaas' attorneys' fees and costs of suit herein, and awarding such other relief as the Court deems reasonable, just and equitable.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Defendants Kasey Klaas and Bunny Foo Foo Labs, LLC hereby demands a trial by jury on all issues so triable in the above-entitled cause.

Dated: August 27, 2019.

        Respectfully submitted,
        BUNNY FOO FOO LABS, LLC
        and KASEY KLAAS

      By: s/ Timothy E. Horton
        Timothy E. Horton
        **POLALES HORTON LLP**
        53 W. Jackson Blvd, Suite 928
        Chicago, Illinois 60604
        (312) 598-2522 (telephone)
        (312) 626-2486 (facsimile)
        thorton@polaleshorton.com

        *Attorney for Kasey Klaas and Bunny Foo Foo Labs, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing was served on all counsel of record via electronic case filing procedures on September 6, 2019.

/s/ *Timothy E. Horton*
Timothy E. Horton