**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FOLDING LIGHT, LLC, | |
| Plaintiff, | |
| v. | Case No. 19-cv-03949 |
| KASEY KLAAS, MATTHEW ANDREWS, JON SCHLOSSBERG, RIZWAN PATEL, MATTHEW LELI, PETER ZHANG, and BUNNY FOO FOO LABS, LLC, | Honorable Martha M. Pacold Magistrate Judge M. David Weisman |
| Defendants. | |
| JONATHAN SCHLOSSBERG, individually and derivatively on behalf of FOLDING LIGHT, LLC, | **JURY TRIAL DEMANDED** |
| Counter/Third-Party Plaintiff, | |
| v. | |
| FOLDING LIGHT, LLC and BROCK FLAGSTAD, | |
| Counter/Third Party Defendants. | |

<u>**FOLDING LIGHT'S REPLY TO JONATHAN SCHLOSSBERG'S COUNTERCLAIM**</u>

Plaintiff Folding Light, LLC ("Folding Light"), by its attorneys, Tabet DiVito & Rothstein LLC, hereby replies to Counterclaim of Defendant/Counter-Plaintiff Jonathan Schlossberg as follows:

<u>**The Parties**</u>

1.      Schlossberg is a citizen of the State of Illinois. He is an original Manager and Member Folding Light.

**ANSWER:**    Folding Light admits that Schlossberg is a citizen of the State of Illinois and that he previously served as a Manager and Member of Folding Light.  Folding Light denies that

Schlossberg is presently a Manager or Member of it. Folding Light denies the remaining allegations contained in this Paragraph 1.

2. Folding Light is a Delaware limited liability company with its principal place of business located in Chicago, Illinois.

**ANSWER:** Folding Light admits the allegations contained in this Paragraph 2.

3. Upon information and belief, Flagstad is a citizen of the State of Illinois, a Member of Folding Light, and acted at all material times as Folding Light's Lead Manager.

**ANSWER:** Folding Light admits the allegations contained in this Paragraph 3.

### Nature of Counter/Third-Party Action

4. This Counter/Third-Party Complaint arises out of Flagstad's flagrant and unfettered abuse of his position as Lead Manager of Folding Light exclusively for his personal benefit − including diversion of hundreds of thousands of dollars from an LLC bank account to himself and entities he controls and misuse of Folding Light trading funds to pay operational expenses that were his obligation − to the detriment of other Members of Folding Light and in breach of his fiduciary duties.

**ANSWER:** Folding Light admits that Schlossberg purports to bring a Counterclaim and Third Party action alleging that, among other things, Flagstad breached his fiduciary duties to Folding Light. Folding Light denies the remaining allegations contained in this Paragraph 4.

5. After Defendants and others discovered and confronted Flagstad with evidence of his misconduct, Flagstad caused Folding Light to breach the terms of the LLC Agreement by purporting to terminate Schlossberg, exercising the Company's right of redemption and valuing Schlossberg's redeemable interest at "zero," and placing him on "garden leave" for twelve months, without compensation.

**ANSWER:** Folding Light admits that it terminated Schlossberg, redeemed his membership interest which was valued at "zero," and placed him on garden leave. Folding Light denies the remaining allegations contained in this Paragraph 5.

6. Flagstad caused Folding Light to file a baseless complaint depicting Folding Light as an ongoing business, notwithstanding his personal involvement in efforts to wind down the Company in September-October 2018, asserting factually unfounded claims against Schlossberg and others in a blatant attempt to misappropriate Intellectual Property and Trade

Secrets, including original trading code that Schlossberg developed and ran on behalf of various entities years before meeting Flagstad.

**ANSWER:** Folding Light denies the allegations contained in this Paragraph 6.

## Jurisdiction

7.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1367, because the claims are so related to the claims asserted in the Complaint providing original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** Folding Light admits the allegations contained in this Paragraph 7.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims occurred in this district.

**ANSWER:** Folding Light admits the allegations contained in this Paragraph 8.

## Facts Common to All Counts
### (Pre - Folding Light)

9.     Schlossberg has extensive experience devising coding strategies for use in the trading of securities and commodities. Prior to 2017, he was running both U.S. Treasury ("UST") and Emini futures ("ES") trades as part of a business that he started with a former partner and an employee of a company with which he had previously been affiliated.

**ANSWER:** Folding Light admits that Schlossberg has experience coding in the trading

industry. Folding Light lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the remaining allegations contained in this Paragraph 9.

10.     In early 2017, Schlossberg and defendant Matthew Andrews ("Andrews"), decided to work together to form a trading business that would utilize the trading strategies that Schlossberg had run for several years, including both UST trades and the ES trades. Schlossberg rolled the UST and ES trading together, shortly before he started working with Andrews. The entity that Schlossberg was then running took care of the trading staff. Andrews focused on bringing in new accounts.

**ANSWER:** Folding Light lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in this Paragraph 10.

11.     Schlossberg and Andrews were in the process of raising money for business operations when, in or about late Spring, 2017, Andrews introduced Schlossberg to Andrews'

neighbor, Brock Flagstad, and Flagstad's business partner, defendant Kasey Klaas ("Klaas"). When Flagstad and Klaas were brought into the loop, the four began discussing the formation of a trading company that could use the strategies and coding application already developed by Schlossberg, on a larger scale.

**ANSWER:**     Folding Light admits that in or about Spring 2017, Flagstad, Klaas, Andrews, and

Schlossberg discussed the formation of a trading company.  Folding Light lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the allegation that in or about

late Spring 2017, Schlossberg and Andrews were in the process of raising money for business

operations.  Folding Light denies the remaining allegations contained in this Paragraph 11.

12.     In May, 2017, Schlossberg and Andrews were retained as independent contractors paid by Flagstad and Klaas. Schlossberg's primary job was maintaining and operating his existing trading operations. In addition, Schlossberg would have primary responsibility for designing a new architecture, redeveloping the existing electronic trading platform, and redeploying his existing coding strategies. It was always understood that any new company would own only new code that was developed.  The existing application belonged to Schlossberg, and Flagstad expressly did not want to purchase Schlossberg's company. Rather, he wanted to subsidize the creation of a new company. All parties understood that, should a new company not be created, anyone could walk away from the arrangement at any time.

**ANSWER:**     Folding Light admits that Schlossberg and Andrews were retained as independent

contractors paid by Flagstad and Klaas.  Folding Light denies the remaining allegations

contained in this Paragraph 12.

13.     At the time Schlossberg and Andrews agreed to work toward a new operation with Flagstad and Klaas, Schlossberg was involved in three trading-related entities. Through those entities, Schlossberg ran substantively the same UST and ES trades that he would later run for Folding Light.

**ANSWER:**     Folding Light admits that prior to Schlossberg's, Andrews's, Klaas's, and

Flagstad's relationship, Schlossberg was involved in the trading industry.  Folding Light lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations contained in this Paragraph 13.

14.     At or around the end of 2017, a friend of Flagstad, Jim Streibich ("Streibich"), agreed to purchase 10% of the anticipated company for $2 Million, with the understanding that

4

his investment would be used by the new company for trading capital, and not operational working capital.

**ANSWER:** Folding Light admits that in late-2017 or early-2018, Streibich's trust agreed to invest $2 million in the anticipated company with the understanding that his investment would be used for trading capital and not operational expenses. Folding Light denies the remaining allegations contained in this Paragraph 14.

### (Formation of Folding Light, LLC - May, 2018)

15. In early 2018, the parties engaged in discussions to formalize a business relationship. In late May, 2018, the parties executed the Folding Light, LLC Limited Liability Company Agreement (the "Agreement"). They backdated the Agreement to February 1, 2018 – the date on which Streibich's investment was viewed to be reasonably certain, and all parties were committed to launching the new entity. A copy of the LLC Agreement is attached to the Complaint as Exhibit A.

**ANSWER:** Folding Light admits that in May 2018, the parties executed the LLC Agreement. Folding Light admits the remaining allegations contained in this Paragraph 15.

16. In Q1 2018, Schlossberg worked with defendant Rizwan Patel ("Patel") to integrate Schlossberg's existing UST algorithm with an automated trading platform that, among other features, added manual intraday trading of the same signal and automated intraday execution. By April, 2018, Schlossberg and Patel had finished the base infrastructure and were launching the UST trades on a new code track. They were also in the process of developing the intraday execution of the original ES signal, in advance of redeployment of the ES replacement code.

**ANSWER:** Folding Light admits that in the first quarter of 2018, Schlossberg and Defendant Rizwan Patel continued their work together that began in late-Q3 2017 to prepare a new trading platform for use at Folding Light. Folding Light admits that by April 2018, Schlossberg and Patel had finished the base infrastructure and were launching trades on the new trading platform. Folding Light denies the remaining allegations contained in this Paragraph 16.

17. In addition to the core ES and UST trades, Folding Light attempted unsuccessfully to launch a crypto trading strategy. Crypto trading was ultimately deemed not viable due to issues relating to exchange technology, liquidity and exchange pricing models.

**ANSWER:**     Folding Light admits that it attempted to launch a crypto trading strategy, but denies that it was unsuccessful.  Folding Light denies the remaining allegations in this Paragraph 17.

### (Malfeasance by Flagstad)

18.     The LLC Agreement designated Flagstad "Lead Manager" of Folding Light. Flagstad set up a Folding Light account at PNC Bank (the "PNC account") that he controlled.

**ANSWER:**     Folding Light admits that Flagstad was designated Lead Manager of Folding Light.  Folding Light admits that Flagstad set up a bank account for Folding Light at PNC and that he had control over it, but Folding Light denies that Flagstad had sole or exclusive control over Folding Light's PNC bank account.

19.     In May 2018, Flagstad approached Schlossberg about using Bitcoin borrowed from the Mallers Family (the "Bitcoin loan") for a lending business that reportedly would return 10% monthly in free cash flow over the course of a year.  Based on the expected return profile that justified the risk to Folding Light of carrying the trade, Schlossberg agreed to sell the Bitcoin and transfer the funds to the PNC account. Schlossberg shared with Flagstad his concern that, if Bitcoin were to fall precipitously, Folding Light would have difficulty making its margin requirement because all of the proceeds had been transferred to Folding Light's PNC account, and no portion was transferred to Folding Light's Advantage (clearing) account. In the event of a margin call, the Company would need to transfer money into the Advantage account or risk being forced to execute an unprofitable trade.

**ANSWER:**     Folding Light admits that in May 2018, Flagstad approached Schlossberg about alternative investment strategies, including BitCoin, that would generate additional cash flow for Folding Light.  Folding Light denies the remaining allegations contained in this Paragraph 19.

20.     In June or July 2018, the market value of Bitcoin fell, and Folding Light found itself in jeopardy of a margin call. Schlossberg asked Flagstad for additional capital. Flagstad initially transferred $250,000 into the Advantage account, representing that he was the source of the additional cash. (In fact, the money was derived from Folding Light's PNC account − Bitcoin proceeds that Flagstad represented he had invested in the lending business. Flagstad failed to advise Schlossberg that he and Klaas had been forced out of that business by their other partner, and that the money was never invested.) Flagstad later advised Schlossberg that he was having "cash flow" issues and needed the money he had transferred to the Advantage account returned to him. Schlossberg scaled down Folding Light's trading to accommodate the request and returned $150,000 to Flagstad.

**ANSWER:**     Folding Light admits that in June or July 2018, Folding Light was in jeopardy of a margin call.   Folding Light admits that Flagstad transferred approximately $250,000 from Folding Light's PNC account to its Advantage account to cover the margin call.   Folding Light denies the remaining allegations contained in this Paragraph 20.

21.     Flagstad's cash flow issues continued. Flagstad authorized vendor bills to be paid from the Advantage account, and did not replenish the payments. At the time Folding Light was organized as an LLC, Flagstad and Klaas had agreed to pay the LLC's operating expenses from their own funds, rather than through trading capital. Therefore, to the extent the bills related to the Company's operating expenses, they should not have been paid from Folding Light's Advantage account.

**ANSWER:**     Folding Light admits that Flagstad properly authorized trading related fees to be paid from the Advantage account consistent with his duties and authority as Lead Manager of Folding Light.   Folding Light denies the remaining allegations contained in this Paragraph 21.

22.     In addition to the foregoing, Members discovered that Flagstad was siphoning money from Folding Light's PNC account (which held the proceeds from the Bitcoin liquidation), directing it to himself and to one or more companies in which, upon information and belief, Flagstad has a controlling interest – including Financial Freedom Advisors ("FFA"). After Members were able to gain access and review bank records for the PNC account, they confirmed that Flagstad had executed approximately 70 transactions between June 1 and July 24, 2018, including personal withdrawals and payment of expenses and salaries.   By depleting Folding Light's PNC account containing the Bitcoin proceeds, Flagstad established an unhedged position in Folding Light's clearing account that created material risk for the Company.

**ANSWER:**     Folding Light admits that between June 1 and July 24, 2018, Flagstad transferred money to himself and Financial Freedom Advisors to reimburse himself and Financial Freedom Advisors for Klaas's share of certain authorized Folding Light-related expenses.   Answering further, Folding Light states that Flagstad's reimbursement of Klaas's share of Folding Light-related expenses was proper, Flagstad believed it was authorized, and it did not cause Folding Light to suffer any damages.   Folding Light denies the remaining allegations contained in this Paragraph 22.

23.     When confronted, Flagstad initially misled his fellow Members and Folding Light employees regarding the missing funds, claiming that they were in trading accounts. After Members gained access to the PNC account and were able to confirm Flagstad's malfeasance, Flagstad confessed his theft of LLC funds in private conversations with Defendant Klaas and with Jim Streibich, and again in a meeting with multiple individuals present, including Defendants in this action. Flagstad agreed to repay the money he had taken, forfeit his shares in Folding Light, and resign as Lead Manager and a Member of Folding Light. Flagstad ultimately transferred only a portion of the funds he had withdrawn back into Folding Light's PNC account, characterizing the amounts as "loan repayment[s]." Upon information and belief, Flagstad sourced those funds from Channel Clarity, another entity that Flagstad controls.

**ANSWER:**     Folding Light admits that Flagstad agreed to and did repay the money that he had taken to reimburse himself for Klaas's share of certain authorized Folding Light-related expenses, but denies that Flagstad taking that money was improper or caused Folding Light to suffer any damages.  Folding Light denies the remaining allegations contained in this Paragraph 23.

24.     Having discovered Flagstad's financial malfeasance, Members attempted to stop the mounting unpaid bills. Schlossberg and Streibich demanded that the Mallers be repaid for the Bitcoin loan and that employees be paid. Schlossberg had to liquidate trading positions in order to make creditors whole, causing the LLC to incur further losses directly resulting from Flagstad's misconduct.

**ANSWER:**     Folding Light admits Streibich demanded that the Mallers be repaid for their loan and that employees be paid.  Folding Light admits that Schlossberg demanded that employees be paid but denies that Schlossberg demanded that the Mallers be repaid.  Folding Light denies the remaining allegations contained in this Paragraph 24.

### (Winding Down of Folding Light LLC - September/October, 2018)

25.     By late-September, 2018, it became clear that Flagstad had changed his mind about voluntarily giving up his role and interest in Folding Light. Folding Light's five other Members agreed to formally request Flagstad's resignation. Flagstad refused, and a wind down of the LLC was instituted.

**ANSWER:**     Folding Light admits that in late-September 2018 the Management Committee made the decision to temporarily suspend trading operations and enter "hibernation mode" while the Folding Light members discussed resolution of various issues, including who would fund

8

Folding Light on a going forward basis. Folding Light denies the remaining allegations contained in this Paragraph 25.

26.     In September-October, 2018, the LLC was wound down at the direction of Folding Light's Management Committee. Schlossberg exchanged numerous email and text communications with both Flagstad and Streibich to coordinate the termination of staff, payment for work performed, consolidation of code, preparation of computer equipment for sale, and termination of service agreements and joint ventures (including a deal with HC Technologies and an account with Devitt). Unpaid bills continued to accumulate which, among other issues, resulted in loss of the production version of Folding Light's entire trading application and trading history (both UST and ES trades) when the vendor wiped the machine.

**ANSWER:**    Folding Light admits that in late-September and early-October 2018, in connection with Folding Light's decision to temporary suspend trading operations and enter "hibernation mode," Schlossberg exchanged numerous e-mails and text messages to coordinate the termination of staff, payment of staff, preparation of equipment for sale, the termination of service agreements, and the return of Folding Light's capital from HC Tech. Folding Light admits that during this time period, unpaid bills began to accumulate. Folding Light admits that it no longer has access to its trading platform or its trading history but denies that it no longer has access as a result of unpaid bills. Folding Light denies the remaining allegations contained in this Paragraph 26.

27.     In connection with the wind down, Members discussed the issuance of a release. Flagstad advised Schlossberg of his prerequisites for issuance of a release, including cessation of all trading activity and liquidation of all trading funds to US dollars. By early October, Schlossberg confirmed that he had completed all of the prerequisites, including closure of all proprietary and managed trading activity and liquidation of the majority of the Bitcoin position to USD. When it became clear that Flagstad would not issue the promised release, Streibich suggested that Schlossberg put together a draft that Members could execute. Schlossberg and Andrews were the only Members who ultimately executed the release.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 27.

28.     In October, 2018, the Company was well into the wind down process. Staff was let go. Certain individuals, including defendant Riz Patel and others, were kept on to wrap up operations. The majority of the work was completed, with the remaining work to be performed

by Schlossberg and defendant Peter Zhang. At that point, Schlossberg had consolidated the UST and ES trades, and begun decommissioning the Folding Light hardware.

**ANSWER:**    Folding Light admits that as of October 2018, the company was in the process of temporarily suspending trading operations and entering "hibernation mode."  Folding Light admits that in October 2018, Rizwan Patel and certain other individuals were kept on to assist with the temporary suspension of Folding Light's operations.  Folding Light denies the remaining allegations contained in this Paragraph 28.

29.    On October 31, 2018, with Flagstad still acting as Lead Manager, a letter of termination was issued to Schlossberg on behalf of Folding Light, purporting to terminate his "engagement as a contractor of the Company, effective immediately" and noting that it had been determined that his redeemable interests in the Company had a zero value. The letter further advised Schlossberg that he was being placed on "garden leave" for 12 months, and that he must "refrain from providing services to any Person other than the Company" during that time.

**ANSWER:**    Folding Light admits that on October 31, 2018, Folding Light issued a termination letter to Schlossberg and that the termination letter stated in part that Schlossberg's engagement as a contractor of Folding Light was terminated effectively immediately and that his remediable interests in Folding Light had a zero value.  Folding Light admits that the letter further stated in part that he was being placed on garden leave and that he must "refrain from providing services to any Person other than the Company."  Folding Light denies that the quoted portions of the October 31, 2018 termination letter accurately or completely quote the entire October 31, 2018 termination letter.  Folding Light denies the remaining allegations contained in this Paragraph 29.

30.    Schlossberg has not returned to the Folding Light offices since leaving on October 31, 2018. Schlossberg has not attempted to access Folding Light's network or machines. He has not directed anyone else to access Folding Light's network or erase any data. Schlossberg has not worked in a competing industry since leaving Folding Light on October 31, 2018.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 30.

31.    On information and belief, Folding Light continues to possess property belonging to Schlossberg − including three servers and two Lenovo boxes − which were left at the Folding

10

Light offices before Schlossberg was instructed not to return. Schlossberg continues to be denied access to this property.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 31.

32.     On information and belief, Flagstad, Streibich and Folding Light have obtained cash and other assets belonging to Folding Light and have not used or disbursed such assets in conformity with their fiduciary duties and consistent with agreements between the Members.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 32.

**Count I**
**Breach of Contract**
**(Against Folding Light)**

33.     Schlossberg realleges and incorporates by reference allegations 1 through 32, as though fully set forth herein.

**ANSWER:**     Folding Light realleges and incorporates by reference its answers to the

allegations in Paragraphs 1 through 32 above as though fully set forth herein.

34.     Section 6.5(c) of the LLC Agreement provides in relevant part that:

"Upon the Company's request, any Member who has notified the Company of his or her resignation or has been terminated by the Company shall agree to a "garden leave" for a period not to exceed twelve (12) months, as determined by the Management Committee, during which period such Member shall (i) provide services to the Company from a remote location, (ii) refrain from providing services to any Person other than the Company, (iii) adhere to the other provisions of this Section 6.5 and (iv) be entitled to compensation commensurate with the services provided."

(Complaint Ex. A, § 6.5(c)).

**ANSWER:**     Folding Light admits that the quoted language in Paragraph 34 accurately quotes a

portion of the LLC Agreement.

35.     At all relevant times, it was understood and agreed that the LLC could not prevent Members from competing without paying them monthly "garden leave" for the restricted period of time.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 35.

36.     Folding Light breached Section 6.5(c) of the LLC Agreement by, among other things, failing to pay Schlossberg his monthly compensation of $20,833 (or any compensation whatsoever), despite Schlossberg's agreement to make himself available to Folding Light to

provide any services he may be asked to perform (as evidenced by his offer to demonstrate where to locate Folding Light's trading Platform on the computer that, upon information and belief, remains in the exclusive possession of the Company) and to refrain from engaging in a competing business. Schlossberg has honored his garden leave obligations, but has not received the funds bargained for in the LLC Agreement.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 36.

37.     The foregoing constitutes a material breach of Folding Light's obligation to Schlossberg under the terms of the LLC Agreement.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 37.

38.     Schlossberg has suffered and continues to suffer damages as a result of Folding Light's breach, including without limitation, loss of bargained for and alternate income.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 38.

WHEREFORE, Folding Light respectfully requests that the Court enter judgment on Count I in its favor and against Schlossberg, award Folding Light its attorney's fees pursuant to Section 11.6 of the LLC Agreement, award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

**Count II**
**Misappropriation of Trade Secrets**
**(Against Folding Light)**

39.     Schlossberg realleges and incorporates by reference allegations 1 through 38, as though fully set forth herein.

**ANSWER:**     Folding Light realleges and incorporates by reference its answers to the allegations in Paragraphs 1 through 38 above as though fully set forth herein.

40.     Schlossberg's original trading code and strategies, which includes both UST and ES trades, constitute proprietary Trade Secrets.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 40.

41.     Schlossberg's Trade Secrets are used to trade securities and commodities in national and international markets and, therefore, is used in, and intended for use in, interstate and foreign commerce.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 41.

42.     Schlossberg's Trade Secrets constitute confidential Intellectual Property that is not known to the general public, and from which he has derived independent economic value. His trading application can only be operated by Schlossberg, as he is the only person who understands both the UST and ES trades.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 42.

43.     Schlossberg has taken, and continues to take, reasonable efforts to maintain the confidentiality, secrecy and proprietary nature of the Trade Secrets. He has never shared with another human being information regarding how the trading signal for his application works, other than with his initial business partner with whom he had a non-disclosure agreement. Only Schlossberg and his former partner know how configure the basic formula for the algorithm necessary to run the application. Schlossberg's trades were intentionally designed to mitigate the risk of theft and obfuscate any third-party deployment.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 43.

44.     Folding Light has willfully misappropriated and intends to use Schlossberg's Trade Secrets − including Schlossberg's original UST trade and a copy of his ES trade that was not licensed to Folding Light or rebuilt using, Folding Light capital − for its own economic benefit, to Schlossberg's detriment.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 44.

45.     Folding Light acquired the Trade Secrets through improper means by terminating Schlossberg, barring him from returning to the premises, and placing him on garden leave which precluded him from using his Trade Secrets in a competing business for twelve months.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 45.

46.     Folding Light's misappropriation of Schlossberg's Trade Secrets has caused and continues to cause Schlossberg to suffer damages and irreparable injury.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 46.

47.     Folding Light's misappropriation of Schlossberg's Trade Secrets is willful and malicious, entitling Schlossberg to an award of exemplary damages under the Defend Trade Secrets Act.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 47.

48.     Folding Light's misappropriation of Schlossberg's Trade Secrets has caused and will continue to cause Schlossberg to suffer irreparable and substantial harm that cannot be fully

redressed through damages alone. Therefore, Schlossberg is entitled to an injunction prohibiting Folding Light from using or disclosing his Trade Secrets.

**ANSWER:** Folding Light denies the allegations contained in this Paragraph 48.

WHEREFORE, Folding Light respectfully requests that the Court enter judgment on Count II in its favor and against Schlossberg, award Folding Light its attorney's fees pursuant to Section 11.6 of the LLC Agreement and 18 U.S.C. § 1836(b)(3)(D), award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

**Count III**
**Unjust Enrichment**
**(Against Folding Light)**

49.     Schlossberg realleges and incorporates by reference allegations 1 through 48, as though fully set forth herein.

**ANSWER:** Folding Light realleges and incorporates by reference its answers to the allegations in Paragraphs 1 through 48 above as though fully set forth herein.

50.     While employed at Folding Light, Schlossberg worked to rebuild a version of his proprietary trading application that he could run for Folding Light, on a larger scale. In connection, Schlossberg transferred a copy of his application to Folding Light's computers.

**ANSWER:** Folding Light admits Schlossberg worked and was paid to develop new software and a new platform with different data sources and new architecture and that once completed, Schlossberg transferred a copy of the new software and new platform to Folding Light's computers. Folding Light denies the remaining allegations contained in this Paragraph 50.

51.     Folding Light continues to possess a copy of Schlossberg's original ES trade that was not ultimately rebuilt and for which it does not hold a license. Additionally, Schlossberg's original UST trade remains on Schlossberg's servers, which are in Folding Light's possession.

**ANSWER:** Folding Light denies the allegations contained in this Paragraph 51.

52.     Schlossberg has demanded return of his original, proprietary and confidential trades, but Folding Light has refused to comply.

**ANSWER:** Folding Light denies the allegations contained in this Paragraph 52.

53.    By virtue of the foregoing, Folding Light has been unjustly enriched at Schlossberg's expense.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 53.

WHEREFORE, Folding Light respectfully requests that the Court enter judgment on Count III in its favor and against Schlossberg, award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

**Count IV**
**Conversion of Schlossberg's IP**
**(Against Folding Light)**

54.    Schlossberg realleges and incorporates by reference allegations 1 through 53, as though fully set forth herein.

**ANSWER:**    Folding Light realleges and incorporates by reference its answers to the allegations in Paragraphs 1 through 53 above as though fully set forth herein.

55.    At the time Schlossberg began working with Flagstad and Klaas as an independent contractor, Schlossberg had fully developed and utilized the code and strategies for both the UST and ES trades in various entities with trading history dating back several years. Trading performance from Schlossberg's past implementations was used in the process of raising investors prior to the formation of Folding Light. Schlossberg entered into discussions with Flagstad possessing trades that had been traded in production and whose logic was completed prior to the creation of Folding Light.

**ANSWER:**    Folding Light admits that Schlossberg made representations relating to his past trading performance in the process of seeking investors for Folding Light. Folding Light denies the remaining allegations contained in this Paragraph 55.

56.    At the time Members executed the LLC Agreement in May, 2018, they agreed to backdate the Agreement to February 1, 2018 − making February 1, 2018 the demarcation date for IP ownership.

**ANSWER:**    Folding Light admits that the LLC Agreement was backdated to February 1, 2018. Folding Light denies Schlossberg's vague and ambiguous allegation that February 1, 2018 was "the demarcation date for IP ownership."

57.     Section 6.6(b) of the LLC Agreement provides in relevant part:

"(b) Each Member agrees that (i) to the extent permitted by Applicable Law, **all such Intellectual Property Created after the date of this Agreement (collectively, the "LLC IP") shall be deemed a "work made for hire"** within the meaning of that term under United States Copyright Act, 17 U .S.C. §§ 101 et seq., as amended or superseded, and (ii) the Company shall be deemed the exclusive author of such LLC IP and the exclusive owner of all rights, title and interest in and to such LLC IP in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised." (Emphasis added.)

(Complaint Ex. A, § 6.6(b))(emphasis added). Pursuant to Section 6.6(b) of the LLC Agreement, any Intellectual Property created before February 1, 2018 is not owned by Folding Light.

**ANSWER:**     Folding Light admits that the language set forth above accurately quotes Section

6.6(b) of the LLC Agreement with emphasis supplied by Schlossberg.  Folding Light denies the

remaining allegations of this Paragraph 57.

58.     Although Folding Light capital was used in the redevelopment of an existing electronic platform and redeployment of existing code strategies, both the UST and ES trades were Schlossberg's strategies from previous invention. Schlossberg's existing UST trade was migrated onto Folding Light's IP implementation, and Schlossberg's original hardware and code implementation were deprecated. Folding Light remains in possession of that hardware (three servers) and, by virtue, the only copy of Schlossberg's original UST code. Folding Light's ES trade was run on Schlossberg's proprietary code with the explicit understanding that Folding Light would subsidize the development of its own implementation. This never occurred because, prior to scheduled completion, Flagstad's malfeasance necessitated wind down of the company. Folding Light never owned or licensed the preexisting ES trade, and a copy remains on a machine at Folding Light.

**ANSWER:**     Folding Light admits that its capital was used in the development of an electronic

platform.  Folding Light denies the remaining allegations contained in this Paragraph 58.

59.     Folding Light intentionally interfered with Schlossberg's ownership rights by terminating his services, refusing to allow him to return to the premises and placing him on "garden leave" that precludes him from using his trading IP in a competing business.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 59.

60.     On information and belief, Folding Light has shared Schlossberg's proprietary code with third parties without his consent, in connection with an effort to re-start the business following Defendants' terminations.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 60.

61.     Folding Light's interference has deprived Schlossberg of possession or use of the IP at issue and caused Schlossberg to suffer damages, including, but not limited to, loss of present and substantial future income.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 61.

WHEREFORE, Folding Light respectfully requests that the Court enter judgment on Count IV in its favor and against Schlossberg, award Folding Light its attorney's fees pursuant to Section 11.6 of the LLC Agreement, award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

### Count V
### Conversion of Schlossberg's Equipment
### (Against Folding Light)

62.     Schlossberg realleges and incorporates by reference allegations 1 through 61, as though fully set forth herein.

**ANSWER:**     Folding Light realleges and incorporates by reference its answers to the allegations in Paragraphs 1 through 61 above as though fully set forth herein.

63.     The letter purporting to effect Schlossberg's termination directs him not to return to Folding Light's offices.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 63.

64.     When he left the Folding Light offices on October 31, 2018, Schlossberg left behind three servers and two Lenovo machines ("Schlossberg's equipment").

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 64.

65.     When defendant Klaas subsequently moved out of the Folding Light offices, Schlossberg's equipment was not moved along with the equipment belonging to Klaas. Upon information and belief, Schlossberg's equipment remains at the Folding Light offices.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 65.

66.     The subject property rightfully belongs to Schlossberg, contains proprietary data that was running from Schlossberg's former entity, and Folding Light did not have the right to take possession or control of said property.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 66.

67.    Folding Light's conversion of the equipment has deprived Schlossberg of continued use of his equipment and otherwise caused him to suffer damages.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 67.

WHEREFORE, Folding Light respectfully requests that the Court enter judgment on Count V in its favor and against Schlossberg, award Folding Light its attorney's fees pursuant to Section 11.6 of the LLC Agreement, award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

**Count VI**
**Conversion of Folding Light Property**
**(Derivatively on Behalf of Folding Light, Against Flagstad)**

THIS COUNT IS NOT ASSERTED AGAINST FOLDING LIGHT. ACCORDINGLY, NO RESPONSE IS REQUIRED FROM FOLDING LIGHT.

**Count VII**
**Breach of Fiduciary Duties**
**(Derivatively on Behalf of Folding Light, Against Flagstad)**

THIS COUNT IS NOT ASSERTED AGAINST FOLDING LIGHT. ACCORDINGLY, NO RESPONSE IS REQUIRED FROM FOLDING LIGHT.

**Count VIII**
**Dissolution of Folding Light**

83.    Schlossberg realleges and incorporates by reference allegations 1 through 82, as though fully set forth herein.

**ANSWER:**    Folding Light realleges and incorporates by reference its answers to the allegations in Paragraphs 1 through 82 above as though fully set forth herein.

84.    Pursuant to 805 ILCS 180/35-1(a)(5)(A), a judicial decree of dissolution of an LLC may be entered upon application of a member where the manager(s) of the LLC have acted, are acting, or will act in a manner that is illegal or fraudulent.

**ANSWER:**    Folding Light admits that under Illinois law a court may enter a judicial decree of dissolution under certain circumstances. Folding Light denies that Illinois law and the cited statute apply to the claimed dissolution of Folding Light, which is a Delaware limited liability company and is governed by the laws of Delaware. Folding Light denies that Schlossberg is entitled to the remedy of dissolution under applicable law, and denies all remaining allegations contained in this Paragraph 84.

85.    Pursuant to 805 ILCS 180/35-1(a)(5)(B), a judicial decree of dissolution of an LLC may be entered upon application of a member where the manager(s) of the LLC have acted and/or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant.

**ANSWER:**    Folding Light admits that under Illinois law a court may enter a judicial decree of dissolution under certain circumstances. Folding Light denies that Illinois law and the cited statute apply to the claimed dissolution of Folding Light, which is a Delaware limited liability company and is governed by the laws of Delaware. Folding Light denies that Schlossberg is entitled to the remedy of dissolution under applicable law, and denies all remaining allegations contained in this Paragraph 85.

86.    Pursuant to 805 ILCS 180/35-1(a)(4)(C), a judicial decree of dissolution of an LLC may be entered upon application of a member where it is not reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement.

**ANSWER:**    Folding Light admits that under Illinois law a court may enter a judicial decree of dissolution under certain circumstances. Folding Light denies that Illinois law and the cited statute apply to the claimed dissolution of Folding Light, which is a Delaware limited liability company and is governed by the laws of Delaware. Folding Light denies that Schlossberg is entitled to the remedy of dissolution under applicable law, and denies all remaining allegations contained in this Paragraph 86.

87.     By engaging in the conduct described herein, Flagstad has acted in a manner that is illegal, fraudulent and oppressive and which was, is, and continues to be directly harmful to Folding Light's Members, including Schlossberg. In addition, it is not reasonably practicable to carry on Folding Light's business in conformity with the LLC Agreement as a result of Flagstad's conduct, which also precipitated other incapacitating events.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 87.

88.     Based on the foregoing, this Court should order a dissolution of Folding Light and require that Folding Light wind up its business and distribute its assets in accordance with 805 ILCS 180/35-4 and 805 ILCS 180/35-10, including, without limitation, application of Folding Light's assets to pay amounts owed to Schlossberg and others for "garden leave" and other damages owed.

**ANSWER:**     Folding Light denies the allegations contained in this Paragraph 88.

WHEREFORE, Folding Light respectfully requests that the Court enter judgment on Count VIII in its favor and against Schlossberg, award Folding Light its attorney's fees pursuant to Section 11.6 of the LLC Agreement, award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

## Count IX
## Appointment of Liquidating Receiver

89.     Schlossberg realleges and incorporates by reference allegations 1 through 88, as though fully set forth herein.

**ANSWER:**     Folding Light realleges and incorporates by reference its answers to the allegations in Paragraphs 1 through 88 above as though fully set forth herein.

90.     Pursuant to 805 ILCS 180/35-4(e)(1), the Court may order judicial supervision of the winding up of a dissolved limited liability company, including appointment of a person to wind up the LLC's business, upon application of a member, where the applicant establishes good cause.

**ANSWER:**     Folding Light admits that under Illinois law a court may order judicial supervision of the winding up of a limited liability company under certain circumstances. Folding Light denies that Illinois law and the cited statute apply to the claimed appointment of a liquidating receiver for Folding Light, which is a Delaware limited liability company and is governed by the

laws of Delaware. Folding Light denies that Schlossberg is entitled to the remedy of appointment of a liquidating receiver under applicable law, and denies all remaining allegations contained in this Paragraph 90.

91.    As described herein, Flagstad, acting as Lead Manager of Folding Light, has misapplied and wasted LLC assets and acted in a manner that is illegal, fraudulent and oppressive. Flagstad's conduct was, is, and continues to be directly harmful to Folding Light's Members. It is not reasonably practicable to permit Flagstad to wind up Folding Light's business and distribute its assets in accordance with 805 ILCS 180/35-4 and 805 ILCS 180/35-10.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 91.

92.    Following entry of an order of dissolution, and based on 805 ILCS 180/35-4(e)(1), this Court should appoint a neutral third-party to wind up the business and distribute the assets of Folding Light, including payment of all amounts owed to Folding Light's Members.

**ANSWER:**    Folding Light denies the allegations contained in this Paragraph 92.

WHEREFORE, Folding Light respectfully request that the Court enter judgment on Count IX in its favor and against Schlossberg, award Folding Light its attorney's fees pursuant to Section 11.6 of the LLC Agreement, award Folding Light its costs, and award Folding Light such other and further relief as the Court deems just and proper.

## FOLDING LIGHT'S AFFIRMATIVE DEFENSES TO JONATHAN SCHLOSSBERG'S COUNTERCLAIMS

### FIRST AFFIRMATIVE DEFENSE – UNCLEAN HANDS

1.    Schlossberg is not entitled to garden leave compensation because he did not provide services to Folding Light.  Schlossberg is also not entitled to compensation for the alleged misappropriation of his trade secrets and/or intellectual property because, among other reasons, he does not own the alleged trade secrets and intellectual property, he conveyed them to Folding Light, and he was paid for his work to develop the alleged trade secrets and intellectual property.  Regardless, Schlossberg's claims are barred in whole or in part by the doctrine of unclean hands.  Schlossberg has unclean hands in this matter for stealing and/or converting

Folding Light's intellectual property, trade secrets, equipment and personal property, business relationships, and business expectancies, as set more fully forth in Folding Light's Complaint.

**SECOND AFFIRMATIVE DEFENSE – PRIOR MATERIAL BREACH OF CONTRACT**

2.      Schlossberg is not entitled to garden leave compensation because he did not provide services to Folding Light.  Regardless, Schlossberg's claim for breach of the LLC Agreement and failure to pay garden leave compensation is barred in whole or in part by Schlossberg's prior material breach of the LLC Agreement by failing to make himself available during his garden leave to provide services to Folding Light upon Folding Light's request and by misappropriating Folding Light's trade secrets and intellectual property, as set forth more fully in Folding Light's Complaint.

**THIRD AFFIRMATIVE DEFENSE – WAIVER**

3.      Schlossberg is not entitled to garden leave compensation because he did not provide services to Folding Light.  Schlossberg is also not entitled to compensation for the alleged misappropriation of his trade secrets and/or intellectual property because, among other reasons, he does not own the alleged trade secrets and intellectual property, he conveyed them to Folding Light, and he was paid for his work to develop the alleged trade secrets and intellectual property.  Regardless, Schlossberg's claims for garden leave compensation, conversion of intellectual property, conversion of equipment, unjust enrichment, and trade secrets misappropriation is barred in whole or in part by the doctrine of waiver.  Schlossberg waived any right to receive compensation and intentionally relinquished his known rights by conveying his alleged intellectual property and trade secrets to Folding Light and by failing to make himself available to provide services to Folding Light at Folding Light's request, as demonstrated by

Schlossberg's and/or his agents' knowledge, statements, and conduct, and as more fully set forth in Folding Light's Complaint.

### FOURTH AFFIRMATIVE DEFENSE - ESTOPPEL

4.      Schlossberg is not entitled to garden leave compensation because he did not provide services to Folding Light.  Schlossberg is also not entitled to compensation for the alleged misappropriation of his trade secrets and/or intellectual property because, among other reasons, he does not own the alleged trade secrets and intellectual property, he conveyed them to Folding Light, and he was paid for his work to develop the alleged trade secrets and intellectual property. Regardless, Schlossberg is estopped from asserting claims for compensation to which he otherwise may be entitled as a result of his and/or his agents' own knowledge, statements, and conduct, including without limitation Schlossberg's conveyance of his alleged trade secrets and intellectual property to Folding Light and Schlossberg's refusal to make himself available to provide services to Folding Light at Folding Light's request during his garden leave period, as set forth more fully in Folding Light's Complaint.

### FIFTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE

5.      Schlossberg's claims are barred in whole or in part because he failed to mitigate his damages.  As to his claimed losses and damages, Schlossberg was put on notice that he might suffer losses and damages when he was terminated from Folding Light and instructed to return Folding Light's intellectual property and trade secrets to Folding Light.  Schlossberg was also put on notice that Folding Light requested his services and that he needed to provide those services to be paid.  Despite such notice, Schlossberg failed to take any actions to protect himself or minimize his damages, including failing to follow up on the services that Folding Light

requested to perform. Any damages should be reduced as a result of his failure to mitigate his damages.

Dated: October 25, 2019

Respectfully submitted,

**FOLDING LIGHT, LLC**

By:＿＿＿＿＿＿＿ /s/ Brian C. Haussmann ＿＿＿＿＿＿＿
One of Its Attorneys

Brian C. Haussmann (ARDC #6283054)
Jacob B. Berger (ARDC #6318332)
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Fl.
Chicago, Illinois 60604
Phone: (312) 762-9450
bhaussmann@tdrlawfirm.com
jberger@tdrlawfirm.com